**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ALEX HERNANDEZ, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>RCI HOSPITALITY HOLDINGS, INC., ERIC S. LANGAN, and BRADLEY CHHAY,<br><br>    Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Alex Hernandez ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding RCI Hospitality Holdings, Inc. ("RCI" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. [1]

## NATURE OF THE ACTION

---

[1] Unless otherwise stated, all emphasis is added.

1

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded RCI securities between December 15, 2021 and September 16, 2025, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased RCI securities during the Class Period and was economically damaged thereby.

7.     Defendant RCI owns and operates strip clubs around the United States. It states the following about its business:

> Our Nightclubs subsidiaries operate our adult entertainment nightclubs through several brands that target many different demographics of customers by providing a unique, quality entertainment environment. Our clubs do business as Rick's Cabaret, Jaguars Club, Tootsie's Cabaret, XTC Cabaret, Club Onyx, Hoops Cabaret and Sports Bar, Scarlett's Cabaret, Diamond Cabaret, Cheetah Gentlemen's Club, PT's Showclub, Playmates Club, Country Rock Cabaret, Temptations Adult Cabaret, Foxy's Cabaret, Vivid Cabaret, Downtown Cabaret, Cabaret East, The Seville, Silver City Cabaret, Heartbreakers Gentlemen's Club, Kappa Men's Club, Baby Dolls, and Chicas Locas. We also operate one dance club under the brand name Studio 80.

8.     Defendant RCI is incorporated in Texas and its head office is located at 10737 Cutten Road, Houston, Texas, 77066. RCI securities trade on The Nasdaq Global Market (the "NASDAQ") under the ticker symbol "RICK."

9.     Defendant Eric S. Langan ("Langan") served as the Company's Chief Executive Officer ("CEO") at all relevant times.

10.     Defendant Bradley Chhay ("Chhay") served as the Company's Chief Financial Officer ("CFO") and Principal Accounting Officer at all relevant times.

11.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.     RCI is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to RCI under *respondeat superior* and agency principles.

14.     Defendant RCI and the Individual Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**
**Materially False and Misleading**
**Statements Issued During the Class Period**

15.     On December 14, 2021, after market hours, the Company filed with the SEC its annual report on Form 10-K for the fiscal year ending September 30, 2021 (the "2021 Annual Report"). Attached to the 2021 Annual Report were certifications ("SOX Certifications" or "Certifications") pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Langan and Chhay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

16.     The SOX Certifications signed by Defendants Langan and Chhay were materially

4

false in misleading. The Certifications each stated the following:

> *The registrant's other certifying officer and I have disclosed*, based on our most recent evaluation of internal control over financial reporting, to the registrant's independent registered public accounting firm and the audit committee of the registrant's board of directors (or persons performing the equivalent functions): [. . .] *Any fraud, whether or not material*, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

17.     The statement in ¶ 16 was materially false and misleading when made because Defendants Langan and Chhay engaged in a multi-year tax fraud and then used bribery to conceal their unlawful activities.

18.     The 2021 Annual Report contained the following statements about the Company's internal controls:

**Evaluation of Disclosure Controls and Procedures**

In connection with the preparation of this report, an evaluation was carried out by certain members of Company management, with the participation of the Chief Executive Officer ("CEO") and the Chief Financial Officer ("CFO") of the effectiveness of the Company's disclosure controls and procedures (as defined in Securities and Exchange Commission's ("SEC") Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 ("Exchange Act") as of September 30, 2021. *Disclosure controls and procedures are designed to ensure that information required to be disclosed in reports filed or submitted under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to management, including the CEO and the CFO*, to allow timely decisions regarding required disclosures.

Due to a material weakness in internal control over financial reporting described below, management *concluded that the Company's disclosure controls and procedures were not effective as of September 30, 2021*. Notwithstanding the existence of this material weakness, management believes that the consolidated financial statements in this annual report filed on Form 10-K present, in all material respects, the Company's financial condition as reported, in conformity with United States Generally Accepted Accounting Principles ("U.S. GAAP").

**Management's Annual Report on Internal Control over Financial Reporting**

Management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rule 13a-15(f) under the Exchange Act. Our internal control over financial reporting is designed to provide reasonable

assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with U.S. GAAP and includes those policies and procedures that: (1) pertain to the maintenance of records that in reasonable detail accurately and fairly reflect our transactions and the dispositions of our assets; (2) provide reasonable assurance that our transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles and that our receipts and expenditures are being made only in accordance with appropriate authorizations; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of our assets that could have a material effect on our consolidated financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Under the supervision of and with the participation of our management, we assessed the effectiveness of our internal control over financial reporting as of September 30, 2021, using the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control—Integrated Framework (2013). A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis.

***We identified a material weakness in internal control related to the proper design and implementation of controls over our estimates relating to the impairment of goodwill, indefinite-lived intangibles and long-lived assets, specifically over the precision of management's review of certain assumptions***. Based on our evaluation and as a result of the material weakness identified, our management, with the participation of our chief executive officer and chief financial officer, concluded that our internal control over financial reporting was not effective as of September 30, 2021.

The Company's independent registered public accounting firm, Friedman, LLP, has expressed an adverse opinion on our internal control over financial reporting as of September 30, 2021 in the audit report that appears at the end of Part II of this Annual Report on Form 10-K.

19.     The statement in ¶ 18 was materially false and misleading at the time it was made because it understated the Company's internal control weaknesses, considering that the Company engaged in a multi-year tax fraud, and then covered it up by bribing auditors with compensated trips to strip clubs.

20.     The 2021 Annual Report contained the following statement:

***Activities or conduct at our nightclubs may cause us to lose necessary business licenses, expose us to liability, or result in adverse publicity, which may increase our costs and divert management's attention from our business.***

We are subject to risks associated with activities or conduct at our nightclubs that are illegal or violate the terms of necessary business licenses. Some of our nightclubs operate under licenses for sexually oriented businesses and are afforded some protection under the First Amendment to the U.S. Constitution. While we believe that the activities at our nightclubs comply with the terms of such licenses, and that the element of our business that constitutes an expression of free speech under the First Amendment to the U.S. Constitution is protected, activities and conduct at our nightclubs may be found to violate the terms of such licenses or be unprotected under the U.S. Constitution. This protection is limited to the expression and not the conduct of an entertainer. An issuing authority may suspend or terminate a license for a nightclub found to have violated the license terms. ***Illegal activities or conduct at any of our nightclubs may result in negative publicity or litigation. Such consequences may increase our cost of doing business, divert management's attention from our business and make an investment in our securities unattractive to current and potential investors, thereby lowering our profitability and our stock price***.

***We have developed comprehensive policies aimed at ensuring that the operation of each of our nightclubs is conducted in conformance with local, state and federal laws***. We have a "no tolerance" policy on illegal drug use in or around our facilities. We continually monitor the actions of entertainers, waitresses and customers to ensure that proper behavior standards are met. However, such policies, no matter how well designed and enforced, can provide only reasonable, not absolute, assurance that the policies' objectives are being achieved. Because of the inherent limitations in all control systems and policies, there can be no assurance that our policies will prevent deliberate acts by persons attempting to violate or circumvent them. ***Notwithstanding the foregoing limitations, management believes that our policies are reasonably effective in achieving their purposes***.

21.     The statement in ¶ 20 was materially false and misleading because the Company committed tax fraud in New York and used bribes (i.e., compensated trips for certain officials to the Company's strip clubs) to conceal Defendants' illegal activity. As such, the Company understated its legal risk.

22.     On December 14, 2022 the Company filed with the SEC its annual report on Form 10-K for the fiscal year ending September 30, 2022 (the "2022 Annual Report"). Attached

7

to the 2022 Annual Report were certifications pursuant to SOX ("SOX Certifications" or "Certifications") signed by Defendants Langan and Chhay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

23.    The SOX Certifications filed with the 2022 Annual Report contained substantially similar statements that were discussed in ¶ 16. As such, they were materially false and misleading for the reasons stated in ¶ 17.

24.    The 2022 Annual Report contained the following statements about the Company's internal controls:

**Evaluation of Disclosure Controls and Procedures**

In connection with the preparation of this report, an evaluation was carried out by certain members of Company management, with the participation of the Chief Executive Officer ("CEO") and the Chief Financial Officer ("CFO") of the effectiveness of the Company's disclosure controls and procedures (as defined in Securities and Exchange Commission's ("SEC") Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 ("Exchange Act") as of September 30, 2022. Disclosure controls and procedures are designed to ensure that information required to be disclosed in reports filed or submitted under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to management, including the CEO and the CFO, to allow timely decisions regarding required disclosures.

Due to a material weakness in internal control over financial reporting described below, management concluded that the Company's disclosure controls and procedures were not effective as of September 30, 2022. Notwithstanding the existence of this material weakness, management believes that the consolidated financial statements in this annual report filed on Form 10-K present, in all material respects, the Company's financial condition as reported, in conformity with United States Generally Accepted Accounting Principles ("U.S. GAAP").

**Management's Annual Report on Internal Control over Financial Reporting**

Management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rule 13a-15(f) under the Exchange Act. Our internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial

statements for external purposes in accordance with U.S. GAAP and includes those policies and procedures that: (1) pertain to the maintenance of records that in reasonable detail accurately and fairly reflect our transactions and the dispositions of our assets; (2) provide reasonable assurance that our transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles and that our receipts and expenditures are being made only in accordance with appropriate authorizations; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of our assets that could have a material effect on our consolidated financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Under the supervision of and with the participation of our management, we assessed the effectiveness of our internal control over financial reporting as of September 30, 2022, using the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control—Integrated Framework (2013). A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis.

***We have identified a material weakness in internal control related to the proper design and implementation of controls over management's review of the Company's accounting for business combinations, specifically related to the identification of and accounting for, intangible assets acquired in a business combination. Based on our evaluation, our management, with the participation of our chief executive officer and chief financial officer, concluded that our internal control over financial reporting was not effective as of September 30, 2022.***

25.    The statement in ¶ 24 was materially false and misleading at the time it was made because it understated the Company's internal control weaknesses, considering that the Company engaged in a multi-year tax fraud, and then covered it up by bribing auditors with compensated trips to strip clubs.

26.    The 2022 Annual Report contained a substantially similar risk disclosure as the one contained in ¶ 20. As such, it was materially false and misleading at the time it was made for the reasons stated in ¶ 21.

27.     On December 14, 2023, the Company filed with the SEC its annual report on Form 10-K for the fiscal year ending September 30, 2023 (the "2023 Annual Report"). Attached to the 2023 Annual Report were certifications pursuant to SOX ("SOX Certifications" or "Certifications") signed by Defendants Langan and Chhay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

28.     The SOX Certifications filed with the 2023 Annual Report contained substantially similar statements that were discussed in ¶ 16. As such, they were materially false and misleading for the reasons stated in ¶ 17.

29.     The 2023 Annual Report contained the following statements about the Company's internal controls:

**Evaluation of Disclosure Controls and Procedures**

In connection with the preparation of this report, an evaluation was carried out by certain members of Company management, with the participation of the Chief Executive Officer ("CEO") and the Chief Financial Officer ("CFO") of the effectiveness of the Company's disclosure controls and procedures (as defined in Securities and Exchange Commission's ("SEC") Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 ("Exchange Act") as of September 30, 2023. Disclosure controls and procedures are designed to ensure that information required to be disclosed in reports filed or submitted under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to management, including the CEO and the CFO, to allow timely decisions regarding required disclosures.

***Due to material weaknesses in internal control over financial reporting described below, management concluded that the Company's disclosure controls and procedures were not effective as of September 30, 2023****. Notwithstanding the existence of these material weaknesses, management believes that the consolidated financial statements in this annual report filed on Form 10-K present, in all material respects, the Company's financial condition as reported, in conformity with United States Generally Accepted Accounting Principles ("U.S. GAAP").*

**Management's Annual Report on Internal Control over Financial Reporting**

Management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rule 13a-15(f) under the Exchange Act. Our internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with U.S. GAAP and includes those policies and procedures that: (1) pertain to the maintenance of records that in reasonable detail accurately and fairly reflect our transactions and the dispositions of our assets; (2) provide reasonable assurance that our transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles and that our receipts and expenditures are being made only in accordance with appropriate authorizations; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of our assets that could have a material effect on our consolidated financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Under the supervision of and with the participation of our management, we assessed the effectiveness of our internal control over financial reporting as of September 30, 2023, using the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control—Integrated Framework (2013). A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis. *We have identified material weaknesses in internal control related to (1) proper design and implementation of controls over management's review of the Company's accounting for business combinations, specifically related to the identification of and accounting for, intangible assets acquired in a business combination, and over the precision of management's review of certain valuation assumptions; (2) the impairment of goodwill, indefinite-lived intangibles, and long-lived assets, specifically over the precision of management's review of certain assumptions; and (3) ineffective information technology general controls (ITGCs") in the areas of user access and program change-management over certain information technology ("IT") systems that support the Company's financial reporting processes*. Our business process controls (automated and manual) that are dependent on the affected ITGCs were also deemed ineffective because they could have been adversely impacted. We believe that these control deficiencies were a result of inadequate IT controls over the review of user access and imprecise documentation of procedures related to program change management. Additionally, we rely upon a variety of outsourced IT service providers for key elements of the technology infrastructure impacting our financial reporting process. Certain outsourced IT service providers could not provide System and Organization Controls ("SOC") reports for periods that closely align with our fiscal year end. Given that management did not effectively assess the

design and operation of these outsourced IT service providers' internal controls, some of our controls over IT systems and business processes were also deemed ineffective, but only to the extent that we rely upon information that was subject to the outsourced IT service providers' control environment. These deficiencies may have an impact on our financial statements, account balances, and disclosures. Based on our evaluation, our management, with the participation of our chief executive officer and chief financial officer, concluded that our internal control over financial reporting was not effective as of September 30, 2023.

Following identification of these material weaknesses, and prior to filing this Annual Report on Form 10-K, we completed substantive procedures for the year ended September 30, 2023. Based on these procedures, management believes that the consolidated financial statements included in this Form 10-K have been prepared in accordance with U.S. GAAP. Our CEO and CFO have certified that, based on their knowledge, the financial statements, and other financial information included in this Form 10-K, fairly present in all material respects the financial condition, results of operations and cash flows of the Company as of, and for, the periods presented in this Form 10-K.

30.     The statement in ¶ 29 was materially false and misleading at the time it was made because it understated the Company's internal control weaknesses, considering that the Company engaged in a multi-year tax fraud, and then covered it up by bribing auditors with compensated trips to strip clubs.

31.     The 2023 Annual Report contained a similar risk disclosure as the one contained in ¶ 20. As such, it was materially false and misleading at the time it was made for the reasons stated in ¶ 21.

32.     On December 16, 2024, the Company filed with the SEC its annual report on Form 10-K for the fiscal year ending September 30, 2024 (the "2024 Annual Report"). Attached to the 2024 Annual Report were certifications pursuant to SOX ("SOX Certifications" or "Certifications") signed by Defendants Langan and Chhay attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

33.    The SOX Certifications filed with the 2024 Annual Report contained substantially similar statements that were discussed in ¶ 16. As such, they were materially false and misleading for the reasons stated in ¶ 17.

34.    The 2024 Annual Report contained the following statement about the Company's internal controls:

**Evaluation of Disclosure Controls and Procedures**

In connection with the preparation of this report, an evaluation was carried out by certain members of Company management, with the participation of the Chief Executive Officer ("CEO") and the Chief Financial Officer ("CFO") of the effectiveness of the Company's disclosure controls and procedures (as defined in Securities and Exchange Commission's ("SEC") Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 ("Exchange Act") as of September 30, 2024. Disclosure controls and procedures are designed to ensure that information required to be disclosed in reports filed or submitted under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to management, including the CEO and the CFO, to allow timely decisions regarding required disclosures.

Due to material weaknesses in internal control over financial reporting described below, management concluded that the Company's disclosure controls and procedures were not effective as of September 30, 2024. Notwithstanding the existence of these material weaknesses, management believes that the consolidated financial statements in this annual report filed on Form 10-K present, in all material respects, the Company's financial condition as reported, in conformity with United States Generally Accepted Accounting Principles ("U.S. GAAP").

**Management's Annual Report on Internal Control over Financial Reporting**

Management of the Company is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rule 13a-15(f) under the Exchange Act. Our internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with U.S. GAAP and includes those policies and procedures that: (1) pertain to the maintenance of records that in reasonable detail accurately and fairly reflect our transactions and the dispositions of our assets; (2) provide reasonable assurance that our transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. GAAP and that our receipts and expenditures are being made only in accordance with appropriate authorizations; and (3) provide reasonable assurance regarding prevention or timely detection of

unauthorized acquisition, use or disposition of our assets that could have a material effect on our consolidated financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Under the supervision of and with the participation of our management, we assessed the effectiveness of our internal control over financial reporting as of September 30, 2024, using the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control—Integrated Framework (2013). A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis. ***We have identified material weaknesses in internal control related to (1) ineffective design and operation of controls over certain information technology general controls ("ITGCs"), including program change management, user access, and vendor management controls; (2) ineffective design and operation of controls, which include management review controls, over the accounting for business combinations; and (3) ineffective design and operation of controls, which include management review controls, over the Company's assessments of potential impairment***. Our business process controls (automated and manual) that are dependent on the affected ITGCs were also deemed ineffective because they could have been adversely impacted. We believe that these control deficiencies were a result of inadequate IT controls over the review of user access and imprecise documentation of procedures related to program change management. Additionally, we rely upon a variety of outsourced IT service providers for key elements of the technology infrastructure impacting our financial reporting process. Certain outsourced IT service providers could not provide System and Organization Controls ("SOC") reports for periods that closely align with our fiscal year end. Given that management did not effectively assess the design and operation of these outsourced IT service providers' internal controls, some of our controls over IT systems and business processes were also deemed ineffective, but only to the extent that we rely upon information that was subject to the outsourced IT service providers' control environment. These deficiencies may have an impact on our financial statements, account balances, and disclosures. Based on our evaluation, our management, with the participation of our chief executive officer and chief financial officer, concluded that our internal control over financial reporting was not effective as of September 30, 2024.

Following identification of these material weaknesses, and prior to filing this Annual Report on Form 10-K, we completed substantive procedures for the year ended September 30, 2024. Based on these procedures, management believes that the consolidated financial statements included in this Form 10-K have been prepared in accordance with U.S. GAAP. Our CEO and CFO have certified that, based on their

knowledge, the financial statements, and other financial information included in this Form 10-K, fairly present in all material respects the financial condition, results of operations and cash flows of the Company as of, and for, the periods presented in this Form 10-K.

35.     The statement in ¶ 34 was materially false and misleading at the time it was made because it understated the Company's internal control weaknesses, considering that the Company engaged in a multi-year tax fraud, and then covered it up by bribing auditors with compensated trips to strip clubs.

36.     The 2024 Annual Report contained the following risk disclosure:

Claims brought by government authorities have the potential to be especially disruptive to our business and operations. [. . .] [I]n 2024, the New York State Attorney General ("NY AG") and the New York State Department of Taxation and Finance ("NY DTF") *has executed search warrants on the Company's corporate headquarters in Houston, Texas, three separate clubs in New York, New York, and has sent the Company a subpoena requesting documents and other information with respect to certain clubs in New York and Florida*. The investigation appears to be related to the Company's New York State tax filings and possible entertainment benefits provided to NY DTF personnel. The Company is cooperating with the NY AG and its investigation. *As a result of this investigation, a non-executive corporate employee was placed on administrative leave during the pendency of an internal review process. It is not possible at this time to determine whether the Company will incur any fines, penalties, or liabilities in connection with the investigation*. If, however, a government authority was to allege that illegal conduct was committed by the Company or any of its employees or executives, regardless of whether any such claims are valid, such claims have the potential to affect our business and defending such claims may be expensive and may divert time, attention and money away from our operations and hurt our performance. Further, adverse publicity resulting from these claims may hurt our business.

37.     The statement in ¶ 36 was materially false and misleading at the time it was made because, by only revealing that a "non-executive corporate employee" had been placed on administrative lead, it understated the likelihood of the Company facing material legal consequences, considering that the misconduct in this complaint was, as discussed below, conducted over a multi-year period and directed by executives including Defendants Langan and Chhay.

38.     The statements contained in ¶¶ 16, 18, 20, 23, 24, 26, 29, 31, 34 and 36 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendants engaged in tax fraud; (2) Defendants committed bribery to cover up the fact that they committed tax fraud; (3) as a result, Defendants understated the legal risk facing the Company; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**THE TRUTH BEGINS TO EMERGE**

39.     On September 16, 2025, Letitia James, the New York State Attorney General ("AG James") posted an announcement entitled "Attorney General James Indicts Strip Club Company Executives for Multimillion Dollar Tax Fraud Scheme and Bribery of State Tax Auditor." (The "Announcement"). The Announcement further stated:

> *[AG James] today announced the indictments of top executives of RCI Hospitality Holdings, Inc., a company that owns and operates strip clubs throughout the country, for their roles in a major, multimillion dollar criminal tax fraud and bribery scheme.* An investigation by the Office of the Attorney General (OAG) revealed that RCI executives bribed an auditor with the New York Department of Taxation and Finance (DTF) *to avoid paying over $8 million in sales taxes to New York City and the state from 2010 to 2024*. A 79-count indictment unsealed today charges RCI, five of its executives, and three RCI-owned strip clubs in Manhattan with *conspiracy, bribery, and criminal tax fraud, among other crimes*.

40.     The Announcement Further stated the following:

> The OAG's investigation revealed that *RCI and its top executives bribed a former DTF auditor and supervisor, in exchange for favorable treatment during at least six different sales tax audits spanning over a decade*. The auditor received at least 13 complimentary multi-day trips to Florida where he was given up to $5,000 per day for private dances at RCI-owned strip clubs, including Tootsie's Cabaret in Miami. RCI executives paid for the auditor's hotels and restaurant visits during these trips as well.

Additionally, on at least 10 occasions since 2010, Timothy Winata, RCI's controller and accountant, traveled to Manhattan from Texas to provide the auditor with illegal bribes at RCI's three Manhattan clubs, Rick's Cabaret, Vivid Cabaret, and Hoops Cabaret and Sports Bar.

Winata was responsible for directly providing the bribes to the auditor and accompanied him on trips to RCI clubs. After one such trip in February 2022, the auditor texted Winata, "***This was the best trip I had in Florida. The girls were very beautiful and nice…I hope we can have another trip before the summer***."

***The trips and bribes were authorized, directed, and overseen by Eric Langan, RCI's president and Chief Executive Officer, Bradley Chhay, RCI's Chief Financial Officer***, Ahmed Anakar, RCI's Director of Operations, and Shaun Kevlin, a Regional Manager for RCI's New York City strip clubs and later RCI's Assistant Director of Nightclub Operations. ***The defendants also falsified the business records of RCI strip clubs to conceal their crimes and recorded the cash payments used to bribe the auditor as "promotional" expenses for the clubs***.

41.    The Announcement further stated:

RCI clubs use an in-house currency called "Dance Dollars" that customers purchase and redeem for private dances. As part of its tax fraud scheme, ***RCI failed to collect and pay over $8 million in sales taxes on the sale of Dance Dollars. In exchange for the illegal bribes provided to him, the auditor agreed to settle pending and future DTF sales tax audits of RCI's Manhattan strip clubs for substantially less in back taxes, penalties, and interest than were owed, saving RCI millions of dollars***.

In emails and text messages, the defendants openly discussed using trips to RCI clubs to help secure more favorable treatment from the auditor. For example, in June 2023, Chhay texted Langan and Anakar to boast that one of their clubs, Vivid Cabaret, would pay just $47,000 as the result of an audit. "Tim [Winata] got the guy to $47k in Vivid New York. But owes him a couple trips," he wrote. In another instance, Winata explained that RCI "may need to pamper [the auditor] more this time" to obtain a favorable settlement of a sales tax audit.

42.    The Announcement further stated:

Langan, RCI's President and CEO, allegedly personally supervised RCI's negotiations with the auditor and approved the payment of bribes to him.

43.    The Announcement stated the following about corporations charged:

The corporations charged are RCI and its three Manhattan-based subsidiaries: Rick's Cabaret, Vivid Cabaret, and Hoops Cabaret and Sports Bar.

44.     The Announcement said the following about the criminal penalties faced by Defendants:

> If convicted on the top count of Criminal Tax Fraud in the First Degree, Langan, Winata, and Anakar face a maximum sentence of eight and one third to 25 years in prison. If convicted on the top count of Bribery in the Second Degree that they are charged with, Chhay and Kevlin face a maximum sentence of five to 15 years in prison.

45.     On this news, the price of RCI stock fell $5.53 per share, or 16%, to close at $28.79 on September 16, 2025. The next day, it fell a further $2.99, or 10.38%, to close at $25.80 per share on September 17, 2025.

46.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired RCI securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of RCI, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, RCI securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

18

49.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of RCI;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused RCI to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of RCI securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

52.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

53.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- RCI shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- As a public issuer, RCI filed periodic public reports;

- RCI regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- RCI' securities were liquid and traded with moderate to heavy volume during the Class Period; and

- RCI was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

54.    Based on the foregoing, the market for RCI securities promptly digested current information regarding RCI from all publicly available sources and reflected such information in

the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

55.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

58.      During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

59.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of RCI securities during the Class Period.

60.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of RCI were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of RCI, their control over, and/or receipt and/or modification of RCI' allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning RCI, participated in the fraudulent scheme alleged herein.

61.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other RCI personnel to members of the investing public, including Plaintiff and the Class.

62.     As a result of the foregoing, the market price of RCI securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of RCI securities during the Class Period in purchasing RCI securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

22

63.    Had Plaintiff and the other members of the Class been aware that the market price of RCI securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased RCI securities at the artificially inflated prices that they did, or at all.

64.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

65.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of RCI securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

66.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67.    During the Class Period, the Individual Defendants participated in the operation and management of RCI, and conducted and participated, directly and indirectly, in the conduct of RCI' business affairs. Because of their senior positions, they knew the adverse non-public information about RCI's business practices.

68.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to RCI' financial condition and results of operations, and to correct promptly any public statements issued by RCI which had become materially false or misleading.

69.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which RCI disseminated in the marketplace during the Class Period concerning RCI' results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause RCI to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of RCI within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of RCI securities.

70.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by RCI.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 21, 2025                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
<u>/s/ Phillip Kim</u>
Phillip Kim, Esq., attorney-in-charge
Bar Number: 1036827
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
lrosen@rosenlegal.com

*Counsel for Plaintiff*