**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ALEX HERNANDEZ, Individually and on behalf of all others similarly situated,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>RCI HOSPITALITY HOLDINGS, INC., ERIC S. LANGAN, and BRADLEY CHHAY,<br><br>　　　Defendants. | Case No: 4:25-cv-04477<br><br>CLASS ACTION<br><br>**MOVANT SCOTT BIALES' OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br>JUDGE KEITH P. ELLISON |

### STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

This matter is a putative securities class action against RCI Hospitality Holdings, Inc and certain of its officers and executives. Pursuant to PSLRA procedure, the matter is now at the lead plaintiff selection stage. See 15 U.S.C. §78u-4(a)(3)(B). Multiple parties have put forth motions seeking to appointed lead plaintiff. Here, Movant Scott Biales ("Movant" or "Mr. Biales"), respectfully submits this Memorandum of Law in Opposition to Competing Motions to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel. Dkt. Nos. 8, 10.

### STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

I. Whether Movant is the "most adequate plaintiff," and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B)(i), and whether competing Lead Plaintiff motions should be denied accordingly.

II. Whether Movant's selection of Rosen Law as Lead Counsel should be approved. Under the PSLRA, the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class. See 15 U.S.C. §78u-4(a)(3)(B)(v)

1

## INTRODUCTION

As put forth in his opening brief, Mr. Biales is a sophisticated investor with over twenty years of investing experience. Dkt. No. 9 at 6. Mr. Biales lost approximately $108,656 in his investments in RCI securities. *Id*. at 4. There is one competing movant: the unrelated group of Paul Stroub and William J. Neylan III.[1]

The Stroub-Neylan group claims a loss of $375,033.57. However, the group is an inappropriate group movant, one brought together by counsel solely to create the largest financial interest. Mr. Stroud and Mr. Neylan hail from opposite ends of the country, have no pre-existing relationship, and provide no concrete reason for their decision to move jointly. As such, the Stroub-Neylan group is not an appropriate representative for the putative class.

Because the Stroub-Neylan group is not an appropriate representative for the class under the PSLRA, Mr. Biales, who lost $108,656, is the presumptive Lead Plaintiff. Mr. Biales should be appointed Lead Plaintiff, and his selection of Lead Counsel should be approved.

## ARGUMENT

### I. THE STROUB-NEYLAN GROUP IS INADEQUATE AND ATYPICAL

#### a. The members of the group have no preexisting relationship.

The Stroub-Neylan group is an impermissible amalgamation of unrelated individuals. In the Fifth Circuit the touchstone inquiry in evaluating to the adequacy of a lead plaintiff group is whether the group members have a pre-existing relationship. *See, e.g., Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 478 n.2 (5th Cir. 2001) ("requiring at maximum a small group with the largest financial interest in the outcome of the litigation ***and a pre-litigation relationship based on more than their losing investment***….") (internal citations omitted) (emphasis added); *In re Waste Management, Inc.*, 128 F. Supp. 2d 401, at *431-432 (S.D. Tex.

---

[1] A third movant, Douglas Snyder, withdrew his lead plaintiff motion. Dkt. No. 13.

2000); *Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at *6 (S.D. Tex. Mar. 23, 2017). Courts have "refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008) (quoting *In re Gemstar–TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002); *see also In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019).

Other courts that consider unrelated groups require members to make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 262 (S.D.N.Y. 2019). The existence of a pre-litigation relationship between group members (or lack thereof) is considered a key element of that analysis. *See In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 442 (S.D. Tex. 2002) ("[proposed] group must be restricted to a few cohesive parties and the movant **must bear the burden of demonstrating…*a pre-litigation relationship based on more than losing the investments at issue*.**") (emphasis added); *Makhlouf,* 2017 WL 1092311 at *10 (refusing to appoint group of two institutional investors that "lack[ed] a pre-litigation relationship based on more than losing investments at issue" and finding "[t]o satisfy the terms and effectuate the underlying policy of the PSLRA to guarantee effective control of the litigation and supervision of the lawyers by the plaintiffs, unrestricted aggregation of unrelated plaintiffs by manipulating lawyers should not be permitted.").

Here, as in both *Enron* and *Makhlouf*, the only connection between Mr. Stroub and Mr. Neylan is that they lost money in their RCI investments. *See* Dkt. No. 10-5. This is not nearly a

close enough relationship to meet the standard articulated in the above cases, and it is not the sort of lead plaintiff relationship envisioned by the PSLRA; indeed, the entirety of the putative class shares this relationship. Mr. Stroub and Mr. Neylan attempt to buttress this non-existent relationship through the submission of a joint declaration, but this declaration is boilerplate and insufficient. *See id.*

Indeed, rather than evidencing any sort of pre-existing relationship, the declaration first suggests that the group members' counsel connected them to each other (Dkt. No. 10-5 at ¶6), then implies that they jointly decided to retain their counsel together. *Id.* at ¶8. Regardless of the exact contours of their retention of counsel, however, it is clear from the declaration that Mr. Stroub and Mr. Neylan did not independently meet; rather they were brought together by counsel to increase their aggregate loss. The Court should therefore find the group to be an inadequate lead plaintiff for the class. *See Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff status to an investor group despite their larger losses due, in part, to the group apparently being a "lawyer-created group" whose members "span[] the country's geography"); *In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation" (internal quotation marks omitted) and "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation"); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379 at *5 (D.N.J. Nov. 6, 2018), *reconsideration denied*, 2019 WL 2710273 (D.N.J. June 26, 2019) (denying lead plaintiff status to a group of investors because the "joint declaration

4

[did] not allay the [] court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff.").

As such, the Stroub-Neylan group is not qualified to serve as lead plaintiff.

### b. Mr. Stroub is an options trader, and therefore an atypical lead plaintiff.

In addition to being part of an improper lawyer-made group there are additional reasons that render Mr. Stroub inadequate or atypical. Mr. Stroub is an options trader. He executed dozens of options contracts, through multiple accounts, over multiple years. Dkt. No. 10-2 at *5-6. Crucially, he purchased put option contracts, in which he bet that RCI's stock price would go down – thereby putting him in a position directly opposed to those of the putative class members—who were betting the price of RCI stock would go up in value. *Id.* at *4. Courts around the country have found that options investors can be atypical and therefore unfit to represent a putative class. *See Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 566–67 (E.D. Tex. 2021) (collecting cases); see also *Gelt Trading, Ltd. v. Co-Diagnostics*, Inc., 2021 WL 913934, at *4 (D. Utah Mar. 10, 2021) (collecting cases).

The reasoning underlying these decisions is simple: because options investments are fundamentally different from traditional stock investments, an options-trading lead plaintiff movant will not share the same claims as those who trade stock. See e.g. *Menashe v. Biogen Inc.*, 2021 WL 5533455, at *4 (C.D. Cal. Feb. 24, 2021) (options trading movant will have "some claims that are not typical of those of the class members that merely purchased shares."). Furthermore, even if the defenses aimed at Mr. Stroub's options trading are ultimately exhausted, the putative class runs the risk that "the nature of [Mr. Stroub]'s options trading and the information he used to make investment decisions could become the focus of the litigation,

distracting from the central issue: did [RCI] commit a fraud on the market?" *Applestein v. Medivation Inc*, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010).

"[A]ppointing [an] options investor as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and... could subject the class to unique defenses, causing unnecessary conflict.'" *Cook v. Allergan PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (quoting *In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009)). Considering the inherent complexity of securities class actions, the putative class can ill afford the additional distraction and conflict that appointing the Stroub-Neylan group – with its attendant options-trading issues – would bring. As such, the Court should find that Stroub-Neylan group is atypical, and therefore cannot be appointed lead plaintiff.

## II.     MR. BIALES SHOULD BE APPOINTED LEAD PLAINTIFF

Mr. Biales, with losses of $108,656, is the presumptive Lead Plaintiff as he has the largest financial interest and satisfies the typicality and adequacy requirements of Rule 23. Indeed, as explained in his opening papers Mr. Biales holds a bachelor's degree as well as a master's in biomedical engineering, and is employed in early asset commercial strategy within a large biotech company. He has over 20 years of investing experience, with over 10 years of experience investing in individual equities. To overcome the strong presumption entitling Mr. Biales to be appointed Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists in this case. As Mr. Biales has made a demonstration of his typicality and adequacy and has the largest remaining financial interest, and no movant has rebutted the presumption with proof, Mr. Biales must be appointed Lead Plaintiff.

### III. MR. BIALES' SELECTION OF COUNSEL SHOULD BE APPOINTED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Mr. Biales has selected The Rosen Law Firm, P.A. ("RLF") as Lead Counsel. RLF has the resources and expertise to litigate this action efficiently and aggressively. As RLF's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. No. 9-5. The Court may therefore be assured that by approving Mr. Biales' selection of counsel, the members of the class will receive excellent legal representation.

### CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (a) appointing Movant as Lead Plaintiff of the class; (b) approving The Rosen Law Firm P.A. as Lead Counsel; and (c) granting such other relief as the Court may deem to be just and proper.

Dated: December 11, 2025          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ *Phillip Kim*
Phillip Kim, Esq., attorney-in-charge
State Bar Number: NY4145397
S.D. Tex. Bar Number: 1036827275
Madison Avenue, 40th Floor
New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827

Email: pkim@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of December 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Phillip Kim*