UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALEX HERNANDEZ, Individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>RCI HOSPITALITY HOLDINGS, INC., ERIC S. LANGAN, and BRADLEY CHHAY,<br><br>　　　　　　　　　　Defendants. | Case No. 4:25-cv-4477-KPE<br><br>Hon. Keith P. Ellison<br><br><u>CLASS ACTION</u> |

**REPLY IN FURTHER SUPPORT OF THE MOTION OF
STROUB AND NEYLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF COUNSEL**

Paul Stroub and Neylan Trust ("Stroub and Neylan") respectfully submit this reply in further support of their motion for appointment as Lead Plaintiff (ECF No. 10),[1] and in response to the opposition filed by competing movant Biales (ECF No. 14).

## I. NATURE AND STAGE OF PROCEEDINGS

Stroub and Neylan have timely filed a motion, pursuant to Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u- 4(a)(3), as amended by the PSLRA, requesting that the Court: (1) appoint Stroub and Neylan as Lead Plaintiff for the Class; and (2) approve their selection of Saxena White as Lead Counsel for the Class and Ajamie as Liaison Counsel for the Class. Competing motions were filed by Biales (ECF No. 9) and Snyder (ECF No. 8). On December 11, 2025, Snyder withdrew his motion (ECF No. 13), and Biales filed his opposition (ECF No. 14).

## II. ISSUES TO BE RULED ON BY COURT

(1) Whether Stroub and Neylan should be appointed as Lead Plaintiff because they are the movant asserting the largest financial interest, have made a prima facie showing of typicality and adequacy under Rule 23, and are not subject to unique defenses. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); and

(2) Whether Stroub and Neylan's selection of Saxena White as Lead Counsel and Ajamie as Liaison Counsel for the Class should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

## III. SHORT SUMMARY OF ARGUMENT

Stroub and Neylan are the presumptive "most adequate plaintiff" under the PSLRA based on their superior financial interest—having suffered **$375,033** in losses, **over three times more** than Biales, the only competing movant. *Compare* ECF No. 10-3 *with* ECF No. 9-4. Paul Stroub and Neylan Trust each have larger individual losses than Biales, *id.*, which courts in this Circuit,

---

[1] Unless otherwise noted, all capitalized but undefined terms have the meanings ascribed in Stroub and Neylan's motion and response (ECF Nos. 10, 15), all emphasis is added, and internal quotations and citations are omitted.

1

District, and elsewhere have found dispositive in appointing groups as lead plaintiff. Stroub and Neylan have provided detailed evidence regarding their origins, cohesiveness, motivations, and ability to oversee counsel and the litigation, which satisfies the typicality and adequacy requirements of Rule 23. Stroub and Neylan are therefore the presumptive Lead Plaintiff.

Once the presumption attaches, "[Biales] must offer **proof** that [Stroub and Neylan] will not fairly and adequately protect the interests of the class; or [are] subject to unique defenses that render [Stroub and Neylan] incapable of adequately representing the class." *Stein v. Match Grp., Inc.*, No. 16-cv-549, 2016 WL 3194334, at *7 (N.D. Tex. June 9, 2016); *see also Bray v. Frontier Commc'ns Corp.*, No. 17-cv-1617, 2018 WL 525485, at *10 (D. Conn. Jan. 18, 2018) (rebutting the presumption requires "**exacting proof** that [Stroub and Neylan] . . . are atypical or inadequate."). Offering no such proof, Biales raises speculative assertions and specious contentions to wrongly suggest that (1) Stroub and Neylan are an improper group; and (2) Paul Stroub is atypical and subject to a unique trading defense. These challenges misstate the law, ignore the facts, and fail to rebut the presumption in favor of Stroub and Neylan.

## IV. ARGUMENT

### A. Stroub and Neylan Are the Presumptive Lead Plaintiff

Stroub and Neylan have the "largest financial interest," have made a *prima facie* showing of their adequacy and typicality, and are thus entitled to the "most adequate plaintiff" presumption. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Stroub and Neylan's loss is over **$266,000 larger** than Biales's loss, and Paul Stroub and Neylan Trust each have individual losses larger than Biales's. *Compare* ECF No. 10-3 *with* ECF No. 9-4; *see also Kakkar v. Bellicum Pharms., Inc.*, No. 18-cv-338, 2019 WL 1367653, at *4 (S.D. Tex. Mar. 26, 2019) (appointing a group where one member "alone has over double the largest single loss of all the individual investor Movants.").

2

Moreover, Stroub and Neylan have the largest financial interest under all four *Lax-Olsten* factors, including more total and net shares purchased and more net funds expended than Biales. *Compare* ECF No. 10-3 *with* ECF No. 9-4. Paul Stroub and Neylan Trust both expended greater net funds on an individual basis than Biales, and Neylan Trust purchased more total and net shares on an individual basis than Biales. *See id.*; *see also Izadjoo v. Kratz*, No. 15-cv-2213, 2016 WL 343989, at *2-3 (S.D. Tex. Jan. 28, 2016) (appointing pair of individuals where it was "undisputed that [they] ha[d] the largest financial interest" where "[t]hey purchased the largest number of total and net shares, spent the largest amount of total net funds, and suffered the largest loss."). While Biales claims Stroub and Neylan are "an inappropriate group movant," (ECF No. 14 at 2), he is wrong. Stroub and Neylan have the largest financial interest, have made the requisite *prima facie* showing of adequacy and typicality, and are the presumptive Lead Plaintiff.

  **B.**  **Biales Fails to Provide "Proof" to Rebut This Presumption**

    **1.**  **Stroub and Neylan Are a Small, Cohesive Group Expressly Permitted by the PSLRA**

The PSLRA expressly permits the appointment of a "group" as lead plaintiff, especially when comprised of a small, cohesive pair like Stroub and Neylan. 15 U.S.C. § 78u4(a)(3)(B); *see also Bellicum*, 2019 WL 1367653, at *3 (noting "the PSLRA expressly allows for a person or group of persons to be appointed lead plaintiff."). Courts in this District and elsewhere routinely appoint lead plaintiff groups. *See Bellicum*, 2019 WL 1367653, at *5 (appointing group of four individuals); *Match*, 2016 WL 3194334, at *4 (appointing pair of individuals); *Lentz v. Citadel Sec. Software, Inc.*, No. 5-cv-100, 2005 WL 1249441, at *2 (N.D. Tex. May 25, 2005) (appointing group of four individuals); *see also Aguilar v. Vitamin Shoppe, Inc.*, No. 17-cv-6454, 2018 WL 1960444, at *11 (D.N.J. Apr. 25, 2018) (appointing group of three individuals). Biales's counsel knows this to be true, as they have been appointed lead counsel on behalf of lead plaintiff groups

3

of unrelated investors numerous times in prior PSLRA litigation—including as recently as three days ago in the *Iovance Biotherapeutics* case.[2]

Biales primarily argues Stroub and Neylan's motion should be denied because they (i) have no pre-existing relationship, (ii) were cobbled together by counsel, and (iii) cannot function cohesively. *See* ECF No. 14 at 2-4. These scattershot attacks lack merit. Most courts agree that "a pre-existing relationship between [investors] that comprise a group is not required if the resulting group is small and cohesive enough such that it can adequately control and oversee the litigation." *Match*, 2016 WL 3194334, at *6; *Bellicum*, 2019 WL 1367653, at *4 (rejecting argument that lack of a "pre-litigation relationship" was disqualifying where group submitted a "joint declaration [that] demonstrates their plan to 'coordinate their efforts, oversee counsel, and diligently prosecute this litigation for the benefit of the class.'"). Pre-litigation relationships have **never** been required for joint lead plaintiff appointment under the PSLRA. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The [PSLRA] contains no requirement mandating that the members of a proper group be 'related' in some manner.").

Biales's contention that Stroub and Neylan joined to aggregate their losses (ECF No. 14 at 2, 4) immediately fails because both group members individually have larger losses than Biales. *See Bellicum*, 2019 WL 1367653, at *4 (emphasizing that one group member alone claimed the largest individual loss and "[t]herefore, the group is not too large and there is no evidence that it was formed in bad faith—it was not a group brought together in order to manufacture the greatest

---

[2] *See, e.g.*, *In re Iovance Biotherapeutics, Inc. Sec. Litig.*, No. 25-cv-04177, 2025 WL 3637616, at *6 (N.D. Cal. Dec. 15, 2025) (appointing unrelated pair of individuals as lead plaintiff and Biales's counsel as lead counsel); *Lavin v. Virgin Galactic Holdings, Inc.*, No. 21-cv-3070, 2021 WL 5409798, at *5 (E.D.N.Y. Sept. 17, 2021) (appointing unrelated pair of individuals as co-lead plaintiff and Biales's counsel as co-lead counsel); *Lawless v. Aurora Cannabis Inc.*, No. 20-13819, 2021 WL 2850451, at *5 (D.N.J. July 8, 2021), *subsequent determination*, 2021 WL 3856158 (D.N.J. Aug. 27, 2021) (appointing unrelated group of three individuals as lead plaintiff and Biales's counsel as co-lead counsel); *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 426 (E.D.N.Y. 2018) (appointing unrelated pair of individuals as lead plaintiff and Biales's counsel as co-lead counsel).

4

financial loss."); *Match*, 2016 WL 3194334, at *4 (noting that both group members individually had the largest loss of any competing movant) (citing *Citadel*, 2005 WL 1249441, at *2 (noting that one of a group's members claimed the largest loss individually and thus the group was not "cobbled together")).[3] And Biales's conclusory challenge to Stroub and Neylan's origin—and in particular the baseless contention that Paul Stroub and Neylan Trust might not be able to function cohesively and effectively manage the litigation apart from their counsel (ECF No. 14 at 3-4)—is belied by their detailed Joint Declaration.

Specifically, their Joint Declaration demonstrates they will function efficiently as Lead Plaintiff and leaves no doubt they are acting independent of counsel and control the litigation. Their Joint Declaration demonstrates that ***their*** decision to seek joint leadership was reached only after mutually expressing interest in partnering with another likeminded investor to prosecute this action, and weighing the benefits and potential drawbacks of proceeding individually or jointly. ECF No. 10-5 ¶¶ 4, 6, 14. Prior to moving, Paul Stroub and William J. Neylan III, on behalf of Neylan Trust, held a discussion during which they conferred about, among other things, their objectives for jointly prosecuting this case. *Id.* ¶¶ 16-17. Stroub and Neylan have taken significant steps to ensure this case is prosecuted in the best interests of the Class through their oversight of counsel and will continue to do so if appointed Lead Plaintiff, *id.* ¶¶ 16, 19, while making detailed plans to resolve any disagreement through a consensus process by consulting with one another and their counsel. *Id.* ¶ 18. These affirmations easily meet or exceed those found acceptable by courts within this Circuit in appointing similar groups. *See*, *e.g.*, *Bellicum*, 2019 WL 1367653, at *4

---

[3] *See also Sequans*, 289 F. Supp. 3d at 425 (finding where one group member "standing alone would still have the largest financial interest in the case . . . potential lead plaintiffs are not being deprived of the PSLRA presumption by the aggregation of parties."); *Vitamin Shoppe*, 2018 WL 1960444, at *11 (finding group with the largest individual loss "eases concerns about plaintiffs coming together solely to aggregate losses."); *Hirtenstein v. Cempra, Inc.*, No. 16-cv-1303, 2017 WL 2874588, at *4 (M.D.N.C. July 5, 2017) (finding group that included "the largest loss of any individual movant" was "not cobbled together solely for the purpose of aggregating the largest losses.").

5

(crediting group's joint declaration that detailed "plans for group communications, collaboration, and management of the litigation"); *Match*, 2016 WL 3194334, at *5-6 (finding joint declaration "adequately makes the required cohesiveness showing" where it "explain[ed] how the group was formed; how its members would function collectively; how potential disputes among the members or counsel would be resolved; and how the group members and counsel would communicate with one another about the litigation.").

Biales ***fails to cite a single case*** where a small, cohesive pair of individuals (like Stroub and Neylan) with the largest aggregate ***and*** individual financial interests were rejected in favor of another individual with an inferior financial interest (like Biales). While *Micron*, *Enron*, and *Makhlouf*, ECF No. 14 at 3, declined to appoint lead plaintiff groups, none of those cases appointed an individual like Biales with the smallest financial interest. *See Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263-65 (S.D.N.Y. 2019) (appointing single investor, one member of a disaggregated pair of individuals, who had the largest individual financial interest); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 454 & n. 31 (S.D. Tex. 2002) (appointing single institutional investor with the largest individual financial interest); *Makhlouf v. Tailored Brands, Inc.*, No. 16-cv-838, 2017 WL 1092311, at *6 (S.D. Tex. Mar. 23, 2017) (appointing single pension fund with the largest individual financial interest). In contrast, both Paul Stroub and Neylan Trust individually have larger financial interests than Biales, and Stroub and Neylan have demonstrated their ability to work together in the best interests of the Class. The balance of Biales's proffered authority confirms that courts have expressed skepticism towards groups that lacked the largest individual financial interest, failed to submit evidence of their cohesiveness (like a sworn joint declaration memorializing a plan to work together), or with more than five members—***not*** a small,

6

cohesive group like Stroub and Neylan who possess the largest aggregate *and* individual financial interests.[4]

Biales cannot credibly suggest that Stroub and Neylan have ceded control of this litigation to their lawyers. In fact, this partnership would only benefit Biales and the Class since the "PSLRA does explicitly authorize groups of class members to serve as a 'lead plaintiff'" and many "courts have noted that multiple lead plaintiffs might offer a greater range of perspectives or that the class would benefit from their greater collective resources and experience." 7 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 22:36 & n.11 (6th ed. 2023) (explaining that such cohesive lead plaintiff partnerships "best protect[] the interests of the class; afford[] the class the benefit of combined resources to defray what may prove to be significant up-front litigation costs; and give[] the class the advantages of the combined knowledge, experience, and judgment of both lead plaintiffs."). Biales's challenge to this partnership should be rejected.

### 2.     Stroub Is Neither Atypical Nor Subject to Unique Defenses

Biales speculates that Paul Stroub's transactions in options render him atypical and expose him to unique defenses. They do not. First, Paul Stroub did not, as Biales mistakenly argues,

---

[4] *See Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 478 n.2 (5th Cir. 2001) (explaining that "[a]lthough the appointment of such a large group [of 39 members] to serve as lead plaintiff is not before this court, it is notable that the [SEC] has taken the position that a group of investors appointed to serve as lead plaintiffs ordinarily should comprise no more than three to five persons"); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413-14 (S.D. Tex. 2000) (appointing single institutional investor with the largest individual financial interest over 23-member group, 37-member group, and 9-member group); *Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-2204, 2008 WL 942273, at *4-5 (D. Ariz. Apr. 7, 2008) (appointing public retirement fund over three groups that provided no "plan to work together as a cohesive unit," was subject to a unique defense for "high-volume" trading, and provided "no evidence" of cohesion, respectively); *In re Cloudera, Inc. Sec. Litig.*, No. 19-cv-3221, 2019 WL 6842021, at *5-7 (N.D. Cal. Dec. 16, 2019) (appointing single investor who had the largest individual financial interest over group of two institutions); *Stires v. Eco Sci. Sols., Inc.*, No. 17-cv-3707, 2018 WL 5784817, at *4-5 (D.N.J. Feb. 14, 2018) (appointing single investor who had the largest individual financial interest over group of five individuals who failed to submit a sworn joint declaration with their motion); *In re Ply Gem Holdings, Inc., Sec. Litig.*, No. 14-cv-3577, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (appointing single institutional investor, one member of a disaggregated trio of institutions, that had the largest individual financial interest); *Takata v. Riot Blockchain, Inc.*, No. 18-cv-2293, 2018 WL 5801379, at *5-6 (D.N.J. Nov. 6, 2018) (appointing single investor over two groups of individuals who failed to submit a sworn joint declaration with their motion and whose sworn joint declaration lacked "any mention of contact prior to filing the motion," respectively).

"*purchase*[] put option contracts, in which he bet that RCI's stock price would go down." *See* ECF No. 14 at 5.  In fact, he purchased *zero* put options.  Rather, his sworn certification (ECF No. 10-2) and the chart analyzing his transactions and losses (ECF No. 10-3) show that, in addition to his common stock purchases that resulted in a LIFO loss of $196,321, Paul Stroub *sold* put options, which either expired or were assigned, for a small gain of $11,551—betting that the stock price would go up, not down.[5]  *See In re Tesla, Inc. Sec. Litig.*, No. 18-cv-04865, 2018 WL 6609569, at *3 (N.D. Cal. Dec. 17, 2018) (explaining that "an investor who *sells* a put option expects that the value of the underlying stock will rise") (emphasis in the original).  For example, Paul Stroub sold 11 $70.00 put options (10 on August 16, 2022, and one on August 17, 2022) with an August 19, 2022 expiration, at a price of $0.45 per contract, and all 11 put options expired without assignment on August 22, 2022, with the premium received at sale retained.  *See* Schedule A, ECF No. 10-2 at 5, Loss Chart, ECF No. 10-3 at 7 (reflecting put options sales and expiration).[6]

Second, courts regularly appoint options investors as lead plaintiff.  Where, as here, the Class is defined broadly to include persons or entities who purchased or otherwise acquired publicly traded RCI *securities* during the Class Period—not just common stock (*see* ECF No. 1, ¶¶ 1, 47)—courts routinely appoint options investors to represent the interests of the entire class. For example, in *Hall v. Medicis Pharmaceutical Corp.*, the Court appointed as lead plaintiff an investor that "purchased and *sold put options*" to represent "all purchasers of Medicis

---

[5] The fact that Paul Stroub realized a small gain from his options sales does not render him atypical or subject him to unique defenses.  *See*, *e.g.*, *Chauhan v. Intercept Pharms.*, No. 21-cv-36, 2021 WL 235890, at *6-7 & n.5 (S.D.N.Y. Jan. 25, 2021) (appointing individual—who, like Paul Stroub, offset stock losses with options gains—over objections that options trades rendered individual "incapable of properly representing a class of stockholders").

[6] In addition to put options sales that either expired or were assigned, Paul Stroub sold two $60.00 call options on May 9, 2024 with a May 17, 2024 expiration, at a price of $0.23 per contract.  At the time of these sales, Paul Stroub held sufficient RCI stock to cover the calls.  This transaction is a covered call—designed to yield gains from stock holdings if the stock price remains stable or rises modestly—that neither renders Stroub atypical nor subjects him to unique defenses.  *See Intercept Pharms.*, 2021 WL 235890, at *6 (appointing individual that "engaged in a covered call investment strategy" and explaining that, "[a]bsent evidence that [he] did not rely on the integrity of the market price, which has not been offered at this stage, there is no reason to disqualify [him] as lead plaintiff").

'securities[,]'" including common stockholders. No. 08-cv-1821, 2009 WL 648626, at *4-6 (D. Ariz. Mar. 11, 2009). Similarly, in *Flora v. Hain Celestial Group, Inc.*, the court appointed an options investor as co-lead plaintiff, explaining that "the fact that Rosewood only purchased options during the class period does not rebut the presumption in its favor." No. 16-cv-4581, 2017 WL 11816987, at *1 (E.D.N.Y. June 5, 2017) ("Investors who traded in options can be appointed lead plaintiff when the focus of the typicality analysis is, as here, whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct").

Third, courts routinely appoint options investors as class representatives under heightened scrutiny at the class certification stage. *See*, *e.g.*, *In re Priceline.com Sec. Litig.*, 236 F.R.D. 89, 99 (D. Conn. 2006) (appointing options trader as class representative); *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 503 (3d Cir. 1988) (reversing district court order that a "purchaser of call options on Beneficial stock" lacked "standing to sue" under the Exchange Act or "to act as a class representative for purchasers of such call options and for purchasers of Beneficial stock"). *In re Adobe Systems, Inc. Securities Litigation* provides guidance on this point, where the court appointed two options traders as class representatives over defendants' objections, reasoning that "since the value of options is directly related to the value of common stock, defendants had reason to expect that options traders would rely on their alleged misrepresentations." 139 F.R.D. 150, 155 (N.D. Cal. 1991). Similarly, defendants in *In re Sepracor* argued (like Biales here) that, "as an options trader . . ., [a proposed class representative was] ineligible to represent a class of stock purchasers." 233 F.R.D. 52, 56 (D. Mass. 2005). The court appointed the class representative over defendants' objections, explaining that "purchasers of different types of securities have often been found qualified to represent purchasers of other types of securities of the same issuer." *Id.*

9

Biales's authorities (ECF No. 14 at 5-6) hold no differently. In *Patel v. Reata Pharmaceuticals, Inc.*, the Court declined to appoint an investor who "incurred financial loss only from his option contracts and in fact profited from his Reata common-stock investments." 549 F. Supp. 3d 559, 568 (E.D. Tex. July 15, 2021). Here, by contrast, Paul Stroub lost $196,321 on his stock purchases. ECF No. 10-3 at 10. Similarly, *Co-Diagnostics*, *Biogen*, and *Medivation* disqualified investors who transacted only in options. *See Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, No. 20-cv-368, 2021 WL 913934, at *5 (D. Utah Mar. 10, 2021) (disqualifying "movant who purchased options rather than stock"); *Menashe v. Biogen Inc.*, No. 20-cv-10399, 2021 WL 5533455, at *4 (C.D. Cal. 2021) (disqualifying investor "because he *only* engaged in options trading") (emphasis in the original); *Applestein v. Medivation*, No. 10-cv-998, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) (disqualifying investor who "did not own a single share of" stock).[7] Thus, there is no evidence, much less "proof," of atypicality or exposure to unique defenses.

### C. Biales's Motion Should Be Denied

Biales does not qualify as the "most adequate plaintiff." The Court's inquiry should therefore begin and end with Stroub and Neylan.[8]

## V. **CONCLUSION**

For these reasons and those in prior briefs (ECF Nos. 10, 15), Stroub and Neylan respectfully request that the Court grant their motion and deny Biales's competing motion.

---

[7] Unlike the Class definition here, the *Allergan* class was defined as "all investors who purchased or otherwise acquired [Allergan] **common stock**" or "**shares**." *See Cook v. Allergan PLC*, No. 18-cv-12089, 2018 WL 6714635, ¶ 1 (S.D.N.Y. Dec. 20, 2018); *Klein v. Allergan PLC*, No. 18-cv-12219, 2018 WL 6804302, ¶ 1 (S.D.N.Y. Dec. 26, 2018). The Court found that an investor, for whom "60% of his claimed losses" were from options trading, would not "turn out to be typical of the average **common stockholder**." *Allergan*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019).

[8] And while the Court need not, and should not, engage in a wide-ranging comparison of movants, Stroub and Neylan and the Court **know nothing about** Biales's ability or plan to oversee counsel in prosecuting this complex securities class action because—unlike Stroub and Neylan—Biales failed to submit a sworn declaration with his motion. *See Perez v. HEXO Corp.*, No. 19-cv-10965, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020) (rejecting movant "given [his] failure to provide any information regarding his experience in his preliminary motion.").

10

Dated: December 18, 2025　　　　　　　　　Respectfully submitted,

**AJAMIE LLP**

By: /s/ *Thomas R. Ajamie*
Thomas R. Ajamie, Attorney-in-Charge
Texas Bar No. 00952400
S.D. Tex. No. 6165
John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851
S.D. Tex. No. 38095
Pennzoil Place – South Tower
711 Louisiana, Suite 1600
Houston, TX 77002
Tel.: (713) 860-1600
Fax: (713) 860-1699
tajamie@ajamie.com
jedwards@ajamie.com

*Liaison Counsel for Stroub and Neylan, and Proposed Liaison Counsel for the Class*

**SAXENA WHITE P.A.**
Maya Saxena (*pro hac vice* forthcoming)
Lester R. Hooker (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 200-3263
Fax: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Stroub and Neylan, and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 18, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ Thomas R. Ajamie*
Thomas R. Ajamie