**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| ALEX HERNANDEZ, Individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>     v.<br><br>RCI HOSPITALITY HOLDINGS, INC., ERIC S. LANGAN, and BRADLEY CHHAY,<br><br>                    Defendants. | Case No. 4:25-cv-4477-KPE<br><br>Hon. Keith P. Ellison |

**<u>MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION & SUMMARY OF ARGUMENT ................................................................ 1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING .............................. 2

STATEMENT OF ISSUES ................................................................................................. 2

BACKGROUND ............................................................................................................... 3

LEGAL STANDARD ......................................................................................................... 6

ARGUMENTS & AUTHORITIES ....................................................................................... 7

    I.   The Complaint Fails to Allege a Materially False or Misleading Statement ...................... 7

        A.  The Risk Disclosure Statements Are Not False or Misleading .............................. 7

        B.  The Code of Ethics Statements Are Not Actionable. ......................................... 11

        C.  The Internal Controls Statements Do Not Support a Securities Fraud Claim. ..... 12

        D.  The GAAP Allegations Lack Particularity and Materiality .................................. 13

        E.  The SOX Certifications Cannot Support a Securities Fraud Claim ...................... 15

        F.  Item 303 Does Not Create a Duty to Disclose. .................................................. 16

        G.  The August 8, 2024 Earnings Call Statement is Not Actionable ......................... 17

    II.  The Complaint Fails to Allege Particularized Facts Raising a Strong Inference of Scienter. ............................................................................................................. 18

        A.  The Indictment Does Not Establish a Strong Inference of Scienter. .................... 18

        B.  Alleged Communications Sourced from the Indictment Do Not Raise a Strong Inference of Intent to Defraud Investors. ........................................................... 19

        C.  The Resignations of Langan and Chhay Are Equally Consistent with Nonculpable Explanations. ................................................................................................... 20

        D.  Former-Employee Witnesses and the SEC Investigation Do Not Supply the Missing Particularity. ....................................................................................... 21

        E.  SOX Certifications Do Not Independently Establish Scienter. ........................... 22

        F.  Alleged GAAP Violations Alone Cannot Establish Scienter. ............................. 22

    III. The Complaint Fails to Plead Loss Causation. ................................................................ 23

IV. The Control Person Claim Fails Along with the Section 10(b) Claim. ............................ 24

CONCLUSION................................................................................................................................ 24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
  291 F.3d 336 (5th Cir. 2002) ........................................................................................7

*Abrams v. Baker Hughes, Inc.*,
  292 F.3d 424 (5th Cir. 2002) ........................................................................................7

*In re Alamosa Holdings, Inc. Sec. Litig.*,
  382 F. Supp. 2d 832 (N.D. Tex. 2005) ........................................................................14

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
  915 F.3d 975 (5th Cir. 2009) ....................................................................................2, 25

*In re Alta Mesa Res., Inc. Sec. Litig.*,
  No. 19-cv-957, 2024 U.S. Dist. LEXIS 142669 (S.D. Tex. Aug. 12, 2024) ........9, 13

*In re ArthroCare Corp. Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010)........................................................................21

*In re AT&T Inc. Sec. Litig.*,
  No. 24-cv-01196, 2025 U.S. Dist. LEXIS 114032 (N.D. Tex. June 16, 2025) ..........9

*Carlton v. Cannon*,
  184 F. Supp. 3d 428 (S.D. Tex. 2016) ...................................................................19, 22

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
  497 F.3d 546 (5th Cir. 2007) ......................................................................................22

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)........................................................................................8, 9

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
  686 F. Supp. 2d 404 (D. Del. 2009)............................................................................12

*Crutchfield v. Match Grp., Inc.*,
  529 F. Supp. 3d 570 (N.D. Tex. 2021) ..................................................................18, 21

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
  579 F. Supp. 3d 933 (S.D. Tex. 2022) .................................................................8, 11, 12

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)........................................................................................................6

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
 553 F.3d 187 (2d Cir. 2009) ..................................................................................15

*Edgar v. Anadarko Petroleum Corp.*,
 No. 17-cv-1372, 2019 U.S. Dist. LEXIS 39977 (S.D. Tex. Mar. 13, 2019) .....................18, 20

*Fin. Acquisition Partners LP v. Blackwell*,
 440 F.3d 278 (5th Cir. 2006) .....................................................................................7

*Firefighters Pension & Relief Fund v. Bulmahn*,
 53 F. Supp. 3d 882 (E.D. La. 2014)...............................................................................8

*In re Franklin Bank Corp. Sec. Litig.*,
 782 F. Supp. 2d 364 (S.D. Tex. 2011) (Ellison, J.).............................................................15, 18

*Greenberg v. Crossroads Sys., Inc.*,
 364 F.3d 657 (5th Cir. 2004) ....................................................................................24

*Heck v. Orion Grp. Holdings, Inc.*,
 468 F. Supp. 3d 828 (S.D. Tex. 2020) ..........................................................................14

*Ind. Elec. Workers' Pension Tr. Fund Ibew v. Shaw Grp., Inc.*,
 537 F.3d 527 (5th Cir. 2008) ....................................................................................22

*In re Inotiv Sec. Litig.*,
 No. 22-cv-045, 2024 U.S. Dist. LEXIS 57688 (N.D. Ind. Mar. 29, 2024)...............................19

*Jacobowitz v. Range Res. Corp.*,
 596 F. Supp. 3d 659 (N.D. Tex. 2022) .....................................................................11, 16, 23

*Janbay v. Canadian Solar, Inc.*,
 No. 10-cv-4430, 2012 U.S. Dist. LEXIS 47125 (S.D.N.Y. Mar. 30, 2012)............................13

*In re KBR, Inc. Sec. Litig.*,
 No. 17-cv-1375, 2018 U.S. Dist. LEXIS 221137 (S.D. Tex. Aug. 31, 2018) ...................11, 16

*In re Key Energy Servs., Inc. Sec. Litig.*,
 166 F. Supp. 3d 822 (S.D. Tex. 2016) .......................................................................12, 23

*Linenweber v. Sw. Airlines Co.*,
 693 F. Supp. 3d 661 (N.D. Tex. 2023) .......................................................................12, 13

*Lormand v. US Unwired, Inc.*,
 565 F.3d 228 (5th Cir. 2009) .....................................................................................2, 23

*In re Lumen Techs., Inc. Sec. Litig. II*,
 No. 23-cv-1290, 2025 U.S. Dist. LEXIS 63067 (W.D. La. Mar. 14, 2025)...................8, 9, 10

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
    601 U.S. 257 (2024)......................................................................................................16, 17

*Markman v. Whole Foods Mkt., Inc.*,
    No. 15-cv-681, 2016 U.S. Dist. LEXIS 188833 (W.D. Tex. Aug. 19, 2016)....................14, 23

*Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*,
    935 F.3d 424 (5th Cir. 2019) ........................................................................................6

*Owens v. Jastrow*,
    789 F.3d 529 (5th Cir. 2015) ........................................................................................9

*Parker v. Hyperdynamics Corp.*,
    126 F. Supp. 3d 830 (S.D. Tex. 2015) ........................................................................9, 10

*In re PetroChina Co. Sec. Litig.*,
    120 F. Supp. 3d 340 (S.D.N.Y. 2015)...........................................................................13

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
    307 F. Supp. 3d 583 (S.D. Tex. 2018) ..........................................................................11

*Prause v. TechnipFMC, PLC*,
    No. 17-cv-02368, 2019 U.S. Dist. LEXIS 44230 (S.D. Tex. Jan. 18, 2019)...........................15

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
    769 F.3d 313 (5th Cir. 2014) ......................................................................................23, 24

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ...................................................................................2, 3, 18

*Rosenzweig v. Azurix Corp.*,
    198 F. Supp. 2d 862 (S.D. Tex. 2002) ............................................................................10

*Schott v. Nobilis Health Corp.*,
    211 F. Supp. 3d 936 (S.D. Tex. 2016) ............................................................................21

*SEC v. Bowen*,
    No. 22-cv-1415, 2024 U.S. Dist. LEXIS 127132 (N.D. Tex. July 17, 2024).........................17

*Shen v. Exela Techs., Inc.*,
    No. 20-cv-0691, 2021 U.S. Dist. LEXIS 118164 (N.D. Tex. June 24, 2021) .......................17

*Smith v. Gap, Inc.*,
    177 F.4th 405 (2d Cir. 2026) ......................................................................................17

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
    365 F.3d 353 (5th Cir. 2004) ....................................................................... *passim*

*Teamsters Local 456 Pension Fund v. Universal Health Servs.*,
    396 F. Supp. 3d 413 (E.D. Pa. 2019) ..................................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................................7, 20

*Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*,
    273 F. Supp. 3d 650 (N.D. Tex. 2017) ................................................................16

*Tuchman v. DSC Commc'ns Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ..............................................................................18

**Statutes & Other Authorities**

15 U.S.C. § 78u–4.............................................................................................7, 23

Fed. R. Civ. P. 9(b) ............................................................................................1, 7

Fed. R. Civ. P. 12(b)(6)..........................................................................................1

## INTRODUCTION & SUMMARY OF ARGUMENT

Defendants RCI Hospitality Holdings, Inc. ("RCI" or the "Company"), Eric S. Langan ("Langan"), and Bradley Chhay ("Chhay") (collectively, "Defendants") respectfully move to dismiss the Amended Class Action Complaint ("Complaint") (ECF No. 31) filed by Lead Plaintiffs Paul Stroub and William J. Neylan III ("Plaintiffs"). The Complaint fails to state a claim under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5, and should be dismissed with prejudice under Federal Rules of Civil Procedure 12(b)(6) and 9(b), and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Plaintiffs' claims rest on a single allegation: the purported authorization of complimentary adult entertainment to a New York State tax official. From this tawdry and banal allegation, Plaintiffs attempt to construct a sweeping securities fraud class action against Defendants. But the undisputed financial facts tell a different story. The total alleged tax liability of $8 million accumulated over fourteen years (even taken as accurate) represents less than a fraction of 1% of RCI's revenue over the nearly five-year Class Period. Under any quantitative measure, the amounts at issue are immaterial to RCI's consolidated financial statements.

The Complaint also fails to adequately plead scienter. Despite the PSLRA's demanding standard requiring a "strong inference" of fraudulent intent, Plaintiffs outsource their pleading obligations to the State of New York by cribbing long quotes from a criminal indictment—which this Court may not treat as establishing the truth of its allegations—and vague accounts from former employees who had no direct knowledge of the challenged statements or the alleged tax avoidance scheme and did not work in New York or the corporate offices. The competing inference that Defendants acted negligently, at most, is far more compelling than any inference of fraud.

1

Finally, Plaintiffs fail to plead loss causation. Neither *The Bear Cave* short-seller newsletter nor the indictment constitutes a "corrective disclosure" revealing the falsity of any specific challenged statement. Stock price declines following sensational accusations and government charges do not, without more, establish the causal link the law requires.

For all these reasons, the Complaint should be dismissed with prejudice.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

In accordance with paragraph 6.A(2) of the Court's procedures, this is a putative securities class action at the motion to dismiss stage. No answers to the Complaint have been served.

## STATEMENT OF ISSUES

In accordance with paragraph 6.A(3) of the Court's procedures, Defendants respectfully state that the issues to be ruled upon by the Court are the following:

1. Does the Complaint state a claim for violation of Section 10(b) of the Exchange Act, including whether:

    a. the Complaint fails to allege a materially false or misleading statement with particularity, *see Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 370 (5th Cir. 2004);

    b. the Complaint lacks particularized facts raising a strong inference, *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005); and

    c. the Complaint fails to adequately plead loss causation, *see Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009).

2. Does the Complaint state a claim for violation of Section 20(a) of the Exchange Act because it fails to allege a primary violation? *See Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 986 (5th Cir. 2009).

## BACKGROUND[1]

**RCI and the Individual Defendants.**    RCI Hospitality Holdings, Inc. is a Texas-incorporated holding company headquartered in Houston that operates bar and restaurant establishments and live adult entertainment venues nationwide through wholly owned subsidiaries, with its Nightclubs segment generating the majority of Company revenue.  Compl. ¶¶ 1–2.  In fiscal year 2025, RCI's Nightclubs segment generated approximately $242.5 million of approximately $279.4 million in total Company revenue (roughly 86% of total revenue).  *Id.* ¶ 44.

Defendant Eric S. Langan served as RCI's CEO, President, and Chairman of the Board throughout the putative class period, and Defendant Bradley Chhay served as RCI's CFO and Principal Accounting Officer (Langan and Chhay collectively, the "Individual Defendants").  *Id.* ¶¶ 29–30.  Plaintiffs, on behalf of a purported class of persons who purchased RCI securities between December 15, 2020 and September 16, 2025, bring this action based entirely on unproven allegations set forth in a since-unsealed criminal indictment and a short-seller's Substack article.  *Id.* ¶ 3.

**The New York Sales Tax Audits.**    The Complaint's core theory rests on unproven allegations, drawn largely from a state grand jury indictment that has not been adjudicated (and which Defendants vehemently refute).  Plaintiffs allege that from 2010 to 2024, three RCI subsidiaries operating nightclubs in New York City (Rick's Cabaret, Vivid Cabaret, and Hoops Cabaret and Sports Bar) did not collect and remit sales tax on "Dance Dollars," an in-house currency.  New York Department of Taxation and Finance auditor Alton Plunkett allegedly conducted and supervised at least six audits of those clubs between September 2006 and October 2023.  Compl. ¶¶ 9–10, 56, 58.

---

[1] The Court may take judicial notice of the contents of publicly-available documents, including press releases and SEC filings.  *See R2 Invs.*, 401 F.3d at 639 n.2.

As alleged in the Complaint, those audits were resolved through four settlements signed on RCI's behalf by either Winata, Langan, or Chhay: (i) a July 2012 settlement of a Rick's Cabaret audit for $6,342.72; (ii) a December 2018 settlement of a Vivid Cabaret audit for $838,888.82; (iii) a January 2022 settlement of a Hoops Cabaret audit for $200,773.91; and (iv) a September 2023 settlement of a further Vivid Cabaret audit for $47,342.92. *Id.* ¶ 70. The Complaint further alleges—based solely on the unproven indictment and without any judicial finding—that Plunkett received complimentary hospitality at RCI-owned clubs in connection with these audits, and that such expenditures were recorded on RCI's books as promotional or miscellaneous expenses. *Id.* ¶¶ 10, 60, 72.

**RCI's Public Disclosure of the Investigation.** The Complaint alleges the "truth was partially revealed to investors on May 30, 2024," when a Substack short-selling newsletter (*The Bear Cave*)[2] speculated that law enforcement had been observed outside one of RCI's New York clubs, Compl. ¶¶ 11, 80, and incorrectly "asserted that the raids were 'IRS related.'" *Id.* ¶ 82.

On August 8, 2024, RCI filed its Form 10-Q for the quarter ended June 30, 2024, in which it disclosed that on or about May 29, 2024, the New York Attorney General and the Department of Taxation and Finance had executed search warrants at RCI's Houston headquarters, three New York clubs, and the mobile phones of three individuals, and that RCI had received a subpoena on June 7, 2024, seeking documents concerning "the Company's New York State tax filings and

---

[2] *The Bear Cave* is a self-described "newsletter on short-selling" available on Substack, a subscription-based online newsletter platform. *See About*, THE BEAR CAVE, available at https://thebearcave.substack.com/about (last visited Aug. 8, 2026). *The Bear Cave* is owned by Hunterbrook Media. *Id.* Hunterbrook Capital, an "affiliate" of Hunterbrook Media, "may hold long or short positions in the securities of companies" mentioned by *The Bear Cave*. *Id.* Hunterbrook Media and *The Bear Cave* specifically disclaim any "guarantee of accuracy, timeliness, completeness, or fitness for any particular purpose" of the "information provided" by *The Bear Cave*. *Id.*

possible entertainment benefits provided to [] DTF personnel." *Id.* ¶ 12.  RCI further disclosed that, out of an abundance of caution, a non-executive corporate employee had been placed on administrative leave pending an internal review—precisely the type of prompt, responsible corporate action one would expect upon learning of a governmental inquiry. *Id.*  On August 11, 2025, RCI's Form 10-Q for the quarter ended June 30, 2025 disclosed receipt of a second subpoena from the New York Attorney General, as well as a subpoena from the SEC seeking documents related to the New York investigation. *Id.* ¶ 14.

**The Indictment.**  On September 16, 2025, the New York Attorney General announced and unsealed the Indictment, charging RCI, Langan, Chhay, and others with criminal tax fraud, conspiracy, bribery, and offering a false instrument, and alleging that the scheme caused the avoidance of at least $8 million in sales taxes on Dance Dollars and related service charges from 2010 to 2024.  Compl. ¶¶ 15, 56.  As with any indictment, these are merely unadjudicated allegations against RCI and the Individual Defendants, and no plea, verdict, or civil judgment establishing liability has been entered against any defendant.  Following the announcement, RCI's stock price fell from a closing price of $34.32 per share on September 15, 2025 to $28.79 per share on September 16, 2025.  *Id.* ¶ 88.

**RCI's Prompt Remedial Measures and Post-Indictment Developments.**  RCI's Board acted swiftly and decisively in response to the Indictment, approving a resolution for Langan and Chhay to step down as CEO and CFO, respectively, effective November 28, 2025, with Langan also stepping down as Chairman of the Board on January 29, 2026—governance actions reflecting the Board's good-faith exercise of its oversight responsibilities, not an admission of wrongdoing by RCI.  Compl. ¶¶ 91, 95.  On December 15, 2025, RCI filed a Form 12b-25 notice of late filing for its annual report for fiscal year 2025, disclosing that "additional procedures" were "being

performed to complete the audit in connection with the state indictment." *Id.* ¶ 92. This candid disclosure is consistent with RCI's ongoing efforts to keep investors fully informed.

RCI's 2025 Form 10-K, filed March 19, 2026, voluntarily disclosed a material weakness in internal controls over financial reporting concerning accounting for contingent liabilities and the creation of a $9 million legal reserve. *Id.* ¶ 19. RCI reported a net loss of $5.5 million for the fourth quarter of fiscal year 2025, which Interim CEO Travis Reese attributed in part to "higher non-cash legal accrual, increased taxes, and lower non-cash impairment," a non-cash charge that does not reflect any finding of actual wrongdoing or liability. *Id.* ¶ 96. RCI has not restated any of its financial results.

## **LEGAL STANDARD**

To state a claim under Section 10(b) of the Securities Exchange Act of 1934 and the SEC's Rule 10b–5, "a plaintiff must allege (1) a material misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).[3]

To survive a motion to dismiss under the PSLRA, a Section 10(b) claim must meet Federal Rule of Civil Procedure 9(b)'s pleading requirement as well as the PSLRA's heightened pleading standard. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006). The

---

[3] In the Claims for Relief section, the Complaint briefly parrots the language in Rule 10b-5(a) and (c) of "acts, practices, and a course of business that operated as a fraud or deceit" and "devices, schemes and artifices to defraud." *See* Compl. ¶¶ 184–186. Defendants reject any assertion that the Complaint pleads scheme liability under Rule 10b-5(a) or (c). Plaintiffs cannot plead a claim simply by reciting the language of a statute, and the mere allegation that there was a "scheme" to avoid taxes does not mean that the Complaint alleges a scheme to defraud investors or manipulate the price of RCI securities.

PSLRA requires Section 10(b) allegations to identify "each statement" that is alleged to be misleading and the "reasons why" it is misleading.  15 U.S.C. § 78u-4(b)(1).  These allegations must be pled with particularity. *See Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002).  Plaintiffs must also plead particularized facts establishing a strong inference of scienter, and that the inference must be "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  A complaint that does not meet these heightened pleading standards must be dismissed.  *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002).

## ARGUMENTS & AUTHORITIES

### I.    The Complaint Fails to Allege a Materially False or Misleading Statement.

The Court should dismiss the Complaint for the independent reason that Plaintiffs fail to allege a materially false or misleading statement with particularity.  Plaintiffs' failure to satisfy their pleading obligations stems from their attempt to convert the unproven allegations in the New York criminal case into a claim for securities fraud.  But the actions are fundamentally different, and Plaintiffs do not identify any public statement in the Class Period that was rendered false and misleading based on the alleged tax avoidance scheme.  Most of the statements challenged by Plaintiffs are inactionable or immaterial as a matter of law, and the other statements are not plausibly alleged to be false or misleading, as explained below.

### A.    The Risk Disclosure Statements Are Not False or Misleading.

The Complaint challenges risk disclosures related to "regulations and/or regulatory agencies" in RCI's 10-K filings for fiscal years 2020 through 2024.  *See* App. A at 1; App. B. at 1; Compl. ¶¶ 99–100.  Plaintiffs first challenge RCI's warnings in its 10-K filings that "[a]ctivities or conduct at our nightclubs may . . . exposure us to liability, or result in adverse publicity" and that "[i]llegal activities or conduct at any of our nightclubs may result in negative publicity or

7

litigation." Compl. ¶ 99. The Complaint alleges these statements were false or misleading because they "omitted that the risk of illegal conduct at [RCI]'s nightclubs had already materialized." *Id.* ¶ 100. This allegation fails to state a claim for three reasons.

*First*, RCI's "general explaining of some of the risks associated with violating legal or regulatory requirements would not mislead reasonable investors to believe that [RCI] was fully compliant with all requirements or free of violations." *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.,* 579 F. Supp. 3d 933, 950 (S.D. Tex. 2022) (dismissing Section 10(b) claims as to risk disclosures); *Firefighters Pension & Relief Fund v. Bulmahn*, 53 F. Supp. 3d 882, 914–15 (E.D. La. 2014) (dismissing Section 10(b) claim because it was "unlikely that a reasonable investor would interpret" a list of potential regulatory issues "as an assurance of regulatory compliance"). The risk disclosures did not represent that illegal activities had not occurred at RCI's nightclubs between 2020 and 2024, and instead only warned of the potential consequences of the same. Thus, the statements "did not create an impression that differed materially from the one that actually existed." *See In re Lumen Techs., Inc. Sec. Litig. II*, No. 23-cv-1290, 2025 U.S. Dist. LEXIS 63067, at *63 (W.D. La. Mar. 14, 2025) (dismissing Section 10(b) claim as to "broad" risk disclosure about potential legal liability because it was not actionably misleading).

*Second*, the risk disclosures did not create a duty to disclose the alleged tax avoidance scheme, and thus the "omission" of the alleged scheme from the statements was not misleading. "'Disclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing.'" *Lumen*, 2025 U.S. Dist. LEXIS 63067, at *64 (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014)).[4]

---

[4] The Second Circuit's decision in *Pontiac* is particularly instructive here, as the court held that existence of a DOJ investigation into potential tax evasion did not create a duty for the defendant company to disclose that it "was, in fact, engaged in an ongoing tax evasion scheme." 752 F.3d at

Instead, Plaintiffs must allege "omissions rendering prior statements misleading." *Parker v. Hyperdynamics Corp.*, 126 F. Supp. 3d 830, 843 (S.D. Tex. 2015) (citing *Pontiac*, 752 F.3d at 184). Plaintiffs cannot rely on the risk disclosures for that purpose, because speaking of "general risks" related to operation of nightclubs does not create a duty to disclose the alleged tax avoidance issues "in particular." *Lumen*, 2025 U.S. Dist. LEXIS 63067, at \*64; *see also In re AT&T Inc. Sec. Litig.*, No. 24-cv-01196, 2025 U.S. Dist. LEXIS 114032, at \*38 (N.D. Tex. June 16, 2025) (holding that warnings about regulatory actions were not actionable because "Defendants owed no duty to disclose potential investigations before they began").

*Third*, Plaintiffs have not alleged that the disclosures were misleading at the time they were made, meaning that the "risk of illegal conduct at [RCI]'s nightclubs had already materialized" (Compl. ¶ 100). *In re Alta Mesa Res., Inc. Sec. Litig.*, No. 19-cv-957, 2024 U.S. Dist. LEXIS 142669, at \*24 (S.D. Tex. Aug. 12, 2024) (explaining that to be actionable, a risk disclosure must "present[] as a risk an event that had already transpired"). The Complaint does not allege with particularity that Defendants knew at the time of the statements—December 2020 through December 2024—that there was potential legal liability or what the outcome might be. *See AT&T*, 2025 U.S. Dist. LEXIS 114032, at \*39 (holding that risk disclosures about potential lawsuits "were not false when made, because they were warning about future risks that had not yet materialized — the outcome of litigation").

This is particularly true with respect to the risk disclosures that pre-date the May 2024 search warrant and the receipt of a subpoena in June 2024. *See* Compl. ¶ 12. But it is also true as to the risk disclosures in the December 2024 10-K filed after the search warrant and subpoena, as

---

184; *see also Owens v. Jastrow*, 789 F.3d 529, 544 (5th Cir. 2015) (citing *Pontiac* as persuasive authority).

those legal developments do not "establish" that wrongdoing occurred or that Defendants "knowingly omitted" such wrongdoing. *Parker*, 126 F. Supp. 3d at 843 (holding that DOJ and SEC subpoenas did not prove that defendants violated the Foreign Corrupt Practices Act or knowingly omitted such violations from their risk disclosures); *see also Lumen*, 2025 U.S. Dist. LEXIS 63067, at *64–65 (holding that the "specter of unrealized claims or actions" following a *Wall Street Journal* investigation did not render risk disclosures false or misleading at the time they were made because there was "no definitive agency or court determination" of a regulatory violation). The Court should therefore dismiss Plaintiffs' claims as to the risk disclosures cited in Paragraph 99 of the Complaint.

Plaintiffs also challenge RCI's risk disclosure related to its policies "aimed at ensuring" that its nightclubs operate "in conformance with local, state, and federal laws." Compl. ¶ 101. The Complaint asserts that the disclosure was misleading because three of RCI's New York nightclubs were allegedly used "to facilitate the Tax Fraud Scheme" at the relevant time. *Id.* ¶ 102. This allegation fails to state a claim because it is based on a selective reading of the risk disclosure that ignores the full text of the statement.

The risk disclosure warns that "such policies, no matter how well designed and enforced, can provide only reasonable, and not absolute assurance that the policies objectives are being achieved." *Id.* ¶ 101. It further warns, "there can be no assurance that our policies will prevent deliberate acts by persons attempting to violate or circumvent them." *Id.* Where a risk disclosure specifically disclaims any "assurance" that mitigation efforts will be successful, it is not actionably misleading. *See, e.g., Cabot*, 579 F. Supp. 3d at 950 (holding that regulatory risk disclosure was not misleading when accompanied by disclaimer of any "assurance" that liability would not arise); *Rosenzweig v. Azurix Corp.*, 198 F. Supp. 2d 862, 883 (S.D. Tex. 2002) (similar). The statement

10

that "management believes that our policies are reasonably effective in achieving their purpose" at the end of the disclosure does not change this analysis, because the preceding use of "hedges and disclaimers" means there is no "implicit" assurance of "absolute compliance" with policy. *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 635 (S.D. Tex. 2018).

### B.    The Code of Ethics Statements Are Not Actionable.

The Complaint challenges RCI's Code of Ethics, incorporated by reference into its 10-K filings from 2020 to 2024, as materially false and misleading based on the alleged tax and bribery scheme. *See* Compl. ¶¶ 117–18; App. B at 2–3. These allegations cannot support a securities fraud claim as a matter of law, and the Court should dismiss Plaintiffs' claim as to the Code of Ethics statements.

Code of Ethics statements like the ones challenged in the Complaint are "aspirational, incapable of objective verification, and therefore not actionable under the federal securities laws." *In re KBR, Inc. Sec. Litig.*, No. 17-cv-1375, 2018 U.S. Dist. LEXIS 221137, at *16 (S.D. Tex. Aug. 31, 2018). Because such statements are "inherently aspirational," they do not "falsely represent a record of past or present compliance" with RCI's policies. *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 683 (N.D. Tex. 2022) (quoting *Plains*, 307 F. Supp. 3d at 625). Plaintiffs' allegation is essentially that certain RCI executives did not comply with the Code of Ethics, but that does not make the statements "actionably fraudulent under federal securities law." *See id.* at 682–83 (rejecting the same allegation presented by Plaintiffs with respect to code of ethics statements). This is a well-established rule in the Fifth Circuit,[5] and the Court should hold that the Code of Ethics statements are inactionable accordingly.

---

[5] *See, e.g.*, *Linenweber v. Sw. Airlines Co.*, 693 F. Supp. 3d 661, 678 (N.D. Tex. 2023) (rejecting allegation that statements in "compliance policies misleadingly downplayed or concealed . . . compliance issues" because investors "know" that "development of policies . . . is not a guarantee that problems will not arise"); *Cabot*, 579 F. Supp. 3d at 948 (holding that code of conduct

C.    **The Internal Controls Statements Do Not Support a Securities Fraud Claim.**

The Complaint challenges statements about RCI's internal controls made in 10-K and 10-Q filings between 2020 and 2024 and during earnings calls in 2022 and 2024 as false or misleading because they allegedly masked the true extent of RCI's purported internal controls failures, failed to disclose a then-existing material weakness related to the alleged tax and bribery scheme, and "concealed" the material weakness to "perpetuate" the scheme. *See* Compl. ¶¶ 103–08, 120–22; App. B at 4–6. The allegations do not state a claim for securities fraud for two reasons.

*First*, Plaintiffs' falsity allegations largely depend on what the Complaint characterizes as an "admitted weakness in accounting for contingent liabilities." *See* Compl. ¶¶ 104, 108, 122; App. B at 4–6. That weakness, however, is not related to a failure of the internal controls to "detect or prevent the Tax Fraud Scheme" as Plaintiffs assert. *Id.* Instead, as the Complaint admits, the internal controls issue related to "accounting for contingent liabilities" which required RCI to set aside a legal reserve in the fourth quarter of fiscal year 2025. Compl. ¶ 20. The creation of that legal reserve and the weakness related to accounting for that contingent liability does not admit or otherwise prove that RCI's internal controls between 2020 and 2024 failed to detect or prevent the alleged tax avoidance scheme, and thus it does not demonstrate that statements about RCI's internal controls during that time period were false or misleading. *See Janbay v. Canadian Solar, Inc.*, No. 10-cv-4430, 2012 U.S. Dist. LEXIS 47125, at *22–23 (S.D.N.Y. Mar. 30, 2012) (holding that revisions to fourth quarter financials did not reveal that "internal controls were not effective

---

statements were inactionable as they are "goal-driven and cannot be reasonably read as promises or guarantees to investors of complete compliance with all such laws and regulations"); *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 860–61 (S.D. Tex. 2016) (collecting cases and holding that code of conduct statements were not actionable). These cases implicitly recognize that it would be "untenable" to hold that "any company with a code of ethics in compliance with § 229.406 would be required to disclose all violations of that code or face liability under federal securities law." *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 415 (D. Del. 2009).

12

during any earlier period of time"); *see also Alta Mesa*, 2024 U.S. Dist. LEXIS 142669, at \*59 (citing *Janbay* for this proposition).

*Second*, Plaintiffs' theory of falsity relies on an inaccurate understanding of internal controls over financial reporting. An internal control over financial reporting is "a term of art describing processes directly related to financial reporting"; it does not include the "effectiveness" of "a company's compliance with applicable laws and regulations" other than those "directly related to the preparation of financial statements." *Linenweber*, 693 F. Supp. 3d at 681 (citation omitted). The allegations of bribery do not mean "that the Company had flawed internal controls over financial reporting"—particularly where no auditor has identified any misstatement in RCI's financials and the Company has not revised any reports. *In re PetroChina Co. Sec. Litig.*, 120 F. Supp. 3d 340, 359 (S.D.N.Y. 2015).

**D.      The GAAP Allegations Lack Particularity and Materiality.**

Despite the fact that RCI has not restated any of its financial statements from 2020 to 2024 and no independent auditor has identified a material misstatement in RCI's financials related to the alleged tax avoidance scheme, Plaintiffs nonetheless assert that all of RCI's 10-K and 10-Q filings during the Class Period contained false and misleading statements because RCI allegedly failed to comply with GAAP. *See* Compl. ¶¶ 109–14, 129–41; App. B at 7–9. These allegations focus on the alleged failure to accrue at least $8 million in sales tax liabilities on Dance Dollars between 2010 and 2024 and adjust revenue accordingly. *See* Compl. ¶¶ 56, 111, 114, 134, 138, 141; App. B at 7–9. The Court should dismiss the Section 10(b) claim as to these allegations because they cannot support a securities fraud claim as a matter of law.

To allege that the historical financial results reported by RCI were false or misleading or that RCI violated GAAP with respect to its financial reporting, it is not enough to simply assert that there was "at least $8 million" in sales tax liabilities that were not accounted for in RCI's

13

financial statements over a fourteen-year period.  Rather, the Complaint must explain "in what particulars the reported earnings and revenue figures were inaccurate."  *Heck v. Orion Grp. Holdings, Inc.*, 468 F. Supp. 3d 828, 849 (S.D. Tex. 2020) (quoting *Southland*, 365 F.3d at 370); *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 853 (N.D. Tex. 2005) ("Allegations must identify specific transactions in which there was improper revenue recognition and the materiality of such transactions and must identify any resulting restatements.").  It is not enough to simply allege that there were "millions of dollars" in errors.  *Heck*, 468 F. Supp. 3d at 848 (rejecting similar allegations as insufficient to plead falsity of financial results).  But that is all Plaintiffs do here.  Because the Complaint fails to specifically identify the "amounts by which any results" during the Class Period were "overstated," Plaintiffs "cannot satisfy the requirement of particularity in pleading materially false or misleading statements," and thus their claims must fail as to the GAAP allegations.  *Markman v. Whole Foods Mkt., Inc.*, No. 15-cv-681, 2016 U.S. Dist. LEXIS 188833, at \*29 (W.D. Tex. Aug. 19, 2016).

In addition, Plaintiffs fail to allege a *material* financial misstatement, which is independently fatal to their claims.  It is undisputed that RCI has never been required to restate its financials and no finding has been made that RCI's financial statements were not prepared in conformity with GAAP—and the Complaint does not allege any facts "to contradict the approval" of RCI's financial statements by its independent auditor.  *Alamosa*, 382 F. Supp. 2d at 854.  And even assuming for the purposes of this motion that the entire $8 million in sales taxes should have been accounted for in RCI's financials during the Class Period—which is impossible because the Complaint alleges that these amounts accrued between 2010 and 2024—it still would not be enough to plead a materially false statement.

14

Under any measure, the amounts at issue are immaterial to RCI's consolidated financial statements. Plaintiffs themselves invoke the SEC's Staff Accounting Bulletin No. 99 ("SAB No. 99"). Compl. ¶¶ 130, 141. SAB No. 99 recognizes a 5% benchmark for a material error in financial results, and courts apply that numerical threshold when "assessing the materiality" of an alleged misstatement. *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009); *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 408 (S.D. Tex. 2011) (Ellison, J.) (noting the parties' agreement that "a difference of 5% or less between an untrue statement and the true statement would not constitute a material difference as a matter of law").[6] Here, the total alleged tax liability (*i.e.*, $8 million), represents less than 3% of RCI's annual revenue for a single fiscal year and a fraction of a percent of RCI's cumulative revenues over the nearly five-year Class Period. Compl. ¶¶ 44, 97. Because Plaintiffs cannot plead materiality even taking their GAAP allegations as true, their claims must fail.

### E. The SOX Certifications Cannot Support a Securities Fraud Claim.

The Complaint challenges Sarbanes-Oxley ("SOX") certifications signed by Langan and Chhay in RCI's 10-Ks and 10-Qs throughout the Class Period. *See* Compl. ¶¶ 115–16. Plaintiffs allege that the SOX certifications were false and misleading because they failed to disclose the "admitted" internal control weakness for contingent liability accounting, failed to disclose a "material fraud" involving management, and "knew" that RCI's financial statements "did not fairly and accurately reflect" its financial condition. *See id.* ¶ 116. This omnibus allegation is derivative of Plaintiffs' faulty internal controls and GAAP allegations and must fail accordingly. If there is no "admitted" internal control weakness related to financial reporting from 2020 through 2024 and

---

[6] *See also Prause v. TechnipFMC, PLC*, No. 17-cv-02368, 2019 U.S. Dist. LEXIS 44230, at *11– 12 (S.D. Tex. Jan. 18, 2019) (citing SAB No. 99 and *In re Franklin Bank Corp.*, 782 F. Supp. 2d at 408).

no "material" fraud that impacted RCI's financial condition, as explained above, the SOX certifications cannot be actionably false.[7]  The Court should dismiss the Section 10(b) claim as to the SOX certification statements.

### F.      Item 303 Does Not Create a Duty to Disclose.

Plaintiffs attempt to rely on Item 303 of SEC Regulation S-K to allege that that Defendants "violated their affirmative obligations" to disclose the purported tax fraud scheme.  Compl. ¶ 125. Item 303 requires periodic reports filed with the SEC to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  *Id.* (quoting 17 C.F.R. § 229.303(b)(2)(ii)).  Plaintiffs allege that Item 303 "required RCI's 10-Ks and 10-Qs issued during the Class Period to disclose the involvement of the Company and its senior executives in the Tax Fraud Scheme."  *Id.* ¶ 128.  This theory of falsity is squarely foreclosed by Supreme Court precedent, and the Court must dismiss Plaintiffs' claims as to the Item 303 allegations.

The Supreme Court recently clarified that there is no freestanding duty of disclosure created by Item 303, as Plaintiffs assert in the Complaint.  *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024).  Rather, the "failure to disclose information required by Item 303 can support a Rule 10b–5(b) claim only if the omission renders affirmative statements made misleading."  *Id.*; *see also SEC v. Bowen*, No. 22-cv-1415, 2024 U.S. Dist. LEXIS 127132, at *17 (N.D. Tex. July 17, 2024) (quoting *Macquarie*, 601 U.S. at 264) ("Rule 10b-5(b)

---

[7] *See Jacobowitz*, 596 F. Supp. 3d at 685 (holding that plaintiff failed to plead falsity of SOX certifications because he did not allege any "accounting errors" or failure of internal controls over financial reporting); *KBR*, 2018 U.S. Dist. LEXIS 221137, at *23 ("Plaintiffs have not alleged an actionable misstatement in KBR's financial statements . . . . It follows that Plaintiffs have not adequately alleged that the certifications of these financial statements were false."); *Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, 273 F. Supp. 3d 650, 684 (N.D. Tex. 2017) (holding that SOX certifications were not plausibly misleading where the complaint did not allege that internal controls over financial reporting failed to ensure compliance with GAAP).

does not prohibit pure omissions; instead, it 'requires disclosure of information necessary to ensure that statements already made are clear and complete'").

Plaintiffs do not even attempt to allege an affirmative statement rendered misleading by the non-disclosure of the alleged "involvement of the Company and its senior executives in the Tax Fraud Scheme" in connection with their Item 303 allegations. Compl. ¶ 128. Plaintiffs rely only on a duty of disclosure under Item 303. *See id.* ¶¶ 125–128. As such, they have not alleged an actionable omission based on Item 303. *See, e.g.*, *Smith v. Gap, Inc.*, 177 F.4th 405, 412 (2d Cir. 2026) (applying *Macquarie* and rejecting the same allegation that Item 303 imposed an affirmative duty of disclosure).

### G.    The August 8, 2024 Earnings Call Statement is Not Actionable.

Plaintiffs challenge a response by Langan to a question on an August 8, 2026 earnings call regarding the accusations made in *The Bear Cave* short-letter newsletter. *See* Compl. ¶¶ 123–24. When asked to "comment on any of this BS stuff," Langan referred to the relevant disclosures in RCI's recent 10-Q and said "you'll see that he was a little off base on accusations he made." *Id.* ¶ 123. Plaintiffs try to allege that Langan's response was false or misleading because it (1) downplayed the alleged tax avoidance scheme and (2) Defendants possessed unspecified "additional information supporting the veracity" of *The Bear Cave* post. *Id.* ¶ 124.

Langan's statement during the earnings call does not support Plaintiffs' securities fraud claims. A statement that an allegation or pending lawsuit is "unfounded or without merit is an opinion that is generally not actionable as a misstatement of fact." *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 593 (N.D. Tex. 2021) (collecting cases); *see also Shen v. Exela Techs., Inc.*, No. 20-cv-0691, 2021 U.S. Dist. LEXIS 118164, at *17 n.10 (N.D. Tex. June 24, 2021) (citing *Match* and rejecting allegation that defendants' knowledge of wrongdoing meant that their

17

statements about the viability of a pending lawsuit were actionably misleading).  The Court should dismiss Plaintiffs' claims as to the August 8, 2026 earnings call statement.

## II.    The Complaint Fails to Allege Particularized Facts Raising a Strong Inference of Scienter.

The Complaint lacks particularized facts raising a strong inference that any Individual Defendant made a false or misleading statement with scienter, which is an intent to deceive or severe recklessness.  *See Southland*, 365 F.3d at 366.  "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care."  *R2 Invs.*, 401 F.3d at 643 (citation and quotation marks omitted).

To plead scienter in a securities fraud case, the Complaint must "allege specific facts about the defendant speaker's state of mind when each challenged statement was made."  *Edgar v. Anadarko Petroleum Corp.*, No. 17-cv-1372, 2019 U.S. Dist. LEXIS 39977, at *21 (S.D. Tex. Mar. 13, 2019).  Plaintiffs cannot meet that burden "without stating any facts showing that defendant's alleged statement was belied by his actual knowledge of contradictory facts or by facts so obvious that the defendant had to be aware of it."  *In re Franklin Bank Corp.*, 782 F. Supp. 2d at 376 (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1069 (5th Cir. 1994)).  Where the Company made a statement, such as in an SEC filing, Plaintiffs must allege the "state of mind of the individual corporate official or officials" who caused RCI to make the statement.  *Southland*, 365 F.3d at 366.  The Complaint fails to satisfy this standard scienter for either the Individual Defendants or the Company.

### A.    The Indictment Does Not Establish a Strong Inference of Scienter.

The centerpiece of the Complaint's scienter theory is the September 16, 2025 indictment in New York.  *See* Compl. ¶¶ 143–149.  But the mere existence of an indictment does not satisfy

18

the PSLRA's heightened requirement that a civil securities fraud plaintiff independently plead particularized facts giving rise to a strong inference of scienter. *See Carlton v. Cannon*, 184 F. Supp. 3d 428, 480 (S.D. Tex. 2016) (finding government investigations, standing alone, do not establish scienter); *see also In re Inotiv Sec. Litig.*, No. 22-cv-045, 2024 U.S. Dist. LEXIS 57688, at \*96 (N.D. Ind. Mar. 29, 2024) (refusing to "infer" scienter from subpoenas and a criminal investigation). The Fifth Circuit demands that the *Complaint*—not the indictment—plead the requisite particularized facts linking each individual defendant's knowledge to each challenged statement. *Southland*, 365 F.3d at 366.

Here, Plaintiffs effectively ask the Court to infer that because Langan and Chhay were named in an indictment, they must have simultaneously harbored an intent to defraud investors in RCI's securities. This is a logical leap the PSLRA forbids. Participation in alleged tax avoidance—even if ultimately proven—does not automatically establish that a defendant knowingly made false statements *to investors* about RCI's financial condition. Not every alleged corporate malfeasance equates to a violation of Section 10(b) and Rule 10b-5. *See Southland*, 365 F.3d at 362. The Complaint does not identify any particularized facts demonstrating that, at the moment each challenged SEC filing or earnings statement was made, Langan or Chhay subjectively believed the filing was materially false or misleading with respect to RCI's consolidated financial statements. That is what the PSLRA requires, and Plaintiffs have not met their burden.

**B.    Alleged Communications Sourced from the Indictment Do Not Raise a Strong Inference of Intent to Defraud Investors.**

Plaintiffs cite alleged text messages, e-mails, and tax settlement discussions quoted from the indictment in support of their scienter theory and characterize the communications as evidence that Defendants knew Dance Dollars were subject to sales tax and deliberately sought to evade

19

that obligation. *See* Compl. ¶¶ 145–149. But under *Tellabs*, the Court must consider plausible nonfraudulent inferences from the allegations in the Complaint. 551 U.S. at 324.

The more compelling inference is that the alleged communications reflect legitimate internal discussions about the proper accounting methodology for recording Dance Dollar revenue, *i.e.*, whether to record gross revenue and a corresponding tax liability, or to record revenue on a net basis (revenue less remitted taxes), a distinction that raises debatable accounting and tax questions but does not evince an intent to defraud securities investors. For example, the alleged October 2018 text message cited by Plaintiffs specifically concerns internal revenue-booking methodology. *See* Compl. ¶ 146. Similarly, the internal discussions about tax settlements reflect the Company's reasoning for settling rather than challenging the audits in the tax tribunal, and do not reflect an intent to defraud. *See, e.g.*, *id.* ¶ 145.

Moreover, none of the alleged communications reference RCI's public disclosures, SEC filings, or investors at all, and Plaintiffs do not otherwise attempt to connect any specific communication to a statement challenged as false or misleading. *See Edgar*, 2019 U.S. Dist. LEXIS 39977, at *21 (requiring facts about the defendant's state of mind "when each challenged statement was made"). Given the non-fraudulent inferences and the lack of connection with any challenged statement, the alleged communications fail to support scienter under the *Tellabs* standard.

## C. The Resignations of Langan and Chhay Are Equally Consistent with Nonculpable Explanations.

Plaintiffs emphasize that Langan and Chhay resigned as CEO and CFO, respectively, effective November 28, 2025 and argue these resignations "reinforce an already compelling inference of scienter." Compl. ¶ 150. But executive departures "are generally 'unavailing as proof of the commission of fraud.'" *Match*, 529 F. Supp. 3d at 602–03 (quoting *Southland*, 365 F.3d at

20

383); *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 724–25 (W.D. Tex. 2010) ("Multiple Fifth Circuit decisions suggest resignations have little implication on the scienter analysis."). Officers named in a high-profile criminal indictment routinely resign to avoid distraction to the company, to focus on their personal legal defense, or at the direction of the board of directors seeking to reassure investors and regulators—none of which implies contemporaneous knowledge that prior SEC filings were false. The Complaint alleges no facts suggesting that the resignations were anything other than a rational response to the indictment itself. The resignation allegations add nothing to the scienter analysis. *See Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 956 (S.D. Tex. 2016) (holding that general allegation of CEO's resignation was "insufficient to plead scienter as to [him]").

**D.    Former-Employee Witnesses and the SEC Investigation Do Not Supply the Missing Particularity.**

Plaintiffs cite accounts from former employees or independent contractors (FE 1, FE 2, and FE 3) describing Dance Dollar practices and executives' involvement with individual clubs. Compl. ¶¶ 73–79, 151–153. None satisfies the PSLRA's particularity requirements. FE 1 was a traveling performer based in Denver who worked in the Houston market (not in New York) and says only that she and others "suspected" tax avoidance. Compl. ¶¶ 74–75.[8] None of the confidential witnesses report any specific conversation with any particular executive or Individual Defendant regarding Dance Dollars, sales tax accounting, or the New York state auditor who allegedly received bribes. The vague assertion that executives were involved in the operation of RCI nightclubs does not establish that they knew that any challenged statement was false at the time it was made. *See Ind. Elec. Workers' Pension Tr. Fund Ibew v. Shaw Grp., Inc.*, 537 F.3d

---

[8] FE 2 is only allegedly worked for the Company in Texas from May 2025 to October 2025; FE 3 is only alleged to have worked for a club in Colorado. Compl. ¶¶ 76–77 nn.5–6.

527, 537 (5th Cir. 2008) (finding CW allegations unpersuasive where plaintiffs "fail[ed] to tie those statements to the large scale accounting fraud that allegedly took place") (citations omitted).

As for the SEC investigation, the mere existence of a government inquiry does not raise an inference of scienter. *Carlton*, 184 F. Supp. 3d at 480; *see also Teamsters Local 456 Pension Fund v. Universal Health Servs.*, 396 F. Supp. 3d 413, 468 (E.D. Pa. 2019) (rejecting scienter inference based on pending government investigations). The Complaint does not allege the outcome of the SEC inquiry, whether any enforcement action has resulted, or that the SEC has concluded that RCI's financial statements were materially false.

### E. SOX Certifications Do Not Independently Establish Scienter.

Plaintiffs next allege that Langan and Chhay's SOX certifications provide "additional evidence" of scienter. Compl. ¶ 156. The Fifth Circuit has held that SOX certifications, without more, do not establish scienter. *See Ind. Elec*, 537 F.3d at 545. For SOX certifications to contribute at all to the scienter analysis, Plaintiffs must allege that there were "glaring accounting irregularities" at the time of the certifications. *Id.*; *see also Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555 (5th Cir. 2007). Because Plaintiffs do not allege with particularity that RCI "misstated any financial information" in its SEC filings, they cannot use the SOX certifications to raise a strong inference of scienter. *Jacobowitz*, 596 F. Supp. 3d at 689; *see also Key Energy*, 166 F. Supp. 3d at 871 (S.D. Tex. 2016) (holding that SOX certifications did not raise a strong inference of scienter where the Complaint did not allege facts showing that the company "misstated any financial information").

### F. Alleged GAAP Violations Alone Cannot Establish Scienter.

To the extent Plaintiffs contend that RCI's alleged failure to accrue sales tax liabilities or to report revenue net of sales tax constitutes a GAAP violation, *see* Compl. ¶¶ 129–141, this is insufficient to establish scienter. As explained above, the Complaint does not plead a material

22

misstatement based any alleged GAAP violation, and thus "an inference of fraudulent intent or recklessness in making such statements is necessarily lacking." *Markman*, 2016 U.S. Dist. LEXIS 188833, at *33.

## III.    The Complaint Fails to Plead Loss Causation.

The Court should dismiss the Complaint for the independent reason that it fails to adequately plead loss causation, meaning that the alleged misrepresentations "caused the loss for which the plaintiff seeks to recover." 15 U.S.C. § 78u–4(b)(4). Plaintiffs must allege "a facially plausible causal relationship between the fraudulent statements or omissions . . . followed by the leaking out of relevant or related truth about the fraud that caused a significant part of the depreciation of the stock." *Lormand*, 565 F.3d at 258. A plaintiff must allege that the loss was caused by a "corrective disclosure" that "reveal[ed] to the market the falsity of the prior misstatements." *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 322 (5th Cir. 2014). The Complaint fails to identify a qualifying corrective disclosure. *See* Compl. ¶¶ 158–171.

Plaintiffs identify the May 30, 2024 *Bear Cave* article as the "first corrective disclosure." Compl. ¶¶ 11, 80–82, 161–163. But a short-seller newsletter stating that its author "believes Rick's New York City club was raided last night," *id.* ¶ 80, does not "reveal the falsity" of any specific prior statement. The article did not disclose the alleged bribery scheme, the alleged sales tax evasion, or any specific misstatement in RCI's filings; indeed, Plaintiffs concede it was "insufficient on its own to fully remove the artificial inflation." *Id.* ¶ 163. A disclosure that merely speculates about a potential investigation without revealing the alleged fraud—or even the nature of the investigation—does not satisfy the pleading standard for loss causation. *See Amedisys*, 769 F.3d at 322.

23

Instead, the alleged corrective disclosures must relate to the specific prior statements alleged to be false or misleading to satisfy the element of loss causation. *See Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 667 (5th Cir. 2004) (holding allegedly corrective disclosure was not sufficiently related to the subject of the earlier statements challenged as false). The Complaint attributes the final alleged decline in RCI's stock price to the announcement of "conspiracy, bribery, criminal tax fraud, and other charges," Compl. ¶ 166—none of which is causally linked to any specific prior statement challenged in the Complaint as false or misleading. Moreover, the stock decline following the September 16, 2025 announcement of the New York state criminal case cannot be attributed solely to the revelation of the alleged fraud because an indictment causes stock price declines due to operational disruption and reputational harm independent of whether the underlying securities fraud claims have merit.

Accordingly, Plaintiffs have failed to adequately plead loss causation.

## IV. The Control Person Claim Fails Along with the Section 10(b) Claim.

Count II of the Complaint asserts a claim under the Exchange Act against Langan and Chhay alleged "control persons" of RCI during the Class Period. Compl. ¶¶ 193–196. Liability for control person claims under Section 20A and Section 20(a) of the Exchange Act is derivative, meaning it requires the existence of an independent violation of the securities laws. *Southland*, 365 F.3d at 383. As set forth above, the Complaint does not state a Section 10(b) claim, and thus the Court must dismiss the control person claims. *See also Flotek*, 915 F.3d at 986 ("Because Plaintiffs have not established a primary violation, their Section 20(a) claims fail.").

## CONCLUSION

For the foregoing reasons, all claims asserted against Defendants should be dismissed with prejudice and Defendants should be granted such other and further relief to which they are justly entitled.

24

Dated: August 11, 2026   Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ *Michael J. Biles*
Michael J. Biles (*Attorney-In-Charge*)
  Texas Bar No. 24008578
  SDTX Bar No. 23146
  Michael.Biles@us.dlapiper.com
Frances R. Fink
  Texas Bar No. 24135291
  SDTX Bar No. 891163
  Frances.Fink@us.dlapiper.com
**DLA PIPER LLP (US)**
303 Colorado Street, Suite 3000
Austin, Texas 78701
Telephone: 512.457.7010
Facsimile: 512.721.2212

-and-

Jason S. Lewis
  Texas Bar No. 24007551
  SDTX Bar No. 430226
  Jason.Lewis@us.dlapiper.com
Ryan D. Lantry
  Texas Bar No. 24125130
  SDTX Bar No. 3857421
  Ryan.Lantry@us.dlapiper.com
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: 214.743.4546
Facsimile: 214.743.4545

***Attorneys for Defendants RCI Hospitality
Holdings, Inc., Eric S. Langan, and Bradley
Chhay***

25

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 11, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ *Michael J. Biles*
Michael J. Biles