*Hernandez v. RCI Hospitality Holdings, et al.*, Case No. 4:25-cv-04477-KPE
**Appendix B to Motion to Dismiss: Challenged Statements and Falsity Allegations by Category**

| Category | Statement | Falsity Allegation |
|---|---|---|
| Risk Disclosure | "Risks related to regulations and/or regulatory agencies<br><br>* * *<br><br>*Activities or conduct at our nightclubs may cause us to lose necessary business licenses, expose us to liability, or result in adverse publicity, which may increase our costs and divert management's attention from our business.*<br><br>We are subject to risks associated with activities or conduct at our nightclubs that are illegal or violate the terms of necessary business licenses…. Illegal activities or conduct at any of our nightclubs may result in negative publicity or litigation. Such consequences may increase our cost of doing business, divert management's attention from our business and make an investment in our securities unattractive to current and potential investors, thereby lowering our profitability and our stock price." ¶ 99 | "The statements in ¶ 99 were materially false and/or misleading or omitted material facts necessary to make such statements not misleading. Specifically, the statements omitted that the risk of illegal conduct at its nightclubs had already materialized. For years, RCI's executives used the Company's strip clubs to facilitate the Tax Fraud Scheme. As detailed herein, Langan, Chhay, and others repeatedly bribed Plunkett with private dances and other benefits at RCI-owned strip clubs in Florida and New York. Accordingly, it was misleading to warn of only unfounded concerns … while concealing that Defendants' own illegal conduct had already trigged that exposure, making such consequences not merely hypothetical, but actual and inevitable." ¶ 100 |
| Risk Disclosure | "Risks related to regulations and/or regulatory agencies<br><br>* * *<br><br>We have developed comprehensive policies aimed at ensuring that the operation of each of our nightclubs is conducted in conformance with local, state and federal law. We have a 'no tolerance' policy on illegal drug use in or around our facilities. We continually monitor the actions of entertainers, waitresses and customers to ensure that proper behavior standards are met. However, such policies, no matter how well designed and enforced, can provide only reasonable, not absolute, assurance that the policies' objectives are being achieved. Because of the inherent limitations in all control systems and policies, there can be no assurance that our policies will prevent deliberate acts by persons attempting to violate or circumvent them. Notwithstanding the foregoing limitations, management believes that our policies are reasonably effective in achieving their purposes." ¶ 101 | "The statements in ¶ 101 about the Company's 'comprehensive' policies for ensuring its strip clubs were operating in "conformance with local, state and federal laws" were materially false and/or misleading or omitted material facts necessary to make such statements not misleading because, at the time these representations were made, Defendants used the Company's strip clubs to facilitate the Tax Fraud Scheme. As detailed herein, Langan, Chhay, and others repeatedly bribed Plunkett through private dances and other benefits at RCI-owned strip clubs in Florida and New York. Accordingly, Defendants could not sincerely, and had no reasonable basis to, hold the opinion that RCI's policies were 'reasonably effective.'" ¶ 102 |

1

| Category | Statement | Falsity Allegation |
|---|---|---|
| Code of Ethics | "Each Officer shall adhere to and advocate the following principles and responsibilities governing professional and ethical conduct:<br><br>1. Act with honesty and integrity, avoiding actual or apparent conflicts of interest in personal and professional relationships.<br><br>2. Provide information that is full, fair, accurate, complete, objective, relevant, timely, and understandable to the Company's Board of Directors, the Securities and Exchange Commission, the Company's stockholders, and the public.<br><br>3. Comply with applicable governmental laws, rules, and regulations.<br><br>4. Act in good faith, responsibly, with due care, competence and diligence, without misrepresenting material facts or allowing your independent judgment to be subordinated.<br><br>5. Take all reasonable measures to protect the confidentiality of non-public information about the Company acquired in the course of your work except when authorized or otherwise legally obligated to disclose such information and to not use such confidential information for personal advantage.<br><br>6. Assure responsible use of and control over all assets and resources employed or entrusted to you.<br><br>7. Promptly report to the Chairman of the Audit Committee:<br><br>a. any information you may have regarding any violation of this Code;<br><br>b. any actual or apparent conflict of interest between personal and/or professional relationships involving management or any other employee with a role in financial reporting disclosures or internal controls;" | "The statements in ¶ 117 about RCI's Code of Ethics were materially false and/or misleading or omitted material facts necessary to make such statements not misleading because of Langan's and Chhay's direct participation in the Tax Fraud Scheme. Specifically, Langan and Chhay:<br><br>(1) did not provide information that was "full, fair, accurate, complete, objective, relevant, timely, and understandable" to the Board, the SEC, or investors;<br><br>(2) violated governmental laws, rules, and regulations;<br><br>(3) failed to act "in good faith responsibly, with due care, competence and diligence" and misrepresented material facts described herein; and<br><br>(4) concealed (i) violations of RCI's Code of Ethics, (ii) evidence of material violations of securities laws and other laws, rules or regulations applicable to RCI's strip clubs operations, (iii) a significant material weakness in RCI's internal controls, and (iv) fraud that involved RCI's management."<br><br>¶ 118 |

| Category | Statement | Falsity Allegation |
|---|---|---|
| | c. any information you might have concerning evidence of a material violation of the securities or other laws, rules or regulations applicable to the Company and its operations;<br><br>d. significant deficiencies in the design or operation of internal controls that could adversely affect the Company's ability to record, process, summarize or report financial data; or<br><br>e. any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's financial reporting, disclosures or internal controls." ¶ 117 | |

| Category | Statement | Falsity Allegation |
|---|---|---|
| Internal Controls | "Management identified material weaknesses related to": <br><br> 2020 10-K: "management's review of the income tax provision" <br><br> 2021 10-K: "estimates relating to impairment of goodwill, indefinite-lived intangibles and long-lived assets" <br><br> 2022 10-K: "management's review of the Company's accounting for business combinations" <br> 2023 10-K: (1) "management's review of the Company's accounting for business combinations"; (2) "impairment of goodwill, indefinite-lived intangibles and long-lived assets"; and (3) "ineffective information technology general controls" <br><br> 2024 10-K: (1) "information technology general controls"; (2) "accounting for business combinations"; and (3) "assessments of potential impairment"  ¶ 103 | "The statements above in ¶ 103 were materially false and/or misleading or omitted material facts necessary to make such statements not misleading because Defendants: (1) portrayed the internal controls weaknesses as confined to the material weaknesses discussed in ¶ 103, masking the true extent of the Company's internal controls failures; and (2) failed to disclose an additional, then-existing material weakness in the Company's internal controls over financial reporting—specifically, the now-admitted weakness in accounting for contingent liabilities, resulting from the failure of the Company's controls to detect or prevent the Tax Fraud Scheme, a known scheme perpetrated by Langan and Chhay." ¶ 104 |
| Internal Controls | "Management is committed to the remediation of the material weaknesses described above." ¶ 105 | "The statements in ¶¶ 105-107 about RCI's internal controls and Defendants' remedial measures to resolve the weaknesses were materially false and/or misleading … because: (1) Defendants portrayed the internal controls weaknesses as confined to the deficiencies discussed in ¶ 103, masking the true extent of the Company's internal control failures; (2) Defendants failed to disclose an additional, then-existing material weakness in the Company's internal controls over financial reporting—specifically, the now-admitted weakness in accounting for contingent liabilities, resulting from the failure of the Company's controls to detect or prevent the Tax Fraud Scheme, a known scheme perpetrated by Langan and Chhay; and (3) despite assurances of implementing remedial measures, Defendants continued to conceal and exploit such material weakness to further the Tax Fraud Scheme." ¶ 108 |
| Internal Controls | "It is our belief that these added controls will effectively remediate the existing material weaknesses." ¶ 105 | |
| Internal Controls | "Except for the remediation efforts as discussed above, there have been no other changes in our internal control over financial reporting … that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting." ¶¶ 106, 107. | |

| Category | Statement | Falsity Allegation |
|---|---|---|
| Earnings Call (Internal Controls) | Q1 FY2024 Earnings Call (Feb. 8, 2024)<br><br>"And so basically, what they say with our IT stuff, I think, is basically is --basically one guy had powers to change and do things and where was the check system on him. And I think we've resolved all of that now through notifications to certain people if things are changed and whatnot, but you don't know what you don't know until they come in and say, 'Oh, this is could happen or this could happen.' Even though it's never happened, obviously once it happens, we've always taken, or anything has ever happened, we've always been able to fix and adjust the system. But we can't think of every little detail and every little thing constantly that could happen when it does never happen or has never happened, or hasn't even happened to somebody else. So those are the things we deal with, and we just keep working on that." ¶ 121 | "The statements in ¶¶ 120-21 about RCI's internal controls and Defendants' remedial measures to resolve the weaknesses were materially false and/or misleading or omitted material facts necessary to make such statements not misleading because Defendants:<br><br>(1) masked the true extent of the Company's internal controls failures;<br><br>(2) failed to disclose an additional, then-existing material weakness in the Company's internal controls over financial reporting—including the now-admitted weakness in accounting for contingent liabilities resulting from the failure of the Company's controls to detect or prevent the Tax Fraud Scheme, a known scheme perpetrated by Langan and Chhay; and<br><br>(3) despite assurances of implementing remedial measures, they continued to concealed and exploit the material weakness to perpetuate the Tax Fraud Scheme."<br><br>¶ 122 |
| Earnings Call (Internal Controls) | Q2 FY2022 Earnings Call (May 9, 2022)<br>"Yeah. So it started off, as you say, in 2020, we took a stance and our auditors took a stance on it. And at that time Congress and IRS, couldn't agree on whether the PPP should be deemed as a discrete item or a non-discrete item, whether it should be counted as forgiveness item or not. So that being said, it was just a material weakness on difference of opinion. And then as you fast forward it, we had another material weakness because we have to make an adjustment to our tax provision entry.  All of these are just noncash estimates that come up as accrual entries.  So, I mean we have instilled more of a review process.  We have hired more CPAs, and we're going to be doing a lot more reviews with a fine-tooth comb." ¶ 120 | |
| Earnings Call (Internal Controls) | Q1 FY2024 Earnings Call (Feb. 8, 2024)<br><br>"Yes, sure. If you noticed, they continuously change, right. It's like our auditors are continually trying to find some new material weakness every single year. And typically, when they're found, whether by us, whether by our internal third-party independent | |

| Category | Statement | Falsity Allegation |
|---|---|---|
| | auditors or by the auditing companies or by auditors ourselves, we immediately make changes and adjust and correct them." ¶ 121 | |
| Earnings Call<br><br>(Internal Controls) | Q1 FY2024 Earnings Call (Feb. 8, 2024)<br><br>"I will say that none of the weaknesses they've ever found have ever caused restatement of financials, they've never found any fraud or anything like that." ¶ 121 | |
| Earnings Call<br><br>(Internal Controls) | Q1 FY2024 Earnings Call (Feb. 8, 2024)<br><br>"And so basically, what they say with our IT stuff, I think, is basically is --basically one guy had powers to change and do things and where was the check system on him. And I think we've resolved all of that now through notifications to certain people if things are changed and whatnot, but you don't know what you don't know until they come in and say, 'Oh, this is could happen or this could happen.' Even though it's never happened, obviously once it happens, we've always taken, or anything has ever happened, we've always been able to fix and adjust the system. But we can't think of every little detail and every little thing constantly that could happen when it does never happen or has never happened, or hasn't even happened to somebody else. So those are the things we deal with, and we just keep working on that." ¶ 121 | |

| Category | Statement | Falsity Allegation |
|---|---|---|
| GAAP (Accounting Policies) | "Management's discussion and analysis of financial condition and results of operations are based upon our financial statements, which have been prepared in accordance with accounting principles generally accepted in the United States ('GAAP'). The preparation of these consolidated financial statements requires our management to make assumptions and estimates about future events and apply judgments that affect the reported amounts of assets, liabilities, revenues and expenses, and related disclosure of contingent assets and liabilities. These estimates are based on management's historical and industry experience and on various other assumptions that are believed to be reasonable under the circumstances. On a regular basis, we evaluate these accounting policies, assumptions, estimates and judgments to ensure that our financial statements are presented fairly and in accordance with GAAP. However, because future events and their effects cannot be determined with certainty, actual results may differ from our estimates, and such differences could be material." ¶ 109 | "The statements in ¶¶ 109 and 110 were materially false and/or misleading or omitted material facts necessary to make such statements not misleading because, at the time they were made, Defendants knowingly failed to accrue at least $8 million in sales tax liabilities as a result of the Tax Fraud Scheme. Specifically, under New York tax laws, Dance Dollars and the associated surcharge constituted an "admission charge" to a 'place of amusement' and were therefore subject to a combined tax rate of 8.875%. Accordingly, RCI's obligation to collect and remit sales tax arose by operation of law at the time of each transaction, leaving no uncertainty that RCI incurred a sales tax liability with each taxable sale. The favorable audit outcomes Defendants secured through the Tax Fraud Scheme did not extinguish the at least $8 million in sales tax that RCI owes on Dance Dollars. As a result, as detailed below in Section VI.C, RCI's financial statements were not prepared on an accrual basis that conformed with GAAP." ¶ 111 |
| GAAP (Accrual Basis) | "The accounts are maintained and the consolidated financial statements have been prepared using the accrual basis of accounting in accordance with accounting principles generally accepted in the United States of America ('U.S. GAAP' or 'GAAP')." ¶ 110 | |
| GAAP (Accrual Basis) | "Defendants failed to accrue RCI's sales tax labilities [sic] with respect to Dance Dollars and the related service surcharge…" ¶ 135<br><br>"RCI's obligation to collect and remit sales tax arose by operation of law at the time of each sale …. RCI thus incurred liability as each taxable sale occurred and continued to owe it. The favorable audit outcomes Defendants obtained through the Tax Fraud Scheme did not extinguish the at least $8 million in sales tax owed on Dance Dollars and the related service surcharges." ¶ 136 | "RCI was therefore required to accrue these liabilities but failed to do so in violation of GAAP. Accordingly, in RCI's 10-Ks and 10-Qs at each reporting period during the Class Period, RCI materially understated its accrued sales tax liabilities as a result of the Tax Fraud Scheme." ¶ 138 |

| Category | Statement | Falsity Allegation |
|---|---|---|
| GAAP (Revenue Recognition) | RCI 10-Ks FY2020–FY2023<br><br>"The Company recognizes revenue from the sale of alcoholic beverages, food and merchandise, service and other revenues at the point-of-sale upon receipt of cash, check, or credit card charge, net of discounts and promotional allowances based on consideration specified in implied contracts with customers. Sales and liquor taxes collected from customers and remitted to governmental authorities are presented on a net basis in the accompanying consolidated statements of operations. The Company recognizes revenue when it satisfies a performance obligation (point in time of sale) by transferring control over a product or service to a customer." ¶ 112 | "The statements in ¶¶ 112 and 113 were materially false and/or misleading or omitted material facts necessary to make such statements not misleading because RCI's reported revenue included sales tax that RCI was not entitled to retain as a result of the Tax Fraud Scheme. Specifically, Defendants' failure to collect sales tax on the sale of Dance Dollars and the associated service surcharge did not relieve RCI of its obligation to remit the tax to the taxing authorities. Because RCI did not collect sales tax from its customers, it was required to pay the New York combined sales tax rate of 8.875% from its own receipts. Accordingly, as detailed below in Section VI.B, Defendants' improperly recognized revenue in violation of GAAP." ¶ 114 |
| GAAP (Revenue Recognition) | RCI 10-K FY 2024<br><br>"The Company recognizes revenue from the sale of alcoholic beverages, food and merchandise, service (which include cover charges, dance dollar surcharges, membership fees, and facility use fees, among others), and other revenues (which include commissions from vending and ATM machines, real estate rental, valet parking, and other products and services for both nightclub and restaurant/sports bar operations, among others) at the point-of-sale upon receipt of cash, check, or credit card charge, net of discounts and promotional allowances based on consideration specified in implied contracts with customers. Sales and liquor taxes collected from customers and remitted to governmental authorities are presented on a net basis in the accompanying consolidated statements of income. The Company recognizes revenue when it satisfies a performance obligation (point in time of sale) by transferring control over a product or service to a customer." ¶ 113 | |

| Category | Statement | Falsity Allegation |
|---|---|---|
| GAAP (Revenue Recognition) | "Sales and liquor taxes collected from customers and remitted to governmental authorities are presented on a net basis in the accompanying consolidated statements …." ¶ 133 | "According to the indictment, RCI failed to collect sales tax on the sale of Dance Dollars and on the 20–25% service charge it imposed. But RCI's failure to collect such sales tax from its customers did not relieve it of its obligation to remit the tax to the taxing authorities. Instead, because the sales tax was not separately collected from customers, RCI was required to pay the applicable 8.875% New York sales tax rate—including the New York City, New York State, and Metropolitan Commuter Transportation District components—from its own receipts. Thus, the uncollected sales tax reduced the net revenue RCI was entitled to retain and resulted in RCI improperly recognizing revenue in violation of GAAP. Accordingly, in RCI's 10-Ks and 10-Qs at each reporting period during the Class Period, RCI materially overstated its revenue as a result of the Tax Fraud Scheme." ¶ 134 |
| GAAP (Improper Recording) | "Defendants improperly recording of illegal bribes to Plunkett as 'promotional expenses' in RCI's financial statements violated GAAP and SEC Rule 13(b)2-1, 17 CFR § 240.13b2-1." ¶ 139 | RCI's financial statements violated GAAP by "recording illegal bribes as advertising and marketing expenses in its quarterly and annual reports during the Class Period, which, according to RCI's 10-Ks, include 'promotional expenses.'" ¶ 141<br><br>"At a minimum, RCI's 2024 10-K and quarterly report for the period ended December 31, 2023 (Q1 2024 10-Q) improperly recorded bribes as advertising and marketing expenses." ¶ 141 |

| Category | Statement | Falsity Allegation |
|---|---|---|
| SOX Certification | "Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report" ¶ 115 | The statements in ¶ 115 were materially false and/or misleading or omitted material facts necessary to make such statements not misleading because: (1) Defendants failed to disclose an additional distinct existing material weakness in the Company's internal controls over financial reporting—specifically, the now-admitted weakness in accounting for contingent liabilities resulting from the failure of the Company's controls to detect or prevent the Tax Fraud Scheme, a known scheme perpetrated by Langan and Chhay; (2) in light of Langan and Chhay participating in the Tax Fraud Scheme, they were aware of and failed to disclose a material fraud that directly involved management; (3) these certifications contained numerous materially false and misleading statements and omissions, and (4) Defendants knew that the financial statements did not fairly and accurately reflect RCI's financial condition.  ¶ 116 |
| SOX Certification | "Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report" ¶ 115 | |
| SOX Certification | "I have … Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under my supervision … [and] Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal year that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting." ¶ 115 | |
| SOX Certification | "I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's independent registered public accounting firm and the audit committee … (a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting." ¶ 115 | |

| Category | Statement | Falsity Allegation |
|---|---|---|
| Item 303 | "Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303 ('Item 303'), required Defendants to '[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a materially favorable and unfavorable impact on the sales or revenues or income from continuing operations.'" ¶ 125 | "Item 303 required RCI's 10-Ks and 10-Qs issued during the Class Period to disclose the involvement of the Company and its senior executives in the Tax Fraud Scheme. Defendants' failure to disclose the Tax Fraud Scheme violated Item 303 because these activities represented known trends and uncertainties that were likely to and did have a material negative impact on the Company's business and financial results." ¶ 128 |

| Category | Statement | Falsity Allegation |
|---|---|---|
| Earnings Call (*The Bear Cave*) | Q3 FY2024 Earnings Call (Aug. 8, 2024)<br><br>"I would refer you to the 10-Q and the disclosures … and state that I cannot make any comments on our ongoing -- any type of ongoing investigations at this time. But there are disclosures in the 10-Q if you want to see, see what that is. And you'll see that he was a little off base on accusations, he made." ¶ 123 | "The statement in ¶ 123 asserting that Edwin Dorsey's accusations were 'a little off base' was materially false and/or misleading or omitted material facts necessary to make such statements not misleading, because: (1) Defendants continued to downplay the severity and scope of the Tax Fraud Scheme; and (2) Defendants' possessed additional information supporting the veracity of *The Bear Cave* article and Edwin Dorsey's related reporting." ¶ 124 |

11