# Exhibit 10

## *SEC v. Bowen*

United States District Court for the Northern District of Texas, Dallas Division

July 17, 2024, Decided; July 17, 2024, Filed

CIVIL ACTION NO. 3:22-CV-1415-S

**Reporter**
2024 U.S. Dist. LEXIS 127132 *; 2024 WL 3462359

SECURITIES AND EXCHANGE COMMISSION v. MICHAEL BOWEN and CHOL KIM a/k/a BRANDON KIM

**Prior History:** *SEC v. Bowen, 2023 U.S. Dist. LEXIS 168648, 2023 WL 6166780 (N.D. Tex., Sept. 21, 2023)*

**Counsel:** **[\*1]** For Securities and Exchange Commission, Plaintiff: Jason J Rose, LEAD ATTORNEY, Jeaneen M Kappell, U.S. Securities and Exchange Commission, Fort Worth, TX; James E Etri, Securities and Exchange Commission, Fort Worth, TX.

For Michael Bowen, Defendant: Jason M Hopkins, LEAD ATTORNEY, Jason S Lewis, DLA Piper, Dallas, TX; Brandon Alexander Fuqua, DLA Piper LLP, Dallas, TX.

**Judges:** KAREN GREN SCHOLER, UNITED STATES DISTRICT JUDGE.

**Opinion by:** KAREN GREN SCHOLER

# Opinion

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Michael Bowen's Motion to Dismiss ("Motion") [ECF No. 44]. The Court has considered the Motion, Bowen's Brief in Support of Motion to Dismiss ("Bowen's Brief') [ECF No. 45], Plaintiff Securities and Exchange Commission's ("SEC") Response in Opposition to Bowen's Motion to Dismiss ("Response") [ECF No. 49], Bowen's Reply in Support of His Motion to Dismiss ("Reply") [ECF No. 52], and the applicable law. For the following reasons, the Court DENIES the Motion.

## I. BACKGROUND

This is a securities fraud and unregistered offer and sale of securities case brought by the SEC against Bowen and Defendant Chol Kim a/k/a Brandon Kim.[1] Because this case is the subject of a prior opinion of **[\*2]** this Court, *see S.E.C. v. Bowen, No. 3:22-CV-1415-S, 2023 U.S. Dist. LEXIS 168648, 2023 WL 6166780 (N.D. Tex. Sept. 21, 2023)*, the Court briefly restates the relevant factual background, along with new allegations from the SEC's First Amended Complaint ("Amended Complaint") [ECF No. 40]. The SEC alleges that Bowen, along with Baker and Cannon, raised funds from investors "through the fraudulent and unregistered offer and sale of securities." Am. Compl. ¶ 1. The securities at issue are four offerings of working interests in Oklahoma oil and gas wells. *Id.* Bowen was the "chief operating officer and sales manager" of Cannon from April 2016 through September 2018. *Id.* ¶ 7.

---

[1] Plaintiff voluntarily dismissed former Defendants Cannon Operating Company LLC ("Cannon") and North Texas Minerals LLC. *See* ECF No. 24. The Court entered an agreed Final Judgment as to former Defendant William Glen Baker. *See* ECF No. 32. And the Clerk entered default against Kim. *See* ECF No. 29.

Baker was the owner, managing member, and president of Cannon. *Id.* ¶ 9. Bowen and Baker were "50/50 partners" in Cannon." *Id.* ¶ 14.

One of the four offerings at issue was a new well, Mustang 2. *Id.* ¶ 1. "During the spring of 2018, Baker and Bowen prepared the written offering materials for the Mustang 2 well." *Id.* ¶ 19. Baker and Bowen "exchanged drafts with each other and discussed the proposed changes amongst themselves until they were both satisfied with their work product." *Id.* They finalized the materials, which included the Private Placement Memorandum and the "Prospect Book" (collectively, "Mustang 2 Offering **[*3]** Materials"), on or about April 25, 2018. *Id.* In or around April 2018, Bowen allegedly sent the Mustang 2 Offering Materials to 33 previous investors located in 16 states. *Id.* The SEC alleges that the Mustang 2 Offering Materials "contained misleading information about the actual production of oil and gas from three of Cannon's prior wells," *id.* ¶ 22, omitted the fact that commissions would be paid using investor funds, *id.* ¶ 32, and "omitted material background information about Cannon, Baker, and Bowen," *id* ¶ 29. The SEC further alleges that Bowen misused investor funds by paying unauthorized commissions to Cannon's salespeople. *Id.* ¶ 28.

In the Amended Complaint, the SEC adds new allegations relating to a sales call in or about July 2018. *Id.* ¶¶ 33-36. According to the SEC, a prospective investor ("Investor A") contacted Cannon through Facebook, and Bowen called him to present a Mustang 2 sales pitch. *Id.* ¶ 33. During the call, Bowen allegedly misrepresented the production history and profitability of Cannon's prior wells. *Id.* Bowen allegedly told Investor A that neither Cannon nor its employees had any history of legal or regulatory problems. *Id.* ¶ 34. And, according to the SEC, **[*4]** Bowen did not disclose that investor funds would be used to pay commissions to unregistered salespeople. *Id.* ¶ 35. Investor A invested $30,000 "as a direct result of Bowen's material misrepresentations and omission." *Id.* ¶ 36.

In addition to the allegedly false and/or misleading offering tactics, the SEC alleges that Cannon sold securities through unregistered brokers. *Id.* ¶ 38. From January 2018 to September 2020, Cannon employed 18 salespeople. *Id.* ¶ 37. Like the salespeople, Bowen also directly solicited investors. *Id.* ¶ 38. Bowen and Cannon's salespeople received a commission when they closed a sale. *Id.* None of them were registered as brokers. *Id.* Instead of paying commissions based on a set percentage, Bowen decided the amount that Cannon would pay its salespeople for each sale. *Id.* ¶ 39. According to the SEC, he would then give Cannon's business director a slip of paper or a verbal instruction regarding the amount to be paid. *Id.* To conceal this scheme, Bowen allegedly instructed the business director not to record the payments as commissions and to pay Bowen's commissions to MAI Services, an entity owned and controlled by Bowen. *Id.*

In the Amended Complaint, the SEC asserts four **[*5]** claims against Bowen. First, the SEC alleges that Bowen violated *Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b)*, and *Rule 10b-5* thereunder, *17 C.F.R. § 240.10b-5*, by engaging in fraud in connection with the purchase or sale of securities. Am. Compl. ¶¶ 41-44. Second, the SEC alleges that Bowen violated *Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)*, by engaging in fraud in the offer or sale of securities. Am. Compl. ¶¶ 45-48. Third, the SEC alleges that Bowen violated *Sections 5(a)* and *5(c) of the Securities Act*, *15 U.S.C. § 77e(a)*, *(c)*, by engaging in the unregistered offer and sale of securities. Am. Compl. ¶¶ 49-51. Fourth, the SEC alleges that Bowen violated *Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a)*, by engaging in the offer and sale of securities as an unregistered broker. Am. Compl. ¶¶ 52-54. Bowen moves to dismiss all of the claims against him.

## II. LEGAL STANDARDS

### A. *Rule 12(b)(6)*

To defeat a motion to dismiss filed pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*; *Reliable Consultants, Inc. v. Earle, 517 F.3d 738, 742 (5th Cir. 2008)*. To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts **[\*6]** as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co., 509 F.3d 673, 675 (5th Cir. 2007)*. However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp., 484 F.3d 776, 780 (5th Cir. 2007)* (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, 550 U.S. at 555* (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). At the motion to dismiss stage, the court does not evaluate the plaintiffs likelihood of success. *Mann v. Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977)*. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *See id.*

**B. *Rule 9(b)***

The fraud claims against Bowen are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Fed. R. Civ. P. 9(b)*. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "At a minimum, *Rule 9(b)* requires allegations of the particulars of time, place, and contents of the false representations, **[\*7]** as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003)* (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)*). "Put simply, *Rule 9(b)* requires 'the who, what, when, where, and how'" of the fraud. *Id.* (quoting *Williams v. WMX Techs., Inc., 112 F.3d 175, 179 (5th Cir. 1997)*).

## III. ANALYSIS

The SEC's first two causes of action are fraud claims arising under *Section 10(b)* and *Rule 10b-5* thereunder[2] and *Section 17(a)*. *Rule 10b-5* and *Section 17(a)* are each broken down into three subsections that make it unlawful to "employ any device, scheme, or artifice to defraud"; make any untrue statement of a material fact or omit "a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" (or, for purposes of *Section 17(a)(2)*, to obtain money or property by means of any such misstatement or omission); or engage in any act, transaction, practice, or course of business that "operates or would operate as a fraud or deceit." *15 U.S.C. § 77q(a)*; *17 C.F.R. § 240.10b-5*. Put simply, *Rule 10b-5(b)* and *Section 17(a)(2)* prohibit misrepresentations. *S.E.C. v. Narayan, No. 3:16-CV-1417-M, 2017 U.S. Dist. LEXIS 170477, 2017 WL 4652063, at \*3 (N.D. Tex. Aug. 28, 2017)* (citation omitted). *Rule 10b-5(a)* and *(c)* and *Sections 17(a)(1)* and *(3)* "are described as creating 'scheme liability.'" *Id.* (citation omitted). The SEC's third and fourth causes of action are improper offer and sale of securities claims under *Sections 5(a)* and *(c)* and *Section 15(a)*. The Court considers each cause of action in turn.

**A. Fraud Claims**

*i. Rule 10b-5(b) and Section 17(a)(2)*

---

[2] "*Rule 10b-5* encompasses only conduct already prohibited by *[Section] 10(b)*." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008)* (citation omitted). As such, the Court will refer to *Rule 10b-5* herein when discussing the SEC's claims under *Section 10(b)* and *Rule 10b-5* thereunder.

The SEC **[*8]** alleges that Bowen made and/or used material misrepresentations and omissions in violation of *Rule 10b-5(b)* and *Section 17(a)(2)*. To state a claim under *Rule 10b-5(b)*, the SEC must allege that Bowen: (1) made a material misrepresentation or omission; (2) in connection with the purchase or sale of securities; and (3) acted with scienter. *S.E.C. v. Sethi, 910 F.3d 198, 206 (5th Cir. 2018)* (citation omitted). *Section 17(a)(2)*, by comparison, prohibits, in the offer or sale of securities, obtaining money "by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."[3] *15 U.S.C. § 77q(a)(2)*. "To show that a defendant has violated *[Section] 17(a)(2)* . . ., the [SEC] need only show that the defendant acted with negligence." *S.E.C. v. Seghers, 298 F. App'x 319, 327 (5th Cir. 2008)* (citation omitted).

In support of its misrepresentation claims, the SEC relies on three categories of statements made in or omitted from the Mustang 2 Offering Materials and the call with Investor A: (1) statements about the historical production of Cannon's other wells; (2) statements regarding the use of investor funds and the omission of the fact that such funds would be used to pay commissions to salespeople; and (3) the omission of Bowen's role in Cannon and **[*9]** of certain negative information about the company and its leadership. Am. Compl. ¶¶ 22-24, 29-35. After disposing of the preliminary question of whether the SEC has plausibly alleged that Bowen used an instrumentality of interstate commerce, the Court considers whether the SEC has sufficiently tied Bowen to the challenged statements under both *Rule 10b-5(b)* and *Section 17(a)(2)*. Next, the Court analyzes whether each statement constituted a material misrepresentation or omission. Finally, the Court determines whether Bowen acted with the requisite state of mind—scienter for the *Rule 10b-5(b)* claim and negligence for the *Section 17(a)(2)* claim.

*a. Interstate Commerce*

As an initial matter, the relevant statutes require "the use of any means or instrumentality of interstate commerce or the mails," *15 U.S.C. § 78j*, or "the use of any means or instruments of transportation or communication in interstate commerce or . . . use of the mails," *id. § 77q(a)*. Bowen argues that the SEC's "generic statement" that Bowen sent the Mustang 2 Offering Materials to investors is inadequate. Bowen's Br. 13. The Court finds that the SEC has satisfied the requirement by alleging that Bowen (1) sent the Mustang 2 Offering Materials to 33 individuals located in 16 states and (2) contacted **[*10]** Investor A, who lived in Maryland, by phone. Am. Compl. ¶¶ 19, 33; *see, e.g., United States v. Tinghui Xie, 942 F.3d 228, 240 (5th Cir. 2019)* (stating that instrumentalities of interstate commerce include the telephone, the interne, and mail); *S.E.C. v. Jaitley, No. 1:21-CV-0832-DAE, 2024 U.S. Dist. LEXIS 789, 2024 WL 36011, at *3 (W.D. Tex. Jan. 3, 2024)* ("Interstate commerce can be established by a defendant using emails, phone calls, and wire transfers[] to communicate with investors." (internal quotation marks and citation omitted)).

*b. Made or Used a Misrepresentation or Omission*

*Rule 10b-5(b)* and *Section 17(a)(2)* require the SEC to connect Bowen to the challenged statements and omissions in different ways. The Court first considers whether the SEC plausibly alleges that Bowen made the statements for purposes of *Rule 10b-5(b)* before determining whether the SEC plausibly alleges that Bowen obtained money by means of the statements for purposes of *Section 17(a)(2)*.

*1. Rule 10b-5(b)*

The Supreme Court has held that "[t]o be held liable for a misstatement or omission under *Section 10(b)* and *Rule 10b-5*, the defendant must be the 'maker' of the statement, *i.e.*, 'the person or entity with ultimate authority over the

---

[3] Bowen does not challenge whether the alleged statements were made in connection with the purchase or sale of securities or in the offer or sale of securities. Therefore, the Court will not consider these elements in its analysis.

statement, including its content and whether and how to communicate it.'" *In re SolarWinds Corp. Sec. Litig., 595 F. Supp. 3d 573, 586 (W.D. Tex. 2022)* (quoting *Janus Cap. Grp., Inc. v. First Derivative Traders, 564 U.S. 135, 142, 131 S. Ct. 2296, 180 L. Ed. 2d 166 (2011)*). Bowen argues that the SEC has not alleged that Bowen was the maker of the statements in the Mustang 2 Offering Materials. Bowen's Br. 5-6. The Court disagrees. **[*11]**

In the Amended Complaint, the SEC plausibly alleges that Bowen was the maker of the challenged statements. With respect to the Mustang 2 Offering Materials, the SEC alleges, among other things, that Baker and Bowen were "50/50 partners" in Cannon, "Baker and Bowen prepared the [Mustang 2 Offering Materials]," and Baker and Bowen "exchanged drafts with each other and discussed the proposed changes amongst themselves until they were both satisfied with their work product." Am. Compl. ¶¶ 14, 19; *see also id.* ¶ 29 (alleging that Baker and Bowen "drafted and approved" the Mustang 2 Offering Materials). "[T]hese allegations do not suggest that [Bowen] merely reviewed and approved documents into which []he had no input." *S.E.C. v. Hopper, No. H-04-1054, 2006 U.S. Dist. LEXIS 17772, 2006 WL 778640, at *10 (S.D. Tex. Mar. 24, 2006)*. Instead, the SEC has plausibly alleged that Bowen "was actually responsible for the [alleged] material misstatements and omissions" in the Mustang 2 Offering Materials. *Id.; see also S.E.C. v. Berry, 580 F. Supp. 2d 911, 922 (N.D. Cal. 2008)* ("Substantial or intricate involvement in preparing a false statement . . . supports a claim for securities fraud." (citation omitted)).

Bowen also challenges the SEC's pleadings on the grounds that they constitute impermissible group pleading, lumping Bowen in with Baker. Reply 2. But "corporate **[*12]** documents that have no stated author . . . may be charged to one or more corporate officers provided specific factual allegations link the individual to the statement at issue." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc., 365 F.3d 353, 365 (5th Cir. 2004)*. As discussed above, the SEC has provided such "specific factual allegations" by alleging how Bowen was "involve[d] in the formulation of . . . the entire document." *Id.* At this stage, the SEC has plausibly alleged that Bowen made the alleged misstatements in the Mustang 2 Offering Materials.

Finally, with respect to the call with Investor A, to the extent that there is any dispute, the Court concludes that the SEC has plausibly alleged that Bowen made the allegedly false statements on that call. *See, e.g.*, Am. Compl. ¶ 33 ("Bowen called Investor A and presented a sales pitch to him . . . .").

*2. Section 17(a)(2)*

In its prior opinion, the Court noted that "obtaining money by means of any untrue statement" in violation of *Section 17(a)(2)* "encompasses a broader range of conduct than making such a statement" under *Rule 10b-5* and ruled that the SEC's *Section 17(a)(2)* claim survived the first step of the analysis. *Bowen, 2023 U.S. Dist. LEXIS 168648, 2023 WL 6166780, at *5* (quoting *S.E.C. v. Farmer, No. 4:14-CV-2345, 2015 U.S. Dist. LEXIS 136702, 2015 WL 5838867, at *7 (S.D. Tex. Oct. 7, 2015)*). Bowen again attacks this element, arguing that the SEC does not adequately allege that Bowen received "transaction-based compensation." Bowen's Br. **[*13]** 6-7. Contrary to Bowen's assertion, the SEC alleges more than the payment of a "non-actionable salary." *Id.* at 7 (citing *S.E.C. v. Mapp, No. 4:16-CV-00246, 2017 U.S. Dist. LEXIS 185335, 2017 WL 5177960, at *6 (ED. Tex. Nov. 8, 2017)*). Among other things, the SEC claims that commissions were paid to salespeople and Bowen for successfully closing sales. Am. Compl. ¶ 38; *see also id.* ¶ 40 ("Bowen solicited investors . . . and received commissions for the resulting sales[.]"). And Bowen decided the amount paid per sale. *Id.* ¶ 39 For the reasons stated previously, the Court holds that the SEC has plausibly alleged that Bowen obtained money by means of allegedly untrue statements. *See Bowen, 2023 U.S. Dist. LEXIS 168648, 2023 WL 6166780, at *5*.

*c. Material Misrepresentation or Omission*

The Court next considers whether the SEC has sufficiently alleged material misstatements and omissions. To be actionable, statements or omissions must be both: (1) untrue or misleading and (2) material. *See 15 U.S.C. § 77q(a)(2)*; *17 C.F.R. § 240.10b-5(b)*. "[T]he standard for misrepresentation is whether the information disclosed, understood as a whole, would mislead a reasonable potential investor." *Seghers, 298 F. App'x at 328* (citation

omitted). As to materiality, "[a] statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." **[*14]**  *Id.* (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk, 291 F.3d 336, 359 (5th Cir. 2002)*). The Court previously held that the SEC had adequately alleged that some of the challenged statements and omissions were untrue or misleading and material but did not plead its claims with particularity. *Bowen, 2023 U.S. Dist. LEXIS 168648, 2023 WL 6166780, at *5-7*. Because the SEC amended its pleading with respect to the alleged misrepresentations and because Bowen asserts new arguments for dismissing the claims against him, the Court begins by reexamining whether the SEC has plausibly alleged material misstatements or omissions. Then, the Court turns to the question of whether the SEC has pleaded its claims with particularity.

As before, the SEC alleges that the Mustang 2 Prospect Book misrepresented the production history of Cannon's prior wells. Am. Compl. ¶ 22. Having reviewed Bowen's new arguments regarding these statements, *see* Bowen's Br. 8-10, the Court finds no basis to revisit its previous determinations that the SEC plausibly alleged that these statements contain material misstatements, *Bowen, 2023 U.S. Dist. LEXIS 168648, 2023 WL 6166780, at *6*. And given the statements made in the Mustang 2 Prospect Book, the Court disagrees that Bowen had no duty to disclose accurate production information. Bowen's Br. 10-11. In a similar vein, the SEC alleges that Bowen told Investor A **[*15]**  "that all of Cannon's prior wells were profitable, 'had lots of production,' and would generate 'manyfold returns.'" Am. Compl. ¶ 33. Bowen did not disclose "that the Shawnee 2, 3, and 4 wells had performed very poorly, or that the Shawnee 2 and 3 wells were offline in March and April 2018." *Id.* "Investor A would not have invested in Mustang 2 had he known this information." *Id.* According to Bowen, his statements were "either factually true or . . . subjective opinions that cannot serve as the predicate for a fraud claim." Bowen's Br. 4. The SEC has plausibly alleged that these statements are untrue or misleading, as they misrepresent the status of the wells in 2018. *See, e.g., S.E.C. v. Gabelli, 653 F.3d 49, 57 (2d Cir. 2011)* ("[L]iterally true statements that create a materially misleading impression . . . will support claims for securities fraud." (citation omitted)), *rev'd on other grounds, Gabelli v. S.E.C., 568 U.S. 442, 133 S. Ct. 1216, 185 L. Ed. 2d 297 (2013)*. And, for the reasons stated in its prior opinion, the Court concludes that these representations are material. *See Bowen, 2023 U.S. Dist. LEXIS 168648, 2023 WL 6166780, at *6*.

The SEC also repeats its allegation that the Mustang 2 Offering Materials omitted the fact that investor funds would be used to pay commissions to salespeople. Am. Compl. ¶ 32. Relatedly, the SEC alleges that Bowen told Investor **[*16]**  A the purposes for which investor funds would be used but did not disclose that investor funds would be used to pay commissions to Bowen, Baker, and the salespeople. *Id.* ¶ 35. For the reasons stated in its prior opinion, the Court finds that the SEC has adequately pleaded that these statements are misleading and material. *Bowen, 2023 U.S. Dist. LEXIS 168648, 2023 WL 6166780, at *6*; *see also, e.g., S.E.C. v. United Energy Partners, Inc., 88 F. App'x 744, 746 (5th Cir. 2004)* (affirming grant of summary judgment in the SEC's favor on *Rule 10b-5* and *Section 17(a)* claims where "the offering memoranda represented that the total funds raised would be spent on completion of the wells and did not disclose that part of those funds would be given to . . . employees as commission"). Contrary to Bowen's newly raised argument, *see* Bowen's Br. 5 n.1, 10-11, the Court determines that he had a duty to disclose the payment of commissions, as "the omission renders his statement" about how investor funds would be used "false or misleading." *S.E.C. v. Mapp, 240 F. Supp. 3d 569, 580 (E.D. Tex. 2017)* (citation omitted).

Next, the SEC challenges the omission of any reference to Bowen in the Mustang 2 Offering Materials. Am. Compl. ¶¶ 29-30. According to the SEC, "[t]his omission was designed to prevent investors from learning that" the SEC had instituted proceedings against and imposed sanctions on Bowen. *Id.* ¶ 30. The **[*17]**  SEC also objects to the omission of negative information from the Mustang 2 Offering Materials, including Texas Railroad Commission orders against Cannon, a cease-and-desist order from the South Carolina Securities Commissioner against Cannon, and Baker's 2006 conviction for unlawfully carrying a weapon and drug-related charges. *Id.* ¶ 31. Bowen does not contest the materiality of these alleged omissions, but he argues that he had no duty to disclose the information. Bowen's Br. 10-11.

"When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, NA., 511 U.S. 164, 174, 114 S. Ct. 1439, 128 L. Ed. 2d 119*

*(1994)* (citation omitted). *Rule 10b-5(b)* does not prohibit pure omissions; instead, it "requires disclosure of information necessary to ensure that statements already made are clear and complete." *Macquarie Infrastructure Corp. v. Moab Partners, L.P., 601 U.S. 257, 264, 144 S. Ct. 885, 218 L. Ed. 2d 214 (2024)*. "Logically and by its plain text, the Rule requires identifying affirmative assertions . . . before determining if other facts are needed to make those statements 'not misleading.'" *Id.* (citation omitted). There is no affirmative duty to disclose all material information. *Id.* (citation omitted).

The SEC points to only one relevant affirmative assertion from the Mustang 2 Offering Materials: "The [Private Placement Memorandum] **[*18]** touted Baker's years of oil and gas experience" and the number of wells he had drilled and completed.[4] Am. Compl. ¶ 31 n.2. According to the SEC, this single statement gave rise to a duty to disclose "Baker's drug and weapons convictions, Cannon's cease-and-desist order from the South Carolina Securities Commissioner for selling unregistered securities, [and] its two Texas Railroad Commission regulatory orders." Resp. 9-10. Information about orders against Cannon is not necessary to make the statement regarding Baker's oil and gas experience clear and complete. Thus, Bowen had no duty to disclose this information. And as to the omission of Baker's criminal history, "a duty to speak the full truth *on a particular subject* arises when a defendant undertakes to say anything *on that particular subject.*" *Mapp, 240 F. Supp. 3d at 584* (citation omitted). The Court disagrees that Bowen's decision to speak about Baker's oil and gas experience gives rise to a duty to speak on his unrelated criminal history. The SEC has not identified any affirmative assertions that are misleading in the absence of additional facts. Therefore, the SEC cannot use the omission of negative information about Cannon and Baker to support its misrepresentation **[*19]** claims.

With respect to the omission of information about Bowen, the Court reaches a different conclusion. As the SEC argues, "while the [Mustang 2 Offering Materials] highlighted Baker, they contained no references to Bowen." Resp. 10. The Fifth Circuit has stated that "there is little doubt that a reasonable investor would have wanted to know the true identity of who was leading the company." *S.E.C. v. Blackburn, 15 F.4th 676, 681 (5th Cir. 2021)* (cleaned up). Because Bowen chose to speak about the leadership of Cannon, he had a duty to fully disclose Cannon's leadership. Revealing the involvement of Baker in Cannon but not that of Bowen—Baker's "'50/50 partner[]' in the business"—rendered the Mustang 2 Offering Materials materially misleading. Am. Compl. 14.

As to the Investor A call, the SEC alleges that Investor A specifically asked Bowen "if Cannon or its employees had any history of legal or regulatory problems" and that Bowen responded "that there were no such issues." *Id.* ¶ 34. This answer constitutes a material misstatement, rather than an omission, and Bowen's arguments regarding duty to disclose are inapplicable. *See* Bowen's Br. 11. Bowen does not appear to contest the materiality of this misstatement, and the Court finds that **[*20]** it is material. *See* Am. Compl. ¶ 34 ("Investor A would not have invested in Mustang 2 had he known this information."); *see also, e.g., S.E.C. v. Merch. Cap., LLC, 483 F.3d 747, 771 (11th Cir. 2007)* ("The existence of a state cease and desist order against identical instruments is clearly relevant to a reasonable investor, who is naturally interested in whether management is following the law in marketing securities." (citation omitted)); *S.E.C. v. Levine, 671 F. Supp. 2d 14, 27-28 (D.D.C. 2009)* ("It cannot be disputed that a reasonable investor would want to know whether the person they are sending their money to in order to purchase a stock has been previously found to have violated the securities laws." (citation omitted)).

For the foregoing reasons, the Court concludes that—with the exception of the alleged omission of negative information about Cannon and Baker—the SEC has plausibly alleged material misrepresentations or omissions sufficient to support its *Rule 10b-5(b)* and *Section 17(a)(2)* claims. And, having reviewed the Amended Complaint, the Court concludes that the SEC's allegations satisfy the *Rule 9(b)* standard and cure the deficiencies previously identified by the Court. Unlike before, the Amended Complaint now includes specific information regarding, inter alia, the drafting of the allegedly misleading and untrue statements **[*21]** in the Mustang 2 Offering Materials, the use of those materials to solicit investors, and Bowen's statements on the call with Investor A. Therefore, the Court holds that the Amended Complaint satisfies the *Rule 9(b)* particularity requirement.

---

[4] The SEC also contends that the Mustang 2 Offering Materials "presented a positive picture of Cannon and its management." Resp. 9. However, the SEC does not cite to any additional allegations in the Amended Complaint to support this assertion, and the Court found none.

*d. Scienter or Negligence*

The final element of both *Rule 10b-5(b)* and *Section 17(a)(2)* claims is the defendant's state of mind. A violation of *Rule 10b-5(b)* requires scienter, which is "a mental state that embraces an intent to deceive, manipulate or defraud, and includes severe recklessness." *Seghers, 298 F. App'x at 327, 333* (citation omitted). "[S]evere recklessness" is "an extreme departure from the standards of ordinary care." *S.E.C. v. World Tree Fin., L.L.C., 43 F.4th 448, 459 (5th Cir. 2022)* (citation omitted). The plaintiff can allege facts showing a defendant's motive to commit securities fraud or can allege facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *Nathenson v. Zonagen Inc., 267 F.3d 400, 409 (5th Cir. 2001)* (citation omitted). "Scienter may be found if a reasonable jury can conclude that the defendant knew his statements were false when made." *Seghers, 298 F. App'x at 333* (citation omitted).

"To state a claim based on recklessness, plaintiffs may . . specifically allege defendants' knowledge of facts or access to information contradicting defendants' public statements . . . ." *In re Longtop Fin. Techs. Ltd. Sec. Litig., 910 F. Supp. 2d 561, 574 (S.D.N.Y. 2012)* (citation omitted). Bowen argues that the SEC **[*22]** does not adequately allege that he had access to contrary facts because the Amended Complaint does not "specifically identify the reports or statements containing this information." Bowen's Br. 12 (quoting *In re Longtop Fin. Techs. Ltd. Sec. Litig., 910 F. Supp. at 573*). For the reasons stated below, the Court disagrees and finds that the SEC has set forth strong circumstantial evidence of conscious misbehavior or recklessness.

With respect to the statements abgut the production and profitability of the other Cannon wells, the SEC alleges that Bowen knew the statements were false or misleading because "offering materials for an earlier 2016 Cannon project . . . had accurately described the production declines of [two] wells in detail," Bowen used those offering materials to solicit potential investors in 2017 and 2018, and "Baker and Bowen met at least one to two times per month to discuss Cannon's current production numbers." Am. Compl. ¶¶ 23-24. These allegations suffice. *See, e.g., Rougier v. Applied Optoelectronics, Inc., No. 4:17-CV-2399, 2019 U.S. Dist. LEXIS 199050, 2019 WL 6111516, at *12 (S.D. Tex. Mar. 27, 2019)* (finding adequate allegations of scienter where plaintiff alleged that defendants received oral and written reports and attended internal meetings on the relevant topics).

As to the omission of information about commissions, the SEC alleges that Bowen oversaw Cannon's **[*23]** sales and marketing efforts, determined the amount of commission paid on each sale, prepared the Mustang 2 Offering Materials, and did not disclose the use of investor funds to pay commissions either in the Mustang 2 Offering Materials or on the call with Investor A. Am. Compl. ¶¶ 32, 35. Bowen "knew that the payment of commissions . . . violated *Section 15(a) of the Exchange Act*" due to his prior securities violations. *Id.* ¶ 28. And Bowen allegedly worked to conceal the commission payments. *Id.* ¶ 39. The Court concludes that these allegations are adequate at this stage. *See, e.g., S. E.C. v. Stack, No. 1:21-CV-00051-LY, 2021 U.S. Dist. LEXIS 196878, 2021 WL 4777588, at *5 (W.D. Tex. Oct. 13, 2021)* (finding that the SEC adequately alleged that the defendant "knew or recklessly disregarded that the documents given to investors included false and misleading statements and omissions" where the defendant reviewed the materials sent to investors and the materials contained false and misleading statements regarding the use of funds).

As to the nondisclosure of Bowen's involvement in Cannon and negative information about Cannon and Baker, the SEC alleges that Baker disclosed the negative information to Bowen "prior to Bowen joining Cannon in or around April 2016." Am. Compl. ¶ 31. And it is self-evident that Bowen knew about his own role **[*24]** in Cannon and knew that the SEC had issued an order against him in March 2018. *Id.* ¶¶ 30, 34, 40. The SEC has satisfactorily alleged, at a minimum, severe recklessness. *See, e.g., S.E.C. v. Provident Royalties, LLC, No. 3:09-CV-01238-L, 2013 U.S. Dist. LEXIS 135389, 2013 WL 5314354, at *6 (N.D. Tex. Sept. 23, 2013)* (finding "undisputed evidence" of scienter where the defendant knowingly failed to disclose his past securities violations and the fact that he was a principal of the company (citation omitted)); *Farmer, 2015 U.S. Dist. LEXIS 136702, 2015 WL 5838867, at *11* ("[B]ecause the Registration Statement and [letter] contained misrepresentations regarding Defendant's *own actions*, there is no question that Defendant was aware of the false or misleading nature of these representations." (citation omitted)).

Finally, the SEC's allegations regarding Bowen's motive to commit securities fraud further support the Court's conclusion. Bowen not only received commissions on sales but also determined the amount of commission paid on each sale. Am. Compl. ¶¶ 32, 38-39. This allegation, in combination with the others, enhances the inference of scienter. *See, e.g.,* *S.E.C. v. Ramirez, No. 15-2365 (PAD), 2018 U.S. Dist. LEXIS 74481, 2018 WL 2021464, at *11 (D.P.R. Apr. 30, 2018)* (finding the fact that the defendant earned commissions on customer purchases, among other things, weighed in favor of inferring scienter (citation omitted)).

To establish a violation of *Section 17(a)(2)*, the SEC need only show that Bowen acted **[*25]** negligently. *Seghers, 298 F. App'x at 327* (citation omitted). Because the SEC pleaded that Bowen acted with scienter, it also pleaded that he acted negligently. *See* *S.E.C. v. Gilman, No. 3:18-CV-1421-L, 2019 U.S. Dist. LEXIS 172205, 2019 WL 4743431, at *7, *11 (N.D. Tex. Sept. 26, 2019)* (noting that a showing of scienter also constitutes a showing of negligence).

In sum, the Court holds that the SEC has plausibly alleged violations of *Section 10(b)* and *Rule 10b-5(b)* thereunder and *Section 17(a)(2)* with respect to all challenged misstatements and omissions, with the exception of the omission of negative information about Cannon and Baker in the Mustang 2 Offering Materials. Though the SEC cannot use these omissions to support its misrepresentation claims, the claims nonetheless survive dismissal since they are adequately supported by other alleged statements and omissions, as detailed above.

*ii. Scheme Liability*

The SEC also alleges that Bowen participated in a fraudulent scheme in violation of *Rule 10b-5(a)*, *Rule 10b-5(c)*, *Section 17(a)(1)*, and *Section 17(a)(3)*. *Rule 10b-5(a)* and *(c)* and *Sections 17(a)(1)* and (3) "prohibit, in the offer or sale of securities, the employment of any device, scheme, or artifice to defraud; and the engaging in any act, practice, or course of business that operates or would operate as a fraud or deceit on any person." *Narayan, 2017 U.S. Dist. LEXIS 170477, 2017 WL 4652063, at *3*. Three of the scheme liability provisions require proof of scienter, but "the language of *§ 17(a)*" does not require scienter "under **[*26]** . . . *§ 17(a)(3)*." *Aaron v. S.E.C., 446 U.S. 680, 697, 100 S. Ct. 1945, 64 L. Ed. 2d 611 (1980)*.

*a. Scheme to Defraud*

The SEC alleges that Bowen participated in two fraudulent schemes: (1) disseminating the Mustang 2 Offering Materials; and (2) misusing investor funds to pay commissions. *See* Resp. 12-15. Bowen does not substantively address scheme liability in his initial briefing. In the Reply, Bowen attacks the SEC's scheme liability allegations for the first time, arguing that "[t]he SEC's Response—if not the Amended Complaint—contends that Bowen engaged in two fraudulent schemes,"[5] and that its pleadings fail as to both schemes. Reply 4-6 (footnote omitted). Even considering arguments raised for the first time in the Reply, the Court disagrees with Bowen.

First, the SEC alleges that Bowen disseminated the misleading and untrue Mustang 2 Offering Materials to prospective investors. Am. Compl. ¶ 19. Bowen argues that this theory fails because Baker controlled Cannon and the Mustang 2 Offering Materials. Reply 5. Regardless of whether the SEC has plausibly alleged that Bowen controlled the Mustang 2 Offering Materials (it has), the conduct challenged here is Bowen's *dissemination* of such materials. *See* Resp. 12-14. "Those who disseminate false statements with intent to **[*27]** defraud are primarily liable under *Rules 10b-5(a)* and *(c)*, *[Section] 10(b)*, and *[Section] 17(a)(1)*[.]" *Lorenzo, 587 U.S. at 83*. "[T]hat is so

---

[5] To the extent Bowen challenges the SEC's failure to neatly distinguish between conduct violating each subsection, the Supreme Court has "long recognized considerable overlap among the subsections of the Rule and related provisions of the securities laws" and has rejected the argument that each subsection of *Rule 10b-5* "govern[s] different, mutually exclusive, spheres of conduct." *Lorenzo v. S.E. C., 587 U.S. 71, 80, 139 S. Ct. 1094, 203 L. Ed. 2d 484 (2019)* (citation omitted). The Court finds the Amended Complaint sufficient under the applicable pleading standards.

even if the disseminator did not 'make' the statements and consequently falls outside *subsection (b) of [Rule 10b-5*]." *Id. at 78*; *see also Yoshikawa v. Exxon Mobil Corp., No. 3:21-CV-00194-N, 2023 U.S. Dist. LEXIS 148935, 2023 WL 5489054, at *9 (N.D. Tex. Aug. 24, 2023)* ("Dissemination is a form of conduct, and 'the scheme subsections can cover conduct that involves a misstatement even if the defendant was not the maker of it.' (citation omitted)). Because the SEC has adequately alleged that Bowen disseminated the Mustang 2 Offering Materials, *see, e.g.*, Am. Compl. ¶ 19, the SEC has stated a claim for scheme liability.

Second, the SEC alleges that Bowen misused investor funds by paying commissions to salespeople. *Id.* ¶ 28. Those commission payments either were not disclosed or exceeded the 15% cap on offering, overhead, and management expenses. *Id.* ¶¶ 28, 32. Bowen counters that Baker, not Bowen, controlled Cannon and its bank accounts and that the SEC has not plausibly alleged that Bowen controlled payments to salespeople. Reply 5. The Court holds that the SEC has adequately alleged that Bowen, "as Cannon's chief operating officer and sales manager, . . . was in charge of paying commissions to the company's salesmen on the completed sales." Am. Compl. ¶ 28; *see also id.* ¶ 39 **[*28]**  ("Bowen . . . decided the amount the company would pay its salesmen for each sale."). Either because the Mustang 2 Offering Materials did not disclose the payment of commissions or because the commissions paid exceeded the cap on offering, overhead, and management expenses, the use of investor funds for this purpose was not authorized. *Id.* ¶ 28. And Bowen allegedly took steps to conceal the payment of commissions. *See id.* ¶¶ 28, 39. This alleged conduct gives rise to a plausible scheme liability claim. *See, e.g., S.E.C. v. Mueller, No. SA-21-CV-00785-XR, 2024 U.S. Dist. LEXIS 7012, 2024 WL 400897, at *21 (W.D. Tex. Jan. 11, 2024)* (collecting cases standing for the proposition that "[c]ourts have concluded that a defendant's use of investors' money for undisclosed purposes can serve as a basis for scheme liability when the investors expected that money to go towards the defined purpose of the investment vehicle"); *S.E.C. v. Montgomery, No. SA-20-CA-598-FB, 2021 U.S. Dist. LEXIS 13029, 2021 WL 210749, at *4 (W.D. Tex. Jan. 20, 2021)* (finding basis for scheme liability where the defendant "misused investor funds by using offering proceeds contrary to disclosures about how such proceeds would be used").

*b. Scienter or Negligence*

Largely for the reasons stated above, the Court concludes that Bowen acted with both scienter and negligence. *See supra* § III.A.i.d. With respect to disseminating the Mustang 2 Offering Materials, **[*29]**  Bowen helped prepare the materials and allegedly knew that they contained untrue and misleading information when he provided them to investors. *See, e.g.*, Am. Compl. IN 19, 22-24, 30, 32. And with respect to the payment of commissions, Bowen knew, or was severely reckless in not knowing, that the commissions were not authorized or disclosed because he allegedly was involved in drafting the Mustang 2 Offering Materials and in communicating information to Investor A, knew from previous experience that payment of commissions to unregistered salespeople was unlawful, and instructed Cannon's business director to conceal the payment of commissions. *Id.* ¶¶ 28, 35.

*B. Unregistered Sale of Securities Claims*

Unlike in his prior motion to dismiss, Bowen now also moves to dismiss the SEC's unregistered sale of securities claims under *Sections 5(a)* and *(c)* and *Section 15(a)*.

*i. Sections 5(a) and (c)*

To adequately allege a prima facie violation of the registration requirements of *Sections 5(a)* and *(c)*, the SEC must allege: (1) Bowen offered or sold securities, (2) as to which no registration statement was in effect, and (3) that interstate transportation, communication, or the mails were used in connection with the offer or sale. *S.E.C. v. Spence & Green Chem. Co., 612 F.2d 896, 901-02 (5th Cir. 1980)* (citation omitted); *15 U.S.C. § 77e(a)*, *(c)*. *Section 5* "imposes **[*30]**  strict liability" and does not require a showing of "any degree of fault, negligent or intentional, on the seller's part." *Swenson v. Engelstad, 626 F.2d 421, 424 (5th Cir. 1980)* (citation omitted). Bowen

challenges only the first element: whether the SEC adequately alleges that he offered or sold securities.[6] Bowen's Br. 13-14.

*Sections 5(a)* and *(c)* impose liability not only on the seller of the unregistered security but also on "persons other than sellers who are responsible for the distribution of unregistered securities." *S.E.C. v. Blackburn, 156 F. Supp. 3d 778, 797 (ED. La. 2015)* (quoting *S.E.C. v. Murphy, 626 F.2d 633, 649 (9th Cir. 1980)*). A defendant may be liable if his role in the transaction is significant, meaning "he is both a necessary participant and substantial factor in the sales transaction." *Id.* (internal quotation marks and citation omitted). A defendant is a necessary participant if but for his participation, the sale transaction would not have taken place. *Stack, 2021 U.S. Dist. LEXIS 196878, 2021 WL 4777588, at *9* (citation omitted). A defendant is a substantial factor if his conduct and participation are not de minimis. *Id.*

According to Bowen, the SEC's allegations that he edited the Mustang 2 Offering Materials and called Investor A are insufficient to confer liability. Bowen's Br. 14. The SEC counters that it alleged that Bowen oversaw Cannon's sales and marketing efforts, dictated the type of **[*31]**  securities sold, drafted the Mustang 2 Offering Materials and sent them to investors, solicited investors, and received commissions for closing sales. Resp. 20 (citations omitted). The Court agrees with the SEC. Bowen allegedly "prepared and reviewed the" Mustang 2 Offering Materials and personally met with at least one investor. *Murphy, 626 F.2d at 652*. Moreover, Bowen allegedly "oversaw [Cannon's] sales and marketing efforts," "insisted that [Cannon] only offer and sell oil and gas working interests," and "directly solicited investors." Am. Compl. ¶¶ 14, 17, 38, 40. At this stage, the Court concludes that the SEC has plausibly alleged participant liability.

*ii, Section 15(a)*

*Section 15(a)* imposes liability on individuals who are required to register as brokers but fail to do so. *See 15 U.S.C. § 78o(a)*. A broker is "any person engaged in the business of effecting transactions in securities for the account of others." *Id. § 78c(a)(4)(A)*. An individual effects transactions if he participates in transactions "at key points in the chain of distribution." *DeHuff v. Digit. Ally, Inc., No. 3:08-CV-327-TSL-JCS, 2009 U.S. Dist. LEXIS 116328, 2009 WL 4908581, at *3 (S.D. Miss. Dec. 11, 2009)* (citation omitted). In determining whether a person effected transactions, courts look at factors such as whether the person (1) solicited investors to purchase securities, (2) was involved in negotiations between **[*32]**  the issuer and the investor, (3) received transaction-based compensation, (4) regularly participates in securities transactions, (5) is employed with the issuer, and (6) has a history of selling other issuers' securities. *S.E.C. v. Offill, No. 3:07-CV-1643-D, 2012 U.S. Dist. LEXIS 9369, 2012 WL 246061, at *7 (N.D. Tex. Jan. 26, 2012)* (citation omitted); *S.E.C. v. Moss, No. 4:20-CV-972-SDJ, 2022 U.S. Dist. LEXIS 43600, 2022 WL 757226, at *6 (E.D. Tex. Mar. 11, 2022)* (citing, among other sources, *S.E.C. v. Collyard, 861 F.3d 760, 766 (8th Cir. 2017)*). Like *Sections 5(a)* and *(c)*, *Section 15(a)* does not require scienter. *S.E.C. v. Martino, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003)* (citation omitted).

Bowen argues that the SEC failed to allege that he "effect[ed] transactions for the account of others" or "possessed 'authority over the accounts of others.'"[7] Bowen's Br. 16 (citation omitted). The Court disagrees. The SEC alleges that Bowen solicited investors, Am. Compl. ¶¶ 17, 38, 40, called an investor to "present[] a sales pitch . . . regarding Cannon's Mustang 2 offering," *id* ¶ 33, and sent the Mustang 2 Offering Materials to potential investors, *id.* ¶ 19. The SEC also claims that Bowen previously sold securities for other issuers. *Id.* ¶ 7.

---

[6] Bowen does not challenge, and the Court does not consider, whether the offering of working interests in the Mustang 2 well constituted securities.

[7] The Court recognizes that there appears to be some uncertainty regarding whether "control over the account of others is an element [or] a factor." *Mapp, 240 F. Supp. 3d at 592*. At this stage, and in the absence of binding authority, the Court determines that the SEC has sufficiently pleaded its claim in light of the factors discussed above. This conclusion is without prejudice to Bowen raising the issue again at a later stage in the case.

Further, the SEC alleges that Bowen received transaction-based compensation. *See, e.g., id.* ¶¶ 38-39. "Transaction-based compensation, or commissions are one of the hallmarks of being a broker-dealer." *Cornhusker Energy Lexington, LLC v. Prospect St. Ventures, No. 8:04-CV-586, 2006 U.S. Dist. LEXIS 68959, 2006 WL 2620985, at *6 (D. Neb. Sept. 12, 2006)* (citation omitted); *see also S.E.C. v. Mieka Energy Corp., 259 F. Supp. 3d 556, 561 (E.D. Tex. 2017)* (same). Considering the SEC's allegations holistically, the Court concludes that **[*33]** the SEC has plausibly alleged that Bowen was acting as a broker within the meaning of *Section 15(a)*. *See Mieka Energy Corp., 259 F. Supp. 3d at 561* (concluding that individuals were acting as brokers where they cold-called and developed relationships with potential investors, recommended investing, sent offering documents to potential investors, took orders, helped investors with paperwork, and received transaction-based compensation); *S.E.C. v. Gagnon, No. 10-CV-11891, 2012 U.S. Dist. LEXIS 38818, 2012 WL 994892, at *11 (E.D. Mich. Mar. 22, 2012)* (concluding that the defendant acted as a broker where he solicited and advised investors and received transaction-based compensation). Therefore, the SEC has sufficiently pleaded a *Section 15(a)* claim at this stage.

* * *

In sum, all of the SEC's claims withstand dismissal. The Court agrees with Bowen only to the extent that the SEC cannot use the omission of negative information about Cannon and Baker in the Mustang 2 Offering Materials to support its misrepresentation claims.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant Michael Bowen's Motion to Dismiss [ECF No. 44].

**SO ORDERED**.

SIGNED July 17, 2024.

/s/ Karen Gren Scholer

KAREN GREN SCHOLER

UNITED STATES DISTRICT JUDGE

---