**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ALEX HERNANDEZ, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>RCI HOSPITALITY HOLDINGS, INC., ERIC S. LANGAN, and BRADLEY CHHAY,<br><br>Defendants. | Case No. 4:25-cv-4477-KPE<br><br>Hon. Keith P. Ellison |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**<u>MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**


I. Introduction ........ 1

II. Plaintiffs Fail to Plead an Actionable Misstatement ........ 1

A. The Risk Disclosures Did Not Represent That RCI Was Free of Wrongdoing ..... 1

B. The Compliance Policy Disclosure is Not Actionable ........ 3

C. The Code of Ethics Statements Are Not Actionable as a Matter of Law ........ 5

D. The Internal Controls, GAAP, and SOX Theories Fail ........ 5

E. Plaintiffs Abandon Their Challenge to the August 8, 2024 Earnings Call ........ 7

III. Plaintiffs Fail to Plead a Strong Inference of Scienter ........ 7

IV. The Complaint Fails to Plead Loss Causation ........ 9

V. The Section 20(a) Claim Fails, and Leave to Amend Should Be Denied ........ 10

VI. Conclusion ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)....................2

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
579 F. Supp. 3d 933 (S.D. Tex. 2022)....................2

*Dobina v. Weatherford International Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012)....................6

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)....................7

*Edgar v. Anadarko Petroleum Corp.*,
2019 U.S. Dist. LEXIS 39977 (S.D. Tex. Mar. 13, 2019)....................3

*Greenberg v. Crossroads Sys., Inc.*,
364 F.3d 657 (5th Cir. 2004)....................10

*Heck v. Orion Grp. Holdings, Inc.*,
468 F. Supp. 3d 828 (S.D. Tex. 2020)....................6

*In re Alphabet, Inc. Securities Litigation*
1 F.4th 687 (9th Cir. 2021)....................3

*In re AT&T Inc. Securities Litigation*
2025 U.S. Dist. LEXIS 114032 (N.D. Tex. June 16, 2025)....................2

*In re BP p.l.c. Securities Litigation*,
843 F. Supp. 2d 712 (S.D. Tex. 2012) (Ellison, J.)....................4

*In re Duke Energy Corp. Sec. Litig.*,
282 F. Supp. 2d 158 (S.D.N.Y. 2003), *aff'd*, 113 F. App'x 427 (2d Cir. 2004)....................7

*In re Facebook, Inc. Securities Litgiation*
87 F.4th 934 (9th Cir. 2023)....................3

*In re KBR, Inc. Sec. Litig.*,
2018 U.S. Dist. LEXIS 221137 (S.D. Tex. Aug. 31, 2018)....................5, 6

*In re Lumen Techs., Inc. Sec. Litig. II*,
2025 U.S. Dist. LEXIS 63067 (W.D. La. Mar. 14, 2025)....................2

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
307 F. Supp. 3d 583 (S.D. Tex. 2018) ....................4

*In re Seagate Technology Holdings PLC Securities Litigation*,
2025 WL 1744505 (N.D. Cal. May 12, 2025) ....................3

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) ....................9

*Jacobowitz v. Range Res. Corp.*,
596 F. Supp. 3d 659 (N.D. Tex. 2022) ....................5

*Janbay v. Canadian Solar, Inc.*,
2012 U.S. Dist. LEXIS 47125 (S.D.N.Y. Mar. 30, 2012) ....................6, 7

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) ....................3

*Meyer v. JinkoSolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014) ....................4

*Oklahoma Firefighters Pension & Retirement System v. Six Flags Entertainment Corp.*,
58 F.4th 195 (5th Cir. 2023) ....................6, 8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ....................5

*Public Employees' Retirement System of Mississippi v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) ....................9

*Roofer's Pension Fund v. Papa*,
2018 WL 3601229 (D.N.J. July 27, 2018) ....................9

*Schott v. Nobilis Health Corp.*,
211 F. Supp. 3d 936 (S.D. Tex. 2016) ....................10

*Southland Securities Corp. v. INSpire Insurance Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) ....................7, 8, 10

*Washtenaw County Employees Retirement System v. Avid Technology, Inc.*
28 F. Supp. 3d 93 ....................9

Defendants RCI Hospitality Holdings, Inc. ("RCI" or the "Company"), Eric S. Langan, and Bradley Chhay (collectively, "Defendants") submit this reply in support of their Motion to Dismiss the Amended Class Action Complaint (the "Motion" or "Mot." (ECF No. 32)) and in response to Lead Plaintiffs' Opposition (the "Opp." (ECF No. 34)).[1]

## I. Introduction

Plaintiffs' Opposition confirms that this case is an attempt to repackage unadjudicated state tax charges into federal securities fraud class action. But merely alleging an isolated attempt to avoid sales taxes at a New York club does not satisfy the heightened requirements for pleading securities fraud under the PSLRA−plaintiffs must present particularized facts showing that defendants made material misstatements or omissions with an intent to defraud RCI shareholders that caused a cognizable investment loss. On each element, Plaintiffs rely on inapposite out-of-circuit authority, rewrite and abandon challenged statements, and ask the Court to infer securities fraud from the bare fact of an indictment by averring that "the two cannot be so neatly parsed." Opp. at 29. The Complaint should be dismissed with prejudice.

## II. Plaintiffs Fail to Plead an Actionable Misstatement

### A. The Risk Disclosures Did Not Represent That RCI Was Free of Wrongdoing

Plaintiffs do not dispute that RCI's risk factors warned that "[i]llegal activities or conduct at any of our nightclubs may result in negative publicity or litigation." Opp. at 17. They instead argue that the warnings were misleading because the warned-of "misconduct" had already "materialized." *Id.* at 17–19. That theory fails for at least three different reasons.

*First*, Plaintiffs' "materialized risk" theory mischaracterizes what the disclosures warned about. The risk factor did represent or imply that that illegal conduct had not occurred at RCI

[1] Abbreviations not defined here have the meanings given in Defendants' Motion. Unless otherwise noted, all emphasis is added and internal citations and quotation marks are omitted. Page citations are to the ECF marked page.

nightclubs; it warned that such conduct "may result in negative publicity or litigation" and might "divert management's attention." Mot. at 14–15. Those consequences had not materialized when the challenged 10-Ks were filed. Plaintiffs' response—focusing on whether legal action had been initiated "conflates the risk with its consequences" (Opp. at 18)—concedes the point. A general description of consequences that *could* follow from unlawful conduct at RCI's clubs "would not mislead reasonable investors to believe that [it] was fully compliant with all requirements or free of violations." *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 579 F. Supp. 3d 933, 950 (S.D. Tex. 2022). That is why *In re AT&T Inc. Securities Litigation* held that warnings about future legal outcomes "were not false when made, because they were warning about future risks that had not yet materialized." 2025 U.S. Dist. LEXIS 114032, at *39 (N.D. Tex. June 16, 2025).

*Second*, Plaintiffs have no answer to the settled rule that "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *In re Lumen Techs., Inc. Sec. Litig. II*, 2025 U.S. Dist. LEXIS 63067, at *64 (W.D. La. Mar. 14, 2025) (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014)). Plaintiffs try to distinguish *Pontiac* because UBS disclosed a DOJ investigation (Opp. at 20), but that distinction cuts against them. If UBS had no duty to disclose that it was "in fact, engaged in an ongoing tax evasion scheme" even while it was the subject of a known DOJ tax investigation (Mot. at 15 n.4), then RCI—which faced no investigation at all before May 2024—had no duty to confess to uncharged sales-tax violations in a generic risk factor. And Plaintiffs' attempt to distinguish *Lumen* because the risk factors there addressed "generalized" risks (Opp. at 20), but this describes RCI's risk factors exactly: they speak generally about "activities or conduct at our nightclubs," not about specific sales-tax remittance, audits, or dealings and negotiations with tax authorities.[2]

[2] Plaintiffs also relegate scheme liability to a footnote, asserting that a tax "scheme" is a "course of business" under Rule 10b-5(c). Opp. at 9 n.3. But a scheme to underpay state sales taxes is not a scheme to deceive investors, and

*Third*, Plaintiffs' authority (Opp. at 16–17), *In re Seagate Technology Holdings PLC Securities Litigation*, 2025 WL 1744505 (N.D. Cal. May 12, 2025), is readily distinguishable. Seagate repeatedly and affirmatively told investors that it "complies with all laws applicable to its business and operations, including export control regulations," and that "we comply with all the rules and regulations," while its 10-Qs represented that there had been "no material changes" to its risk factors. *Id.* at *6–8. Seagate also had stonewalled a congressional inquiry into the very sales at issue and paid a $300 million penalty after admitting the sales were illegal. *Id.* at *4–5. RCI made no comparable statement. It never told investors that it complied with all sales-tax laws, and Plaintiffs identify no regulatory regime under which a generic risk factor about nightclub conduct operated as an implied certification of tax compliance.[3]

### B. The Compliance Policy Disclosure is Not Actionable

Plaintiffs' challenge to RCI's description of its compliance policies depends on rewriting the statement. RCI disclosed that it "continually monitor[s] the actions of entertainers, waitresses and customers to ensure that proper behavior standards are met," alongside a "no tolerance" policy on illegal drug use. Mot. App. A at 1. The disclosure thus described monitoring of club-floor

---

Plaintiffs identify no deceptive act directed at the market beyond the same challenged statements. Mot. at 13 n.3. Their Item 303 theory fails at the outset. The Complaint never identifies any affirmative statement that the alleged Item 303 omission rendered misleading. Instead, Plaintiffs attempt to supply one for the first time in the Opposition. Opp. at 15 n.6. But "factual allegations first asserted in a response to a motion to dismiss are not appropriately reviewed in a Rule 12(b)(6) motion." *Edgar v. Anadarko Petroleum Corp.*, 2019 U.S. Dist. LEXIS 39977, at *30 (S.D. Tex. Mar. 13, 2019). Moreover, Plaintiffs concede Item 303 supports liability only where an omission renders an affirmative statement a "half-truth," (Opp. at 15 n.6 (citing *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 266 (2024))), which simply collapses that theory into compliance statements addressed below.

[3] Plaintiffs' data-breach cases are inapposite for the same reason. In *In re Alphabet, Inc. Securities Litigation*, the company had already detected the security bug and prepared an internal memo describing it before filing a 10-Q stating there were no material changes to its risk factors. 1 F.4th 687, 696 (9th Cir. 2021). *In re Facebook, Inc. Securities Litigation*, likewise, turned on a known, specific event within the subject matter of the risk disclosure. 87 F.4th 934 (9th Cir. 2023). Neither involved a generic warning about patrons' and employees' conduct at a company's venues.

conduct by entertainers, staff, and customers. It said nothing about sales-tax collection, tax audits, or the conduct of senior executives in dealing with tax authorities.

That distinction is meaningful. In *Meyer v. JinkoSolar Holdings Co.*, on which Plaintiffs rely (Opp. at 16–17), the prospectus described the company's pollution-abatement equipment and 24-hour environmental monitoring teams, and the company had reported "existing problems" to regulators weeks later showing that those very measures were then failing to prevent serious, ongoing pollution violations at the plant. 761 F.3d 245, 247–48, 251 (2d Cir. 2014). The undisclosed facts fell squarely within the subject matter of the description. Here, by contrast, Plaintiffs do not allege that RCI's monitoring of entertainers, waitresses, and customers failed to achieve its stated purpose. They allege that executives engaged in an unrelated tax scheme. Indeed, the company itself recognized that such descriptions "did not guarantee 100% compliance 100% of the time." *Id.* at 251.[4]

Moreover, the statement is expressly hedged: RCI warned that its policies "can provide only reasonable, and not absolute, assurance" and that "there can be no assurance that our policies will prevent deliberate acts by persons attempting to violate or circumvent them." Mot. at 17. Plaintiffs concede the hedging language but argue that it is "hollow" because the executives are alleged participants. Opp. at 16–17. But where a disclosure disclaims any assurance that compliance efforts will succeed, the accompanying statement of management's belief that the policies are "reasonably effective" carries no "implicit" assurance of "absolute compliance." *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 635 (S.D. Tex. 2018). Plaintiffs' attempt to distinguish *Plains* on the ground that Defendants here allegedly "directed" the conduct

---

[4] Plaintiffs' reliance on *In re BP p.l.c. Securities Litigation*, 843 F. Supp. 2d 712 (S.D. Tex. 2012) (Ellison, J.), fails for the same reason. There, BP made specific representations that it was implementing particular process-safety reforms, and the plaintiffs alleged facts showing those very reforms were not being implemented. Opp. at 16–17. Plaintiffs allege nothing about whether RCI's club-floor monitoring policies were in fact implemented.

(Opp. at 18 n.8), again conflates the alleged tax avoidance with the club-floor conduct that the policies addressed.[5]

### C. The Code of Ethics Statements Are Not Actionable as a Matter of Law

Courts in this Circuit consistently hold that code-of-ethics statements are "aspirational, incapable of objective verification, and therefore not actionable." *In re KBR, Inc. Sec. Litig.*, 2018 U.S. Dist. LEXIS 221137, at *16 (S.D. Tex. Aug. 31, 2018); *see also Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 682–83 (N.D. Tex. 2022). Plaintiffs' only response is that RCI's Code imposed "verifiable obligations" on officers to comply with law and report fraud. Opp. at 21. But every code of ethics directs officers to comply with law; that is what makes such codes aspirational rather than factual representations of past compliance. As *Jacobowitz* explains, an allegation that executives "did not comply" with a code does not make the code "actionably fraudulent under federal securities law." 596 F. Supp. 3d at 682–83.[6]

### D. The Internal Controls, GAAP, and SOX Theories Fail

**Internal controls.** Plaintiffs' internal controls theory rests entirely on the material weakness RCI disclosed in its March 2026 Form 10-K concerning accounting for contingent liabilities, which arose from the need to evaluate and reserve for the Indictment. Opp. at 22–23. Plaintiffs ask the Court to infer that this weakness "existed in every quarter in which the scheme was ongoing." *Id.* at 22. But a weakness in accounting for a legal contingency that did not exist until the State brought charges says nothing about the effectiveness of RCI's controls in 2020

[5] Plaintiffs' newly minted *Omnicare* theory adds nothing. Opp. at 18 n.8. *Omnicare* requires a plaintiff to identify particular and material facts about the issuer's basis for the opinion whose omission makes the opinion misleading to a reasonable investor. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). The opinion here concerns whether RCI's policies for monitoring entertainers, waitresses, and customers were reasonably effective. Plaintiffs plead no fact about the operation of those policies at all.

[6] Plaintiffs' two code-of-conduct decisions from the District of Minnesota cannot displace the consistent line of decisions from courts in this Circuit. *See* Mot. at 18–19 & n.5 (collecting cases). Nor does the Board's post-Indictment resignation resolution convert an aspirational code into a factual representation; it shows only that the Board responded to criminal charges. *See* Opp. at 21

through 2024. *See Janbay v. Canadian Solar, Inc.*, 2012 U.S. Dist. LEXIS 47125, at *22–23 (S.D.N.Y. Mar. 30, 2012). Plaintiffs' reliance (Opp. at 22) on *Dobina v. Weatherford International Ltd.*, 909 F. Supp. 2d 228 (S.D.N.Y. 2012), only highlights the gap. There, the company restated more than three years of earnings after identifying a material weakness in its controls over accounting for income taxes, the very controls that produced the misstated figures. *Id.* at 246–47. RCI has not restated its financials. No comparable facts are alleged here.

**GAAP.** Plaintiffs do not dispute that the entire $8 million in allegedly unpaid sales tax—accumulated over fourteen years—represents less than 3% of RCI's revenue for a single fiscal year and a fraction of a percent of revenue over the Class Period. Mot. at 22. Nor do they identify the amount by which any Class Period revenue or liability figure was misstated. Instead, they point to the settlement amounts of two audits signed during the Class Period (Opp. at 24), but those figures are the amounts RCI *paid* to resolve audits—not the amount by which any reported figure was misstated. That is exactly the kind of allegation that fails to explain "in what particulars the reported earnings and revenues figures were inaccurate." *Heck v. Orion Grp. Holdings, Inc.*, 468 F. Supp. 3d 828, 849 (S.D. Tex. 2020). *Oklahoma Firefighters Pension & Retirement System v. Six Flags Entertainment Corp.*, 58 F.4th 195 (5th Cir. 2023), is not to the contrary. There, the company itself announced a $15 million downward revenue adjustment tied to the same delays that rendered its construction-progress statements false, and the Fifth Circuit relied on that "admission of $15 million in overstated revenue" to sustain the accounting claim. *Id.* at 220–21. RCI has revised no Class Period financial statement, and the SOX certification theory falls with the internal controls and GAAP theories. *See KBR*, 2018 U.S. Dist. LEXIS 221137, at *23.[7]

[7] Plaintiffs' attempt to excuse their pleading failure by reference to the auditor's 2026 statement that the Indictment's financial impact "could be material" confirms the point. Opp. at 23 n.10. That is a forward-looking statement about an unresolved contingency created by the Indictment, not a finding any Class Period financial statement was misstated.

Plaintiffs' fallback—that the alleged misstatements are "qualitatively" material because they stem from unlawful conduct (Opp. at 23–24)—would eliminate the materiality requirement for any company accused of a crime, no matter how small the financial impact. Courts reject that approach: "illegality of a financial nature . . . must still be assessed, for disclosure purposes, by its economic impact." *Janbay*, 2012 U.S. Dist. LEXIS 47125, at *19–20 (quoting *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 161–62 (S.D.N.Y. 2003), *aff'd*, 113 F. App'x 427 (2d Cir. 2004)). Nor does an alleged underpayment of sales tax "involve[] concealment of an unlawful transaction" in the SAB No. 99 sense; RCI's sales were lawful, and the alleged wrong is a disputed remittance. *See ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009). And Plaintiffs plead none of the other qualitative factors: they do not allege that the exposure could have been calculated precisely, masked a change in earnings, or turned a loss into income. *See id*. The alleged underpayment of state sales tax at three New York clubs, out of more than 60 clubs and restaurants nationwide, is not such a case.

### E. Plaintiffs Abandon Their Challenge to the August 8, 2024 Earnings Call

Plaintiffs do not dispute that Langan's statement that a short seller was "a little off base" is a "non-actionable" opinion. Mot. at 24–25. Plaintiffs have therefore abandoned any claim premised on that statement; the Court should dismiss it on that basis alone.

## III. Plaintiffs Fail to Plead a Strong Inference of Scienter

The Opposition's scienter argument rests on a single premise: because the Indictment alleges that Langan and Chhay participated in a scheme to underpay sales taxes, they necessarily intended to deceive RCI investors. *See* Opp. at 25–29. But the Fifth Circuit requires a plaintiff to plead the "state of mind of the individual corporate official or officials" who made or caused each challenged statement. *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004). Participation in alleged tax underpayment—even if ultimately proven—is not the same as

knowingly misleading investors about RCI's consolidated financial condition. Mot. at 26. Not one of the communications Plaintiffs quote references RCI's SEC filings, its risk disclosures, its internal controls, or its investors. Opp. at 26–27. Plaintiffs make no attempt to connect any communication to any challenged statement, and their insistence that Defendants "fail to identify a single internal communication suggesting that their conduct was lawful," (*id.* at 26), inverts the burden the PSLRA places on Plaintiffs.

Plaintiffs' remaining scienter allegations add nothing. *First*, the Fifth Circuit has squarely held that executive resignations do not support scienter because they are "unavailing as proof" of fraud—in the very decision on which Plaintiffs most heavily rely. *Six Flags*, 58 F.4th at 219 n.19 ("[W]e hold that the executive departures do not contribute to a strong inference of scienter."); *see also Southland*, 365 F.3d at 383. And as the Complaint itself alleges, the resignations followed the Indictment, which supplies an obvious non-culpable explanation. Mot. at 27–28.

*Second*, the former-employee accounts do not come close to the particularity required. In *Six Flags*, the Fifth Circuit credited a confidential witness because he was the director "responsible for overseeing the construction" at issue, reported on its progress, and prepared presentations that were relayed to the CEO and the board. 58 F.4th at 208–09, 215–16. Plaintiffs' three witnesses are the opposite: (i) a traveling performer who "suspected" tax fraud; (ii) a Texas manager who arrived months before the Class Period ended; and (iii) a Colorado assistant manager.[8] The allegation that nightly Club Tracks reports recorded "Dance Dollars bought and spent" (Opp. at 12), says nothing about whether sales tax was remitted on them in New York, let alone about the truth of any disclosure.

[8] FE 1 was a traveling performer who "suspected" tax fraud based on income statements provided to performers; FE 2 worked in Texas from May to October 2025, largely after the Class Period; and FE 3 worked at a Colorado club. Opp. at 12; Mot. at 28 & n.8. None worked in New York, at corporate headquarters, or on sales-tax matters, and none describes any communication with Langan or Chhay about Dance Dollar taxation or RCI's disclosures.

*Third*, Plaintiffs' own authority (Opp. at 18 n.7) confirms that "the existence of a criminal investigation is not sufficient to give rise to a strong inference of scienter." *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *21 (D.N.J. July 27, 2018)).[9] Plaintiffs' attempt to distinguish *Carlton* and *In re Inotiv Securities Litigation* on the ground that they rely on the "Individual Defendants' own statements and actions" (Opp. at 26 n.12), simply restates the Indictment's allegations, none of which concern investor disclosures. And SOX certifications contribute to scienter only where the plaintiff pleads "glaring accounting irregularities" at the time of certification. *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 545 (5th Cir. 2008). Plaintiffs plead none.

## IV. The Complaint Fails to Plead Loss Causation

Plaintiffs concede that loss causation requires a disclosure that makes "the existence of the actionable fraud more probable," and they rely (Opp. at 29–31) almost entirely on *Public Employees' Retirement System of Mississippi v. Amedisys, Inc.*, 769 F.3d 313 (5th Cir. 2014). But *Amedisys* held that "[s]peculation of wrongdoing cannot by itself arise to a corrective disclosure," and that a short-seller report that was "admittedly inconclusive" could be considered only "within the totality" of other partial disclosures. 769 F.3d at 322. The Fifth Circuit found loss causation adequately plead there only because five distinct events—the short-seller report, two executive resignations, a front-page *Wall Street Journal* statistical analysis of the company's Medicare billing, three government investigations, and an earnings collapse attributed to those investigations—collectively revealed the very billing practices that the company's compliance statements concealed. *Id.* at 322–24.

---

[9] Plaintiffs also cite *Washtenaw County Employees Retirement System v. Avid Technology, Inc.* (Opp. at 18 n.7), which confirms a government investigation "is insufficient in and of itself." 28 F. Supp. 3d 93, 114–15 (D. Mass. 2014) ("As things stand, this is not a strong case of securities fraud. . . . Hernandez, however, ought be off the hook.").

Plaintiffs allege nothing comparable. The Bear Cave post stated only that its author "believes" a club was raided, and, as the Complaint concedes, it incorrectly characterized the raid as "IRS related." Mot. at 30. The post said nothing about RCI's risk factors, its compliance policies, its internal controls, or its financial statements. A price decline reflecting a "general impression in the market that 'something is wrong' is insufficient to establish causation." *Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 957–58 (S.D. Tex. 2016). And the September 2025 decline followed the announcement of criminal charges, which would be expected to affect the stock price regardless of whether any prior SEC filing was false. Plaintiffs' response that "sole causation is not the standard" misses the point (Opp. at 31): Plaintiffs must plead that the decline resulted from revelation of the *falsity* of a challenged statement, not from the reputational and operational consequences of an indictment. *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 666–67 (5th Cir. 2004). Plaintiffs' attempt to dismiss *Greenberg* as a summary judgment decision (Opp. at 31 n.14), ignores that its requirement that the corrective disclosure relate to the subject of the challenged statement—"not the release of the unrelated negative information"—applies at every stage. *Greenberg*, 364 F.3d at 666.

## V. The Section 20(a) Claim Fails, and Leave to Amend Should Be Denied

Plaintiffs concede that their Section 20(a) claim is derivative of their Section 10(b) claim. Opp. at 31. It therefore fails with it. *Southland*, 365 F.3d at 383. Plaintiffs' one-sentence request for leave to amend should also be denied. *See* Opp. at 31. Plaintiffs have already amended once with the benefit of the unsealed Indictment, and they do not identify any additional fact they could plead to cure the deficiencies identified in the Motion.

## VI. Conclusion

For the foregoing reasons and those stated in the Motion, the Court should dismiss the Complaint in its entirety with prejudice.

Dated: October 26, 2026

Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ *Michael J. Biles*
Michael J. Biles (*Attorney-In-Charge*)
Texas Bar No. 24008578
SDTX Bar No. 23147
Michael.Biles@us.dlapiper.com
Frances R. Fink
Texas Bar No. 24135291
SDTX Bar No. 3891163
Frances.Fink@us.dlapiper.com
**DLA PIPER LLP (US)**
303 Colorado Street, Suite 3000
Austin, Texas 78701
Telephone: 512.457.7010
Facsimile: 512.721.2212

-and-

Jason S. Lewis
Texas Bar No. 24007551
SDTX Bar No. 25665
Jason.Lewis@us.dlapiper.com
Ryan D. Lantry
Texas Bar No. 24125130
SDTX Bar No. 3857421
Ryan.Lantry@us.dlapiper.com
**DLA PIPER LLP (US)**
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: 214.743.4546
Facsimile: 214.743.4545

***Attorneys for Defendants RCI Hospitality Holdings, Inc., Eric S. Langan, and Bradley Chhay***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 26, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ *Michael J. Biles*
Michael J. Biles